## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TARA HALL AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF MARCEL THEO HALL, and
derivatively on behalf of Biz Markie, Inc.
11206 Champlain Circle
Bowie, MD 20720

       Plaintiff,

vs.

BIZ MARKIE, INC., a Washington, D.C.
corporation
1328 U St. NW #1W
Washington, D.C. 20009-7503, and

JENNIFER IZUMI, individually
1905 15th Street NW
Washington, D.C. 20009

       Defendants.

Case No.: 1:22-cv-00806

## COMPLAINT

TARA HALL, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARCEL

THEO HALL, brings this action by and through the undersigned attorneys against Defendants BIZ

MARKIE, INC. and JENNIFER IZUMI (hereinafter collectively "Defendants" and each a

"Defendant"), for, *inter alia*, (a) trademark dilution, trademark infringement, unfair competition,

false endorsement and false designation of origin, under Trademark Act of 1946, as amended, 15

U.S.C. §§ 1051, et seq.; (b) trademark infringement and unfair competition under federal common

law; (c) violation of rights of publicity, identity and personality and unauthorized use of name and

likeness arising under the statutory laws and common laws of the District of Columbia; (d)

fraudulent conversion; and, (e), under the statutory laws and common law of the state of Maryland,

breach of fiduciary duty and unjust enrichment, and in support thereof alleges as follows:

1

## PARTIES

1.      TARA HALL was appointed the personal representative of The Estate of Marcel Theo Hall (the "Plaintiff") by letters issued on August 13, 2021 by the State of Maryland.

2.      MARCEL THEO HALL ("Mr. Hall") was a citizen of the State of Maryland. Mr. Hall is recognized by his stage name "Biz Markie" and for decades has been, and continues to be, internationally known as an iconic rapper, actor, musical artist, DJ, and record producer.

3.      Mr. Hall died intestate in the State of Maryland on July 16, 2021.

4.      Upon information and belief, Defendant BIZ MARKIE, INC. ("BM, INC."), is a corporation created by Mr. Hall, organized and existing under the laws of the District of Columbia, with its principal place of business at 1328 U Street, NW, Suite 1W, Washington, D.C. 20009.

5.      Defendant BM, Inc. conducts its business of licensing, accounting and receiving payments in this judicial district, as well as owns, operates, maintains or controls interactive websites accessible from this judicial district, through which the complained of products have been advertised and sold.

6.      JENNIFER IZUMI ("IZUMI") is an individual resident of Washington, D.C.

7.      Upon information and belief, the Defendants regularly engage in business throughout the entire United States and in this judicial district, and otherwise have sufficient presence in, and contacts with this judicial district. Defendants have engaged in much of the complained-of conduct in this judicial district.

## JURISDICTION

8.      This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a), because this case arises under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, et seq.

9.     This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332, as there is diversity of citizenship between Plaintiff and Defendants. In addition, the amount in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand dollars ($75,000.00).

10.     This Court has subject matter jurisdiction over the federal and state common law claims, and the state statutory claims herein under 28 U.S.C. § 1338(b), because those claims are joined with a substantial and related claim under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, et seq., over which this Court has original jurisdiction.

11.     This Court has supplemental jurisdiction over all of the claims pled under state law herein under 28 U.S.C. § 1367, because those claims are joined with, and are so related to Plaintiff's claims under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, et seq., over which this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

12.     This Court has in personam jurisdiction over the Defendants in this action because each Defendant is a citizen of and/or maintains offices in this judicial district, or because the Defendants regularly engage in business in this judicial district, including, without limitation, sales on interactive websites viewable in this judicial district, and throughout the entire United States.

13.     Venue is proper in this district pursuant to 28 U.S.C. §1391(a), by consent, because Defendants maintain offices in this judicial district, and because the Defendants regularly engage in business in this judicial district, including, without limitation, on interactive websites viewable in this judicial district, and throughout the entire United States. Furthermore, certain of the complained-of acts occurred in this judicial district.

## BACKGROUND FOR ALL ALLEGATIONS

14.     Mr. Hall is a legendary musical entertainer known by his stage name "Biz Markie." His career in all facets of the entertainment industry spanned decades and included his RIAA Platinum selling 1989 single "Just a Friend," which became a top 40 hit in several countries.  In 2008, "Just a Friend" was included on VH1's list of the 100 greatest hip hop songs of all time. Mr. Hall was sometimes referred to as the "Clown Prince of Hip Hop."

15.     In his first decade recording music, Mr. Hall recorded the first track on the Office Space soundtrack (1999), rapped on Will Smith's 1999 album "Willennium," and in 1997, a sample of one of his recordings was used in the Rolling Stones' album "Bridges to Babylon."  His acclaim and popularity led to his signing with Rhino Records on September 6, 2009, distributed worldwide by Warner Music Group, which continues to account for and pay his music royalties. He released five (5) studio albums (one of which was certified gold by the RIAA) and seven (7) compilation albums.

16.     In television and film, Mr. Hall made guest appearances on *In Living Color* and in the superhero film Meteor *Man* in the 1990's, and in 2002, he appeared in *Men in Black II*, with Will Smith and Tommy Lee Jones, playing an alien parody of himself.  In the 2000's, Mr. Hall was a competitor on the first season of VH1's television show *Celebrity Fit Club*, which challenged celebrities to lose weight by a combination of diet and exercise.  Mr. Hall was a cast member of Nick Cannon's MTV series *Wild 'n Out* seasons 1 and 3, and performed a regular segment on the Nick Jr. television show *Yo Gabba Gabba*. He began opening in 2008 for Chris Rock on the comedian's "No Apologies" live tour.

17.     In the 2010's, Mr. Hall acted in and hosted television shows on multiple networks. He provided commentary throughout VH1's *100 Greatest Artists of All Time*, appeared on *Late Night with Jimmy Fallon*, and toured with the *Yo Gabba Gabba!* live show.  Mr. Hall guest starred

on *SpongeBob SquarePants* and voiced a character on Cartoon Network's *Adventure Time*.   In 2014, Mr. Hall appeared in the Syfy network film *Sharknado 2: The Second One*. In 2016, he appeared on the Fox TV series *Empire* as himself, where he performed, and in the season 3 finale of the ABC series *Black-ish* in 2017.  Mr. Hall was the DJ on the VH1 game show *Hip Hop Squares* between 2017 and 2019 (a spin-off of the game show *Hollywood Squares*) and hosted a radio show on SiriusXM's "Rock the Bells" Radio station every weekday.

18.    Mr. Hall's work and acclaim continued into the 2020's, spanning all genres and familiar to all generations. On January 14, 2021, Biz Markie was mentioned in the premiere episode of AppleTV's Emmy award winning *Ted Lasso*, and one of his songs was played over the end credits.

19.    For more than thirty (30) years, Mr. Hall commercially used the mark Biz Markie for his entertainment services, namely, the rendering of entertainment services by way of personal appearances and live musical performances by Marcel Theo Hall.

20.    Mr. Hall also used the mark Biz Markie in association with audiovisual goods sold which featured his name, image, voice and likeness, including musical sound recordings, pre-recorded CDs featuring music downloadable music files, downloadable videos, and music video recordings.

21.    Mr. Hall earned a living through public appearances and performances for decades under his stage name "Biz Markie."

22.    On or about February 4, 2015, Mr. Hall created Defendant Biz Markie, Inc. to receive income from his entertainment goods and services. He did not draft or execute a shareholder agreement.

23.     Three years later, on October 18, 2018, Mr. Hall was married for the first and only time, to his long-time girlfriend Tara Hall, now the administrator of his Estate.

24.     A signature purporting to be Mr. Hall's appears on a Maryland Statutory Form Limited Power of Attorney dated May 23, 2018 (five months before he was married) granting Defendant Izumi the right to engage in transactions limited to the following on his behalf: real estate, tangible personal property, stocks and bonds, commodities, banking, operation of business, insurance and annuities, trusts and estates, claims and litigation, retirement plans, taxes and gifts. Notably, and intentionally, intellectual property rights were not included in this document.

25.     Defendant Izumi signed the purported Power of Attorney agreeing to abide by its express terms. Page 12 of the document states: "a. An Attorney-in-Fact that is not my ancestor, spouse, or descendant MAY NOT use my power to benefit the Attorney-in-Fact or a person to whom the Attorney-in-Fact owes an obligation of support unless I have included that authority in the Special Instructions." The "Special Instructions" section on page 12 of the Power of Attorney is blank. Defendant Izumi is not an ancestor, spouse, or descendant of the decedent.

26.     Pursuant to verbal agreement with Mr. Hall, Defendant Izumi began to control BM, Inc.'s bank account, and to manage the accounts payable and accounts receivable for that company, along with her own. After Mr. Hall's marriage, Izumi computed what Mr. and Mrs. Hall's expenses were each month and forwarded that exact amount to them to pay their personal bills – but no more.

27.     In or about 2015, Mr. Hall purchased two $500,000 life insurance policies from Northwestern Mutual Life Insurance Company, and, while he was alive, named his three nephews and niece as the sole beneficiaries. However, the month after he was married, in or about November 2018, Defendant Izumi covertly applied to change the ownership of the policies to one

of her solely owned corporations, Balancing Acts, Inc., with herself as the sole beneficiary of one of the policies and 40% beneficiary of the other, reducing Mr. Hall's nephews' and niece's percentage to 20% each.  These changes went into effect on January 24, 2019 – three (3) months after his wedding, and without his knowledge or consent.

28.    Izumi granted herself 51% of Mr. Hall's income and control of his company: during the final years of his life, until it was discovered, Defendant Izumi and/or her authorized representative filed tax returns for Biz Markie, Inc., listing herself as 51% shareholder and Mr. Hall as 49% shareholder, continuing until 2020.

29.    Less than two years after getting married, on June 21, 2020, Mr. Hall was hospitalized with complications from Type 2 diabetes. He had a drastic medical decline, and, in October 2020, was placed in a shock trauma facility as a result of a stroke he had suffered after going into a diabetic coma.  After being hospitalized for more than a year, Mr. Hall passed away on July 16, 2021 at age 57.

30.    During most of this year of hospitalization, June 2020 through July 2021, Mr. Hall was incapacitated and unable to make financial decisions on his own behalf (the "Period of Incapacitation").

31.    During the Period of Incapacitation, Defendants engaged in numerous financial and corporate transactions that directly benefited Defendants as described hereinafter, to the detriment of the financial well-being of Mr. Hall and therefore the Plaintiff. These actions were not authorized by Mr. Hall, as he was unable to make financial decisions during the Period of Incapacitation.

32.    A $180 Biz Markie doll was the only merchandise personally approved by Mr. Hall for sale in the online "store" before Mr. Hall went into the hospital, as verified by the online

"Internet Archive Wayback Machine" (www.archive.org). At some point between August 17, 2020 and October 23, 2020, BM, Inc. began distributing online and in interstate commerce various items of clothing and merchandise, including clocks, notebooks, plaques, puzzles, shoes, and other so-called "collectibles," bearing the Biz Markie name, persona and mark (the "Unauthorized Clothing and Merchandise") with actual knowledge that BM, Inc. did not have the requisite consent to use the name "Biz Markie," Mr. Hall's persona and/or the Biz Markie mark on such goods.

33.     Eight months prior to Mr. Hall's death, on November 9, 2020, Mrs. Hall learned that Defendant BM, Inc., through Izumi, was approving, manufacturing, marketing, advertising, distributing, selling and making provisions for the advertising and sale of the above-described Unauthorized Clothing and Merchandise on the Biz Markie website, bizmarkie.com.

34.     Defendant BM, Inc. was and is identified as the manager of the website, with the contact person on its behalf being Jennifer Izumi.

35.     BM, Inc. has never accounted to or paid Mr. Hall or Plaintiff for any of the goods sold bearing his name and likeness.

36.     Seven (7) months prior to Mr. Hall's death, on December 14, 2020, Defendant Izumi obtained a $65,000 advance from Mr. Hall's royalty earnings, which she directed to be paid to one of her companies, Balancing Acts, Inc., which, to Plaintiff's good faith knowledge and understanding, is solely owned by Defendant Izumi.  Mrs. Hall discovered this after Mr. Hall's death when she learned that Defendant Izumi had sent a letter of direction to Warner Brothers on January 16, 2019 (eight months after Izumi obtained the power of attorney), switching the payee of Mr. Hall's artist royalties from BM, Inc. to Balancing Acts, Inc.

37.     As of February 2021, Izumi changed the address of the BM, Inc. bank account to Balancing Acts, Inc.'s address.  Upon Plaintiff's good faith knowledge and belief, proceeds from BM, Inc., including those due and owing to Plaintiff, are still being routed into Balancing Acts, Inc.'s accounts.

38.     After transferring all BM, Inc. funds and receivables to the Balancing Acts, Inc. account, BM, Inc. ceased all payments to or on behalf of Mr. or Mrs. Hall.  January 29, 2021 (six months before his death) was the last payment Mr. Hall or Plaintiff received from BM, Inc.  It was in the amount of $5,165.00.

39.     According to Plaintiff's understanding, Mr. Hall's royalties from SoundExchange (payments for streams of his music by consumers) continue to be deposited into the Biz Markie, Inc. bank account, which is controlled by Izumi, who refuses to allow access to the account to Plaintiff.

40.     Defendants have misdirected Mr. Hall's residual payments for his acting from SAG/AFTRA to Balancing Acts, Inc. Plaintiff has been unable to correctly route them to Mr. Hall's Estate.

41.     While Mr. Hall was in the hospital, BM, Inc. obtained a $149,000.00 Paycheck Protection Program (PPP) loan, authorized by the CARES Act to provide small businesses with the funds to continue to pay their employees.  However, upon Plaintiff's understanding and belief, there were no employees, and Defendant Izumi misappropriated the company's funds and used them to pay her personal taxes.

42.     While Mr. Hall was in the hospital, Defendant Izumi hacked into his personal e-mail accounts without permission and changed the passwords to a two-device authorization, such that Plaintiff's representatives could not and cannot conduct bank transfers, track down creditors,

payees, friends and family, or sign into his Facebook account. Additionally, Mrs. Hall cannot retrieve a book which Mr. Hall was writing for a year before he was hospitalized, which was linked to his e-mail. Most recently, Defendant Izumi changed the passcode to Mr. Hall's Instagram account, preventing access by Plaintiff.

43.     As noted hereinabove, Defendant Izumi did not have any right to grant intellectual property rights on behalf of Mr. Hall.  Nonetheless, Izumi, without the knowledge or consent of Mr. Hall, filed a trademark application for the mark, "Biz Markie" (Serial Number 88911105), purportedly on behalf of defendant BM, Inc., in classes 9, 16, 21, 25, 28, 35, 41 and 42. Defendant Izumi filed the mark on a 1B "intent to use" filing basis, falsely claiming that Defendant BM, Inc. had not yet used the mark in commerce; however, Mr. Hall and his company, BM, Inc., had used the mark in association with his goods and services in certain of the applied-for classes commercially for decades.

44.     Five (5) months before Mr. Hall's death, on February 8, 2021, Izumi filed a response (the "Office Action Response") to a Trademark Office Action which had been issued concerning the trademark application.  In the Office Action Response, Defendant Izumi swore that she had authorization to register the "Biz Markie" mark from Mr. Hall, whose name was Biz Markie—a required consent which she had failed to include in the application. The consent signed by Defendant Izumi purportedly granted *someone* the "right to register" the mark on behalf of Mr. Hall—but did not state that she, on behalf of Mr. Hall, granted the right to register and own the mark specifically to BM, Inc.

45.     The Trademark Office suspended the application on March 2, 2021, and in the Suspension Notice the Examining Attorney stated that the Office's requirement for a personally

signed consent had not been satisfied because the consent must be personally signed by the individual whose name appears in the mark.

## CLAIMS ON BEHALF OF TARA HALL AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARCEL THEO HALL

### COUNT I
### DILUTION OF TRADEMARK CLAIM UNDER 15 U.S.C. § 1125(c) AGAINST DEFENDANTS

46.    Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 45, as if fully set forth herein.

47.    Mr. Hall used the Biz Markie mark to identify his goods and services before Defendants began promoting and offering goods under, or otherwise using, the Biz Markie mark for their own financial benefit and without a valid license or Mr. Hall's prior authorization. The Biz Markie mark is inherently distinctive and has acquired distinction through Mr. Hall's, and now his successor, Plaintiff's, extensive, continuous and exclusive use of the mark.

48.    The Biz Markie mark is famous and distinctive within the meaning of 15 U.S.C. § 1125(c)(l), and was famous before Defendants adopted it for the Unauthorized Clothing and Merchandise.

49.    Defendants' past and continued uses of the Biz Markie mark are likely to dilute, disparage and tarnish the distinctive quality of Plaintiff's Biz Markie mark in violation of 15 U.S.C. § 1125(c)(l).

50.    Defendants' actions have financially benefited and continue to financially benefit Defendants directly and are likely to damage Plaintiff irreparably.

51.    Plaintiff is entitled to disgorgement of the Defendants' profits, its costs in bringing the lawsuit, actual damages and an award of Plaintiff's reasonable attorneys' fees and costs under the "exceptional case" provision of the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT II
**FEDERAL UNFAIR COMPETITION, FALSE ENDORSEMENT AND FALSE DESIGNATION OF ORIGIN CLAIM, UNDER 15 U.S.C. § 1125(a), AGAINST DEFENDANTS**

52.     Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 45, as if fully set forth herein.

53.     Plaintiff's Biz Markie mark has become uniquely associated with, and thus identifies, only Mr. Hall. Defendants have knowingly caused the Unauthorized Clothing and Merchandise to enter into interstate commerce with the designation "Biz Markie" connected therewith.

54.     This use of "Biz Markie" by the Defendants is a false designation of origin which is likely to cause confusion, to cause mistake and to deceive as to the affiliation, connection or association of Defendants with Plaintiff, and as to the origin, sponsorship or approval of such goods by Plaintiff.

55.     The aforesaid acts are in violation of §43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a), in that Defendants have used in connection with their goods and services a false designation of origin, a false or misleading description and representation of fact which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Plaintiff and as to the origin, sponsorship, and approval of Defendants' goods and commercial activities by Plaintiff.

56.     Plaintiff is entitled to disgorgement of the Defendants' profits, its costs in bringing the lawsuit, actual damages and an award of Plaintiff's reasonable attorneys' fees and costs under the "exceptional case" provision of the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT III
## UNFAIR COMPETITION CLAIM AGAINST DEFENDANTS
## FEDERAL COMMON LAW

57.     Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 45, as if fully set forth herein.

58.     By virtue of Defendants' acts, hereinabove pleaded, Defendants have engaged in unfair competition with Plaintiff, in violation of the common law of the District of Columbia.

59.     Defendants' offering of goods under the name and mark "Biz Markie" was calculated to deceive consumers and to cause consumers to believe that Defendants' goods are connected with, or sponsored by Plaintiff when they are, in fact, not.

60.     Defendants' acts are being committed with the intent, purpose and effect of procuring an unfair competitive advantage by misappropriating the valuable goodwill that has been developed by Plaintiff at substantial effort and expense and is represented by the distinctiveness of Plaintiff's name and mark employing Biz Markie.

61.     As a result of Defendants' actions in copying the distinctiveness of Plaintiff's Biz Markie name and marks, the public and consumers have been and will continue to be deceived as to the source and sponsorship of Defendants' goods, and Defendants have and will continue to obtain business they could not otherwise obtain fairly on the open market.

62.     Defendants' copying the distinctiveness of Plaintiff's Biz Markie name and the marks employing same has adversely affected and will continue to affect Plaintiff's ability to control Mr. Hall's good and valuable reputation, thereby causing injury to Plaintiff.

63.     Plaintiff is entitled to compensatory damages, the amount of which is to be determined at trial, and prejudgment and post-judgment interest, as well as injunctive relief restraining Defendants from their fraudulent and deceptive use of the Biz Markie name and marks.

## COUNT IV
## TRADEMARK INFRINGEMENT CLAIM AGAINST DEFENDANTS
## FEDERAL COMMON LAW

64.     Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 45, as if fully set forth herein.

65.     Defendants' use of the name and mark "Biz Markie" as specifically alleged hereinabove constitutes infringement of Plaintiff's Biz Markie trademark, causes likelihood of confusion, deception and mistake, and causes the purchasing public and the trade to think that Defendants' goods are in some way sponsored by, connected with, owned by, or otherwise associated with Plaintiff.

66.     As a result of Defendants' use of the name and mark Biz Markie, Plaintiff's reputation and goodwill have been and will be damaged, and Defendants have wrongfully profited from their imitation and infringement of Plaintiff's Biz Markie mark.

67.     Plaintiff is entitled to disgorgement of the Defendants' profits, its costs in bringing the lawsuit, actual damages and an award of Plaintiff's reasonable attorneys' fees and costs under the "exceptional case" provision of the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT V
## IN REM INJUNCTIVE RELIEF CLAIM UNDER THE ANTICYBERSQUATTING
## CONSUMER PROTECTION ACT AGAINST BM, INC.

68.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 45, as though fully set forth herein.

69.     BM, Inc., the current registrant of the domain name <BIZMARKIE.com>, has a bad faith intent to profit from Plaintiff's Biz Markie mark.

70.     BM, Inc. has unlawfully and without any proper authorization registered, trafficked in, and/or used the <BIZMARKIE.com> domain name, which is identical and therefore

confusingly similar to, and dilutive of, Plaintiff's Biz Markie mark, in violation of the Anticybersquatting Consumer Protection Act ("ACPA") 15 U.S.C. § 1125(d).

71.     Under 15 U.S.C. § 1125(d)(2), Plaintiff is entitled to, and requests, a court order that would require Defendants to immediately terminate the wrongful use of the domain and that would result in the immediate transfer of the <BIZMARKIE.com> domain name to Plaintiff.

72.     Plaintiff also is entitled to maximum statutory damages of $100,000.00 under the ACPA.

## COUNT VI
## MISAPPROPRIATION OF NAME OR LIKENESS AND VIOLATION OF RIGHT OF PUBLICITY CLAIM AGAINST DEFENDANTS

### Second Restatement of Torts, adopted by the District of Columbia

73.     Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 45, as if fully set forth herein.

74.     The distinctive and famous name and stage name Biz Markie and Mr. Hall's persona and identity have significant commercial value, which has been developed by over thirty (30) years of continuous use and advertisement.

75.     Defendants have unlawfully misappropriated and used the Biz Markie name and stage name and Mr. Hall's persona and identity, in the District of Columbia and elsewhere, in connection with the above-identified Unauthorized Clothing and Merchandise being offered for sale and sold throughout the United States, including the District of Columbia, without the consent of the Plaintiff, for its value and for commercial and advertising purposes, rather than incidentally or for newsworthy purposes.

76.     Defendants had actual knowledge that they were using the Biz Markie name and stage name, and the persona and identity of Mr. Hall without any right, license or permission in connection with the Unauthorized Clothing and Merchandise being offered for sale in stores and

online. Accordingly, Defendants knowingly used and misappropriated the Biz Markie name in disregard for the rights and interests of Plaintiff in the Biz Markie name.

77.     Plaintiff, and specifically, Mr. Hall, can be readily identified from Defendants' publication and use of his name, stage name, persona and identity.

78.     Defendants have received an unfair advantage and benefit as a result of their appropriation of Mr. Hall's name, stage name, persona and identity that they otherwise would not have received.

79.     The District of Columbia has adopted the Restatement (Second) of Torts § 652C for a claim of misappropriation and right of publicity, which provides that "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy."

80.     Defendants' knowing misappropriation of the Biz Markie name and Mr. Hall's name, stage name, persona and identity demonstrates flagrant disregard for Plaintiff's interests therein, or was deliberate and intentional, and warrants the imposition of punitive damages against Defendants. *Vassiliades v. Garfinckel's, Brooks Bros*., 492 A.2d 580 (D.C. 1985).

81.     Plaintiff is also entitled to compensatory damages, the amount of which is to be determined at trial, as well as any prejudgment and post-judgment interest.

## <u>COUNT VII</u>
## UNJUST ENRICHMENT CLAIM AGAINST DEFENDANTS

82.     The allegations of paragraphs 1–45 are hereby incorporated by reference as if set forth in full herein.

83.      No express contract exists between Mr. Hall and Defendants with regard to income from his name, image and likeness and/or the right to receive income from his recordings and performances, according to Plaintiff's good faith understanding.

16

84.     In the event it is found that Mr. Hall willfully granted the right to his name, image and likeness to Defendant BM, Inc., and/or the right to receive income from certain of his recordings, and performances, he would have conferred a benefit solely on said Defendant, not on Defendant Izumi.

85.     If Mr. Hall granted such rights to Defendant BM, Inc., Defendants would know of the benefit conferred by Mr. Hall and that Mr. Hall and his successor in interest, Plaintiff, expected Defendant BM, Inc. to pay to Mr. Hall, and to Plaintiff, Mr. Hall's share of income from use of his recordings and performances, and for the use of his name, image and likeness on all commercial paraphernalia.

86.     Defendants accepted and retained the benefits described herein without paying Plaintiff for its share of income or for the value of Mr. Hall's name, image and likeness.

87.     Defendants' receipt of funds from Mr. Hall's recordings and performances, and their commercial use of his name, image and likeness have allowed Defendants to obtain and retain funds and obtain other benefits to which they were not entitled or for which Plaintiff was entitled to compensation.

88.     Defendants were aware they were obtaining funds, assets, and opportunities, which items rightfully belonged to Mr. Hall (and now Plaintiff), and that Mr. Hall, and now Plaintiff, expected to be paid these funds or a significant portion thereof.

89.     As a result of Defendants' actions, they have been unjustly enriched at Plaintiff's expense.

90.     Because of Defendants' actions, Plaintiff has been damaged and is entitled to compensatory damages in an amount to be determined at trial, as well as any prejudgment and post-judgment interest.

## COUNT VIII
## CONVERSION CLAIM AGAINST DEFENDANTS

91.     The allegations of paragraphs 1–45 are hereby incorporated by reference as if set forth in full herein.

92.     There is no Shareholder Agreement signed by Mr. Hall, and therefore his ownership rights in BM, Inc., which he wholly owned, passed to Plaintiff upon his death.

93.     However, Defendant BM, Inc. through its counsel, now claims that interests in BM, Inc. held by Mr. Hall and/or Plaintiff passed to Defendant Izumi pursuant to certain terms of the unsigned and thus invalid Stockholder Agreement at his death. Both Izumi and BM, Inc. have refused to provide complete books or records of the company to Plaintiff, thus preventing Plaintiff from exercising control over the estate's property.

94.     Defendant Izumi has committed an unlawful exercise of ownership, dominion, and control over the personal property of Plaintiff in denial and repudiation of Plaintiff's rights thereto, interfering with the Plaintiff's right to control the property in question.

95.     BM, Inc. through Izumi has refused to provide payment for the Estate's share of income to Plaintiff upon request. As a result of Defendant BM, Inc.'s and Izumi's conversion, Plaintiff has been severely damaged in an amount greater than $100,000.00.

96.     Defendant Izumi has also failed to provide Plaintiff with access to any bank accounts, commercial accounts, social media accounts, and the like, despite Plaintiff's repeated requests. Plaintiff has no way to access its income or account information.

97.     Defendant Izumi's actions are deliberate and intentional. Indeed, when given several opportunities to relinquish control over the property and assets, Defendant Izumi has not done so.

98.     Because of Defendant Izumi's actions, Plaintiff is completely shut out of BM, Inc., including income from it, information about it, and control over it.

99.     Funds that should lawfully be going to the Estate are instead being diverted directly to Defendant Izumi and her own companies.

100.     Plaintiff is entitled to compensatory damages, pre-judgment and post-judgment interest, as well as attorneys' fees, and an order transferring the corporation and all income and proceeds from Biz Markie goods and services from Defendants to the Plaintiff, free and clear of any and all interests, liens and claims other than restrictions of record not imposed or caused by the Defendants.

101.     Additionally, as Defendants BM, Inc. and Izumi committed a tortious act accompanied by conduct and a state of mind evidencing malice or its equivalent, Plaintiff is entitled to punitive damages by reason of Defendants' deliberate and willful misconduct, fraud, and wantonness, as alleged herein. The case is particularly egregious because Defendants took advantage of Mr. Hall during his Period of Incapacitation and, after his death, continue to infringe on his mark, persona, image, reputation, likeness, and the like for personal and pecuniary gain to the detriment of his Estate.

### COUNT IX
### BREACH OF FIDUCIARY DUTY CLAIM AGAINST DEFENDANT IZUMI

102.     The allegations of paragraphs 1–45 are hereby incorporated by reference as if set forth in full herein.

103.     If Mr. Hall executed the Power of Attorney to Izumi or otherwise granted Izumi or BM, Inc. the right to exploit his name, image and likeness, Defendant BM, Inc. and its purported manager, Defendant Izumi, owed Plaintiff a fiduciary duty to act solely within his best interests.

104.     The terms of the purported Power of Attorney specifically disallowed the use by Izumi of any of Plaintiff's property to benefit her.

105.     Defendant Izumi used the Power of Attorney in bad faith and in her own self-interest, such that she personally benefitted from its use to the exclusion of Plaintiff.

106.     By using the Power of Attorney to divert and/or retain income that is due to Plaintiff, among other actions, Defendant Izumi breached her fiduciary duty pursuant to the Power of Attorney.

107.     By receiving and retaining income from sales of Mr. Hall's recordings and performances, and selling merchandise featuring Mr. Hall's name, image and likeness and failing to compensate Mr. Hall and therefore Plaintiff, Defendant Izumi breached that duty.

108.     The breach by Defendant Izumi proximately caused an injury to Plaintiff, and Plaintiff is entitled to a full accounting and payment of such income as damages to be determined at trial, as well as any pre-judgment and post-judgment interest.

## BACKGROUND FOR ADDITIONAL DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

109.     Plaintiff additionally brings this action derivatively in the right and for the benefit of BM, Inc. to redress injuries suffered, and to be suffered, by BM, Inc. as a direct result of breach of fiduciary duty and other wrongful acts by Defendant Izumi.

110.     Four (4) days before Mr. Hall's death, Defendant Izumi directed attorney Marcantonio Barnes to send Tara Hall a proposed draft of what purported to be an *unsigned* BM, Inc. shareholder agreement (dated May 19, 2021) for signature, which reflected that Izumi owned 51% of Biz Markie, Inc. and Mr. Hall owned 49% pursuant to an alleged Board action and stock issuance occurring on February 5, 2015.  This new agreement was watermarked with "DRAFT"

written across each page.  Defendants have not provided any document reflecting a prior "Board action." Plaintiff's representatives have never seen a signed Shareholder's Agreement, and Defendants have failed to provide one.

111.    Defendant Izumi claims to own 51% of BM, Inc. or more due to a clause in the unsigned shareholder agreement concerning the transfer of shares of the company.

112.    Plaintiff is the rightful owner of at least a 49% interest in BM, Inc., but to date, Defendants have refused to provide Plaintiff all of the documentation relating to BM, Inc. and its assets.

113.    Defendant Izumi, by virtue of her purported position as a director and/or officer, owed to the company and to its shareholders the fiduciary duty of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the company, as well as in the use and preservation of its property and assets. The conduct of Defendant Izumi complained of herein involves a knowing and culpable violation of her obligations as director and/or officer of BM, Inc., the absence of good faith on her part, and a reckless disregard for her duties to BM, Inc. and its shareholders, which she was aware or should have been aware posed and pose a risk of serious injury to BM, Inc.

114.    Pursuant to her claim that she is the majority owner of BM, Inc., Izumi has continued to engage in numerous transactions on behalf of BM, Inc., all of which are self-serving, including directing payments of Defendant BM, Inc. funds to Balancing Acts, Inc., her solely owned corporation.

115.    Defendant Izumi has been acting as the manager controlling BM, Inc.

116.    On information and belief, Defendant Izumi looted BM, Inc. and has been diverting amounts paid by SoundExchange, Warner Music Group and others from BM, Inc. to herself

personally or her wholly owned companies. To the extent those transfers are determined to be fraudulent, Plaintiff reserves all of its rights to assert that they should be voided.

117.    Defendant Izumi's acts alleged herein were fraudulent, willful, malicious, knowing, wanton, reckless, and/or grossly negligent.

118.    Tara Hall, as personal representative of the estate of Marcel Theo Hall, is now a shareholder of BM, Inc.—as Mr. Hall was a shareholder of BM, Inc. at the time of the wrongdoing alleged herein—and has been a shareholder of BM, Inc. continuously since his death.  D.C. Code 29-305.51.

119.    Plaintiff will adequately and fairly represent the interests of BM, Inc. and its shareholders in enforcing and prosecuting its rights.

120.    BM, Inc. is named as a nominal defendant in this case solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have. Prosecution of this action, independent of the current Board of Directors, is in the best interests of BM, Inc.

121.    The wrongful acts complained of herein subject, and will continue to subject, BM, Inc. to continuing harm because the adverse consequences of the actions are still in effect and ongoing.

122.    The wrongful acts complained of herein were unlawfully concealed from BM, Inc. shareholders.

123.    In August 2021, Plaintiff requested Defendants to transfer Mr. Hall's assets to Plaintiff immediately, in large part for the purpose of protecting BM, Inc. from further harm. To date, that has not occurred.

124.   Plaintiff renewed this request on March 8, 2022, and formally demanded Defendants cease and desist all wrongful acts and for Defendants to take suitable action.

125.   It is clear to Plaintiff, however, that this demand is futile because the purported officer and director is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

126.   The purported officer and director also has not and cannot validly exercise a business judgment that is in the best interests of the corporation; rather, all business judgments as of late are rooted—quite clearly—in Izumi's own self-interests (as only she has benefited personally from any transactions at the expense of the corporation and she has diverted profits from the corporation to herself) and not on an informed basis, in good faith or in the honest belief that the actions taken are in the best interests of the company.

127.   Not once, for example, has Izumi reached out to Plaintiff to seek any input or approval concerning the company, its direction or actions.

128.   Defendants have not made any disclosures, much less a full disclosure of the details of any of the transactions taken on the company's behalf, despite months of requests from Plaintiff.

129.   Defendants' actions are threatening the company's fiscal integrity.

130.   The wrongful acts complained of herein, which show multiple breaches by the alleged current officer and director of her fiduciary duties of loyalty, due care, and oversight, were undertaken by Izumi fraudulently or in bad faith.

131.   A majority of the Board of Directors is incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action for the reasons set forth above and below.

132.    As of the date of this Complaint, the current Board of Directors allegedly consists only of Defendant Izumi.

133.    Because irreparable injury to BM, Inc. would result by waiting for any response from Defendant Izumi, Plaintiff is now commencing this proceeding against her.

134.    Plaintiff has been forced to retain the undersigned law firms and other attorneys as a direct result of the complained-of acts of Defendants, and is obligated to pay them a reasonable fee for their services in connection with this action and any related actions.

## DERIVATIVE CLAIMS ON BEHALF OF BIZ MARKIE, INC.

### COUNT X
### BREACH OF FIDUCIARY DUTY CLAIM AGAINST IZUMI

135.    The allegations of paragraphs 1–45 and 109–134 are hereby incorporated by reference as if set forth in full herein.

136.    Defendant Izumi owed a fiduciary duty of care and loyalty to BM, Inc. to make decisions that pursue the corporation's interests with reasonable diligence and prudence and loyalty to act in the best interest of the corporation and its stockholders. Defendant Izumi breached that duty of care each time she made a unilateral decision for the corporation without regarding the corporation's best interests or pursuing the corporation's best interests with reasonable diligence and prudence.

137.    Defendant Izumi also owed BM, Inc. a duty of loyalty to act in the best interest of the corporation and its stockholders by not placing her personal interest ahead of the interests of the corporation or its stockholders.

138.    Defendant Izumi breached the duty of loyalty by engaging in a pattern of conduct which is seriously prejudicial to the rights and interests of BM, Inc., including but not limited to the following:   as set forth with particularity above, Izumi is acting fraudulently by

24

misappropriating BM, Inc.'s proprietary, monetary, and other property interests and proceeds owned by and duly owed to it; competing unfairly; falsely endorsing and falsely designating the Biz Markie name; and funneling money to herself and her own company instead of through BM, Inc., among other things.

139.    The breaches by Defendant Izumi proximately caused an injury to BM, Inc. and BM, Inc. is entitled to a full accounting and payment of such income as damages to be determined at trial, as well as any pre-judgment and post-judgment interest.

## COUNT XI
## CONSTRUCTIVE TRUST CLAIM AGAINST DEFENDANT IZUMI

140.    Plaintiff re-alleges and adopts each and every allegation contained in Paragraphs 1 through 45 and 109 through 134 above as if fully set forth herein.

141.    A relationship of trust and confidence existed between Defendant Izumi, on the one hand, and BM, Inc., on the other hand.

142.    Defendant Izumi took advantage of that position of trust in order to benefit herself.

143.    The transfer of beneficiaries for income related to goods and services of BM, Inc. has unjustly enriched Defendant Izumi because she continues to benefit from the use of such income or proceeds, which she had no right to receive, to the detriment of BM, Inc. and its other shareholder, Plaintiff.

144.    BM, Inc. is entitled to a full accounting of all corporate records and the imposition of a constructive trust upon any income and proceeds that were received by Defendant Izumi on behalf of Plaintiff and/or BM, Inc.

145.    BM, Inc. requires this equitable remedy to be imposed by the Court to benefit it as BM, Inc. has been wrongfully deprived of its rights due to Defendant Izumi's obtaining or holding a legal property right which it would be unjust for her to retain.

146.    BM, Inc. has no adequate remedy at law.

147.    This is a claim to impose a constructive trust on the income and proceeds received by Defendant Izumi from income attributable to BM, Inc.

## COUNT XII
## TEMPORARY APPOINTMENT OF CUSTODIAN OVER BM, INC.

148.    Plaintiff re-alleges and adopts each and every allegation contained in Paragraphs 1 through 45 and 109 through 134 as if fully set forth herein.

149.    Plaintiff, as shareholder of BM, Inc., seeks an appointment of one or more persons to be custodians of and for BM, Inc. in this proceeding.

150.    Defendant Izumi currently is in full control of BM, Inc.

151.    Izumi has engaged in a pattern of conduct which is seriously prejudicial to the rights and interests of BM, Inc., including but not limited to the following:  as set forth with particularity above, Izumi is acting fraudulently by misappropriating BM, Inc.'s proprietary, monetary, and other property interests and proceeds owned by and duly owed to it; competing unfairly; falsely endorsing and falsely designating the Biz Markie name; and funneling money to herself and her own company instead of through BM, Inc., among other things.

152.    Izumi's actions, as described herein and throughout the Complaint, have resulted in irreparable injuries to BM, Inc. and its shareholder, Plaintiff. These injuries are of a financial, proprietary, intellectual property, reputational, and commercial nature.

153.    Izumi's actions are placing the company at immediate risk of great loss, including her misdirection of funds to be paid to BM, Inc. (such as record royalties and residual payments) directly to herself and entities owned and controlled by her.

154.    Because Izumi is running the corporation fraudulently and out of her own self-interests and without any informed business judgment, there is an imminent danger she is diminishing the value of the company and squandering all of its assets.

155.    A custodian immediately should be appointed and granted the authority, through proper court order and for the duration of these proceedings, to exercise all of the powers of BM, Inc., through or in the place of its board of directors, to the extent necessary to properly manage the activities and affairs of the corporation in the corporation's best interests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tara Hall as Personal Representative of the Estate of Marcel Theo Hall prays that:

1.    this Court grant judgment to Plaintiff upon Count One of this Complaint for Dilution of Trademark against both Defendants jointly and severally, and award to Plaintiff a disgorgement of the Defendants' profits, Plaintiff's costs in bringing the lawsuit, actual damages and Plaintiff's reasonable attorneys' fees and costs under the "exceptional case" provision of the Lanham Act.

2.    this Court grant judgment to Plaintiff upon Count Two of this Complaint for Unfair Competition, False Endorsement and False Designation Of Origin against both Defendants jointly and severally, and award to Plaintiff a disgorgement of the Defendants' profits, its costs in bringing the lawsuit, actual damages and Plaintiff's reasonable attorneys' fees and costs under the "exceptional case" provision of the Lanham Act.

3.    this Court grant judgment to Plaintiff upon Count Three of this Complaint for Common Law Unfair Competition against both Defendants jointly and severally, and award to Plaintiff compensatory damages, the amount of which is to be determined at trial and

prejudgment and post-judgment interest, as well as injunctive relief restraining Defendants from their fraudulent and deceptive use of the Biz Markie name and marks.

4. this Court grant judgment to Plaintiff upon Count Four of this Complaint for Common Law Trademark Infringement against both Defendants jointly and severally, and award to Plaintiff a disgorgement of the Defendants' profits, its costs in bringing the lawsuit, actual damages and Plaintiff's reasonable attorneys' fees and costs under the "exceptional case" provision of the Lanham Act.

5. this Court grant In Rem Injunctive Relief to Plaintiff upon Count Five of this Complaint Under the Anticybersquatting Consumer Protection Act Against BMI, Inc., and award to Plaintiff a court order requiring Defendants to immediately terminate their wrongful use of the domain and immediately transfer the <BIZMARKIE.com> domain name to Plaintiff, as well as maximum statutory damages of $100,000.00 and an award of Plaintiff's reasonable attorneys' fees and costs.

6. this Court grant judgment to Plaintiff upon Count Six of this Complaint for misappropriation of the name and likeness of Biz Markie and violation of Plaintiff's right of publicity against both Defendants jointly and severally, and award to Plaintiff compensatory damages, the amount of which is to be determined at trial, prejudgment and post-judgment interest, as well as the imposition of punitive damages against Defendants.

7. this Court grant judgment to Plaintiff upon Count Seven of this Complaint for Unjust Enrichment against both Defendants jointly and severally, and award to Plaintiff compensatory damages and punitive damages in amounts to be determined at trial, as well as any prejudgment and post-judgment interest.

8. this Court grant judgment to Plaintiff upon Count Eight of this Complaint for Conversion against both Defendants jointly and severally, and award to Plaintiff compensatory and punitive damages, pre-judgment and post-judgment interest, as well as attorneys' fees, and enter an order transferring the corporation and all income and proceeds from Biz Markie goods and services from Defendants to the Plaintiff.

9. this Court grant judgment to Plaintiff upon Count Nine of this Complaint for Breach of Fiduciary Duty against Defendant Izumi, and award to Plaintiff a full accounting and payment of income from sales of Mr. Hall's recordings and performances, and merchandise featuring Mr. Hall's name, image and likeness as damages to be determined at trial, as well as any prejudgment and post-judgment interest.

10. this Court issue a judgment that Plaintiff owns 100% of BM, Inc. all shares must be transferred immediately to her, and Defendants do not own any interest in the income, proceeds, or other monies from the sale of Biz Markie goods and services; the Power of Attorney is invalid and unenforceable; if the Power of Attorney is enforceable, it does not extend to any intellectual property rights such as trademarks; the Shareholder Agreement is wholly invalid and unenforceable; as 100% owner of BM, Inc. Plaintiff is entitled to receive all shares, profits, income, and money generated by BM, Inc.; Izumi has no right to use the Biz Markie name, persona, mark, website, or social media; in misappropriating or otherwise using the Biz Markie name, persona, mark, website, or social media, Defendants have violated federal laws and unjustly enriched themselves; Defendants have breached fiduciary duties they owe to Plaintiff; a temporary appointment of custodian over BM, Inc. is warranted during the pendency of this action; Defendants have wrongfully converted money that belongs to Plaintiff; Plaintiff is entitled to Defendants' immediate

termination of the wrongful use of the domain, Bizmarkie.com, as well as the use of Mr. Hall's name, image, likeness, marks, and tradenames; Plaintiff is the lawful and sole owner of the <Bizmarkie.com> domain name and directing the transfer of <Bizmarkie.com> immediately to Plaintiff; Plaintiff is entitled to impose a constructive trust on any income and proceeds Defendants receive and have received; and Defendants have held and continue to hold the income and proceeds that they have received and are receiving directly or indirectly from Biz Markie goods and services as a constructive trustee for the benefit of the Plaintiff.

11. this Court grant issue an order immediately and preliminarily enjoining and restraining during the pendency of this action, and thereafter permanently enjoining and restraining Defendants, their agents, servants, employees, attorneys, parents and subsidiaries, related companies, and all persons acting for, with, by, through or under them, and each of them from:

    a.    Using the name and mark Biz Markie or any name, term or mark similar thereto or any confusingly similar designation alone or in combination with other terms, as a trademark, slogan, tag line, trade name component or otherwise, as a domain name, sub-domain, directory name, email address or other such computer addresses, as the name of Defendants' websites, as part of a URL, metatag, hashtag, Ad Words, or, in any other way to market, advertise, sell, offer for sale or identify Defendants' goods, services or advertisements;

    b.    Otherwise infringing Plaintiff's marks employing the name, terms or phrase Biz Markie therein;

c.   Unfairly competing with Plaintiff in any manner whatsoever;

d.   Causing a likelihood of confusion, or other injury to Plaintiff's business reputation, or dilution of the distinctive quality, of Plaintiff's trademark by any unauthorized use, dilution, blurring, devaluing or tarnishment of the same; and

e.   Using the name, likeness, persona or identity of Mr. Hall or his professional and stage name "Biz Markie" or any similar name which directly or indirectly refers, portrays, characterizes, conjures up images of, associates with or relates to the Plaintiff;

As well as an Order:

f.   requiring Defendants to deliver and destroy all devices, websites, computer hardware and software, files, menus, hard drives, servers, diskettes and backups, literature, advertisements, packages, labels, signs, prints, wrappers, receptacles, and all other materials and products in the possession of Defendants or under their control, bearing the name and/or mark Biz Markie in or on them, and all plates, molds, matrices and other means of making the same;

g.   requiring Defendants to notify, in writing, and direct to their internet service provider(s), web host(s) and all publishers of directories or lists, including Internet search engines, in which the Defendants' use of the names and marks employing Biz Markie appear, to delete all references to said names and marks from their public databases, search engine directories, directory assistance and from all future directories in which said names and marks are

to appear, and to delete all forwarding or "cache memory" or storage mechanisms referencing names and marks employing the mark and name Biz Markie, or the persona of Mr. Hall;

h.    requiring Defendants to pay over to Plaintiff all profits realized directly or indirectly by Defendants, directly or indirectly related to the Unauthorized Clothing and Merchandise, and to other products and services, the sales of which have been enhanced directly or indirectly from the Unauthorized Clothing and Merchandise, or advertising of same, or otherwise by reason of Defendants' unlawful acts alleged herein from first sale to present;

i.    requiring Defendants to provide Plaintiff with immediate access to all of BM, Inc.'s and Mr. Hall's social media accounts, bank accounts, loan accounts, commercial accounts, and the like;

j.    requiring Defendants to pay over to Plaintiff all profits realized directly or indirectly by Defendants, directly or indirectly related to the Unauthorized Clothing and Merchandise, and to other products and services, the sales of which have been enhanced directly or indirectly from the Unauthorized Clothing and Merchandise, or advertising of same, or otherwise by reason of Defendants' unlawful acts alleged herein;

k.    requiring Defendants to turn over all books and corporate, accounting, and other records of Defendant BM, Inc., including bank accounts, and deliver a full financial accounting since inception along with payment of all income due and owing;

l.   requiring Defendants to turn over all books and records of Defendant Izumi's companies, including bank accounts, related to Mr. Hall, Biz Markie, Plaintiff, and BM, Inc. and deliver a full financial accounting and payment of all income since inception; and

m.   requiring Defendants to file with the Court, and serve upon Plaintiff's counsel, within thirty (30) days after entry of judgment, a report, in writing, and under oath, setting forth, in detail, the manner and form in which Defendants have complied with the requirements of the injunction and order;

AND, FURTHER, Plaintiff Tara Hall as Personal Representative of the Estate of Marcel Theo Hall derivatively on behalf of Biz Markie, Inc. prays:

12. this Court issue an order requiring Defendant Izumi's full accounting and payment of BM, Inc.'s proprietary, monetary, and other property interests and proceeds to BM, Inc., as well as any prejudgment and post-judgment interest as requested in Count Ten.

13. this Court impose a constructive trust on the income and proceeds received by Defendant Izumi from income attributable to Biz Markie, Inc. as requested in Count Eleven; and

14. this Court immediately appoint a custodian for the duration of these proceedings, to exercise all of the powers of BM, Inc., through or in the place of its board of directors, to the extent necessary to properly manage the activities and affairs of the corporation in the corporation's best interests, as requested in Count Twelve.

AND, FURTHER, Plaintiff prays:

15. this Court award pre-judgment and post-judgment interest on all monetary awards, and

16. Such other and further relief as the Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

DATED: March 23, 2022

Respectfully submitted,

*/s/ Benjamin E. Horowitz*
Benjamin E. Horowitz (D.C. Bar No. 1017262)
VENABLE LLP
600 Massachusetts Avenue
Washington, D.C. 20001
(202) 344-4494
BEHorowitz@venable.com

Alan S. Clarke (*pro hac vice* forthcoming)
Greenspoon Marder LLP
Promenade II
1230 Peachtree Street, NE, Suite 1900
Atlanta, GA 30303
(404) 816-9800
Alan.Clarke@gmlaw.com

Stephanie L. Varela (*pro hac vice* forthcoming)
Greenspoon Marder LLP
200 East Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
(954) 761-2944
Stephanie.Varela@gmlaw.com

*Attorneys for Plaintiff*