UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| TARA HALL AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARCEL THEO HALL, and derivatively on behalf of Biz Markie, Inc.,<br><br>    Plaintiff,<br><br>vs.<br><br>BIZ MARKIE, INC., a Washington, D.C. corporation, and JENNIFER IZUMI, individually,<br><br>    Defendants. | Case No.: 1:22-cv-00806-CKK |

**DEFENDANTS BIZ MARKIE, INC., AND JENNIFER IZUMI'S STATEMENT OF <u>UNDISPUTED MATERIAL FACTS</u>**

Pursuant to Local Civil Rule 7(h) and Federal Rule of Civil Procedure 56, and in support of their Motion for Partial Summary Judgment, Defendants Jennifer Izumi and Biz Markie, Inc. ("BMI") hereby submit the following statement of material facts as to which there is no genuine dispute:

    1.    Marcel Hall had few people who were constants in his life. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 53:20-22; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 345:24-346:2)

    2.    Two people who had been constants in Marcel's life were his first manager/partner, Lamont Wanzer, and Izumi. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 53:20-22; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 345:24-346:2, 371:6-372)

    3.    Wanzer ran his business affairs, including managing Marcel Hall's entertainment career, through a Maryland corporation that Wanzer formed, Bizmont Entertainment, Inc. ("Bizmont"). (Deposition of Jennifer Izumi, 4/23/24, Ex. 3 at 90:12-91:9; Declaration of Dayna

1

Cooper, Ex. 4, ¶ 3 at Ex. A thereto (Maryland.gov Business Entity Search results for Bizmont Entertainment, Inc.))

4. Wanzer exclusively handled the business affairs associated with "Biz Markie" through Bizmont and Hall exclusively focused on the artistic side of "Biz Markie" work. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 14:1-17:20; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 432:7-20)

5. Wanzer was Bizmont's sole shareholder. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 92:7-9; Declaration of Dayna Cooper, Ex. 4, ¶ 3 at Ex. A thereto)

6. Wanzer passed away from cancer in 2014. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 344:19-20)

7. Wanzer's death motivated Marcel Hall to want to start getting his own personal and business affairs in order. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 201:7-16; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 344:6-23, 346:24-347:9)

8. Part of Marcel Hall's motivation in getting his own affairs in order was that he had experienced health problems. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 104:22-105:2)

9. Bizmont ceased operating when Lamont Wanzer passed away. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 89:12-22)

10. Izumi met Marcel Hall through mutual friends and her work with Bizmont. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 12:21-13:11)

11. At Bizmont, Izumi was responsible for developing, revising, and refining contracts, ensuring they were aligned with strategic objectives and tailored to meet evolving business needs. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 77:7-78:3; Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 14:7-15)

12. By the time of Wanzer's passing, Marcel Hall and Izumi had worked together nearly 20 years, and trusted each other. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, 95:8-12)

13. Over the years, Izumi and Marcel Hall became like family to each other. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 345:22-346:15)

14. Marcel Hall and Izumi agreed to work together through an entity they formed called Biz Markie, Inc. ("BMI") (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 94:20-95:22)

15. Izumi owned 51% of BMI, and Marcel Hall owned 49%. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 12:11-12, 231:8-9; Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 52:9-12)

16. In 2019, Marcel Hall and Izumi filled out paperwork for BMI to obtain a business line of credit from BB&T Bank. (Declaration of Jennifer Izumi, Ex. 5, at ¶¶ 16-24; Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 132:4-16)

17. Marcel Hall and Izumi both signed a Business Line of Credit Application and Agreement as part of the process for BMI to obtain a loan from BB&T Bank. (Declaration of Jennifer Izumi, Ex. 5, at ¶ 17 and Exhibit B thereto)

18. Marcel Hall submitted a personal financial statement that he signed to BB&T as part of the process for BMI to obtain a loan from BB&T Bank. (Declaration of Jennifer Izumi, Ex. 5, at ¶ 17 and Exhibit E thereto)

19. Part of the BB&T paperwork included a Credit Line Agreement that Marcel Hall signed. (Declaration of Jennifer Izumi, Ex. 5, at ¶¶ 21-22 and Exhibit F thereto, Hall_JRH_02553 to _2557)

20. Another document that Marcel Hall signed as part of the process for BMI to obtain the business line of credit from BB&T was a Guaranty Agreement of the same that bore

3

his notarized signature. (Declaration of Jennifer Izumi, Ex. 5, at ¶ 24 and Exhibit H thereto, Hall_JRH_02549 to _02552)

21. In support of the loan application to BB&T, Marcel Hall submitted a personal tax return and BMI tax return that confirmed he was a 49% shareholder in BMI. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 131:4-132:16; Declaration of Jennifer Izumi, Ex. 5, at ¶¶ 18-19 and Exhibit C and D thereto)

22. The Credit Line Agreement that Marcel Hall signed contained representations and warranties that all of the documents Izumi and Marcel Hall had submitted to BB&T to obtain the line of credit were accurate. The text of that portion of the Credit Line Agreement states, in relevant part:

> **Representations and Warranties.** The Borrower and Guarantor(s), where applicable, represents and warrants to Bank (Which shall survive the execution hereof) that: (i) …If the Borrower and/or any Guarantor is a corporation, general partnership, limited partnership, limited liability partnership, or limited liability company, each warrants and represents that it is duly organized and validly existing under the laws of its respective state of incorporation or organization; that it is … duly authorized by its board of directors, general partners or member/manager(s), respectively, to enter into and perform the obligations under this Agreement and the Loan Documents; … (v) **all financial reports, statements, and related information furnished to the Bank on the Borrower and/or the Guarantor(s) are true and correct and accurately reflect the financial condition of the Borrower and/or Guarantor(s) on the dates thereof, and no material adverse charge has occurred in such financial conditions since the date of the most recently furnished thereof**; (vi) Borrower and Guarantor(s) have all necessary and appropriate authority to borrow money and/or pledge assets under its articles of incorporation, by-laws, articles of organization, operating agreement, agreement of partnership, limited partnership or limited liability partnership, as the case may be, or, of any law, other agreement binding upon the Borrower or Guarantor(s), and no further consent and/or authority of any persons are required, or if required under said agreements, have been obtained; (vii) this Agreement and all other Loan Documents executed by the Borrower and/or the Guarantor(s) in connection herewith constitute the valid and legally binding obligations of the Borrower and/or Guarantor(s), as the case may be, enforceable against the Borrower and/or Guarantor(s) in accordance with their terms; … and (ix) the Borrower and/or the Guarantor(s) have read this Agreement and all other Loan Documents and fully understand and accept each of their respective terms.

(Declaration of Jennifer Izumi, Ex. 5, at ¶ 22 and Exhibit F thereto, at Hall_JRH_02555, top of page (emphasis added))

23. BB&T Bank ultimately did approve the 2019 business line of credit application for BMI based on the documents Marcel Hall and Izumi submitted.  (Declaration of Jennifer Izumi, Ex. 5, at ¶ 25)

24. BMI did receive proceeds from the $50,000 business line of credit application for BMI based on the documents Marcel Hall and Izumi submitted. (Declaration of Jennifer Izumi, Ex. 5, at ¶ 26)

25. Marcel Hall and Izumi agreed that Izumi should be BMI's majority owner in part so Izumi could execute documents on her own if Biz was traveling, got sick, or if he passed. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 231:7-13, 237:10-238:17; Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 87:21-88:20)

26. Marcel Hall and Izumi agreed that Izumi should be BMI's majority owner in part to compensate Izumi so that she would continue working with Marcel Hall and BMI, including working to continue Hall's legacy as an entertainer after he passed. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 94:20-96:11, 109:6-110:19, 231:7-233:22, 238:1-17; Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 87:22-88:20)

27. Marcel Hall and Jennifer Izumi discussed BMI's expenses and ensured the expenses were paid. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 108:16-110:19)

28. Marcel Hall and Izumi would roughly split any money that remained after BMI's expenses were paid. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 110:8-111:7)

29. If Marcel Hall ever needed more money, he and Izumi would talk and have BMI pay Hall. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 108:7-109:5, 111:4-112:16)

30. Nicholas Cusato, CPA, was an accountant for both Marcel Hall and BMI. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 538:7-14; Deposition of Nicholas Cusato, 1/31/24, Ex. 6, at 27:16-28:22, 30:10-19)

31. Cusato testified to a conversation with Marcel and Izumi in which they confirmed the 51/49 ownership of BMI. (Deposition of Nicholas Cusato, 1/31/24, Ex. 6, at 20:13-21:7)

32. Marcel was paid via both W-2 wages and as a 1099 contractor because he "tended to take more money out of the business" than Izumi did and they did not want to "draw on his capital account" which would reduce his ownership percentage. (Deposition of Nicholas Cusato, 1/31/24, Ex. 6, at 33:10-35:12)

33. Marcel expressed his wish that they make Izumi 100% owner of the "Biz Markie" business and put Marcel on payroll because Marcel was "more interested in just receiving money and being taken care of rather than the business." (Deposition of Nicholas Cusato, 1/31/24, Ex. 6, at 21:9-19)

34. Cusato testified that Marcel "had always stated in the calls that [they] had been on that the business was for [Izumi] and to make sure she was taken care of." (Deposition of Nicholas Cusato, 1/31/24, Ex. 6, at 21:20-22)

35. Marcel and Izumi discussed all key BMI/"Biz Markie" business finances in "agreed collaboration." (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 406:18-407:5)

36. Marcel and Izumi discussed key BMI/"Biz Markie" business decisions, and acted after reaching consensus. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 388:5-13)

6

37.     In early 2019, Marcel Hall and Izumi agreed that Izumi would handle all of the business operations relating to "Biz Markie" and that she would do so through Balancing Acts, Inc. ("BAI") instead of BMI. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 125:18-126:18; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 475:23-25, 479:13-481:8)

38.     Marcel hoped that running the business through BAI would let Izumi work to continue his legacy free of interference if something happened to him. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 475:23-25, 479:13-481:8)

39.     Izumi is the sole owner of BAI. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, 119:16-120:1; Deposition of Nicholas Cusato, 1/31/24, Ex. 6, at 23:14-24:7)

40.     Marcel directed that royalty payments go from BMI-held accounts to BAI-held accounts. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 125:18-126:18; Declaration of Jennifer Izumi, Ex. 5, at ¶ 27 and Exhibit J thereto)

41.     Marcel agreed that BAI should be paid for his artistic endeavors. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 123:21-124:2)

42.     The money directed from BMI to BAI was used, in part, for Marcel's personal expenses. (Deposition of Nicholas Cusato, 1/31/24, Ex. 6, at 26:20-27:2; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 490:16-23; Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 178:11-18)

43.     The money directed to BAI was going to be used, in part, for BMI's expenses. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 122:2-17; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 490:16-23; Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 178:11-18)

44.     Marcel was aware that BMI directed money to BAI for more than a year before he was hospitalized. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 479:22-480:22; Declaration of Jennifer Izumi, Ex. 5, at ¶ 27)

45. Tara and Marcel Hall got married in October 2018. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 199:8-11)

46. Marcel Hall always wanted to keep his marriage and finances separate and so did not want Tara Hall to have access to his personal or business finances. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 66:4-18)

47. After marrying Tara Hall, Marcel Hall filed a married, but separate, tax return. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 66:4-18; Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 208:18-210:9)

48. Izumi remained in control of Marcel's advanced medical directive and power of attorney after Marcel and Tara Hall married. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 64:11-65:8)

49. Marcel was contemplating divorce four months after his marriage to Tara Hall. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2 at 477:16-478:18; Deposition of Jennifer Izumi, 12/29/23, Ex. 1 at 193:8-194:18)

50. Marcel Hall lost trust in Tara Hall when he found out that she had tried to access his business, financial, and life insurance information. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 66:4-18, 194:6-196:13; Deposition of Ralph Horton, Ex. 8, 13:9-14:18)

51. In November 2018, Tara Hall attempted to gain access to Marcel Hall's business agreements with Izumi. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 423:7-424:25; Declaration of Jennifer Izumi, Ex. 5, ¶ 25 at Exhibit H thereto (November 5, 2018 email from Tara Hall to Jennifer Izumi))

52. In November 2018, Tara Hall attempted to access some of Marcel Hall's financial information. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 194:3-11; Deposition of Jennifer

8

Izumi, 4/25/24, Ex. 2, at 423:7-424:25; Declaration of Jennifer Izumi, Ex. 5, ¶ 28 at Exhibit H thereto (November 5, 2018 email from Tara Hall to Jennifer Izumi))

53. In November 2018, Tara Hall attempted to access information about Marcel Hall's life insurance policies through his life insurance broker. (Deposition of Jennifer Izumi, 12/29/23. Ex. 1, at 194:3-11; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 423:7-424:25; Declaration of Jennifer Izumi, Ex. 5, ¶ 28 at Exhibit H thereto (November 5, 2018 email from Tara Hall to Jennifer Izumi))

54. Tara Hall sent emails to Izumi, without copying Marcel, attempting to change how Marcel got paid. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 194:3-11; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 423:7-424:25; Declaration of Jennifer Izumi, Ex. 5, ¶ 28 at Exhibit H thereto (November 5, 2018 email from Tara Hall to Jennifer Izumi))

55. After Marcel Hall found out about Tara Hall's efforts to access his business and financial information, he directed Izumi to keep everything the same, and not to provide that information to Tara. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 424:4-22)

56. Marcel Hall told Tara Hall he was going to get a life insurance policy making her a beneficiary. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 449:5-450:3)

57. Marcel Hall told Tara Hall he was going to get a life insurance policy making her a beneficiary to mollify ongoing disputes the two had been having. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 449:5-450:3, 454:23-455:9)

58. Marcel Hall ultimately did not get a policy naming Tara Hall as a life insurance beneficiary. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 450:18-20)

59. Marcel Hall did not complete the medical examination necessary to get that policy. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 450:7-20)

60. Tara Hall knew that Marcel Hall did not complete the exam because she was home with him at the time. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 450:9-14)

61. As of November 16, 2018, Tara Hall knew that Izumi was a life insurance beneficiary on policies Marcel Hall had originally purchased. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 445:11-21; Declaration of Jennifer Izumi, Ex. 5, ¶ 29 and Ex. I thereto (November 16, 2018 text from Tara Hall to Jennifer Izumi))

62. On November 16, 2018, Tara Hall sent a text to Jennifer Izumi that stated: "I think this is very inappropriate for you to still be on Biz [*i.e.*, Marcel Hall] life insurance." (Declaration of Jennifer Izumi, Ex. 5, ¶ 29 and Ex. I thereto (November 16, 2018 text from Tara Hall to Jennifer Izumi))

63. Marcel Hall died intestate, after which Tara Hall was appointed the administrator of his estate. (Notice of Appointment of Tara Hall as Personal Representative, Ex. 10)

64. After being appointed administrator, Tara Hall filed a complaint in the probate proceeding against Izumi. (Tara Hall Probate Complaint, Ex. 11)

65. Tara Hall's probate complaint included allegations about the proceeds of the life insurance policies that were also referenced in Tara's initial complaint in this action. (Tara Hall Probate Complaint, Ex. 11, ¶ 4(d); Amended Complaint (Doc. 17) ¶¶ 34, 113)

66. The probate court dismissed Tara Hall's probate court complaint against Izumi *sua sponte* for lack of jurisdiction. (Order Dismissing Probate Complaint, Ex. 12)

67. Tara Hall then filed a complaint and request for an injunction in Prince George's County, Maryland, seeking to prevent Northwestern Mutual Life Insurance Company from distributing the proceeds of "Policy A," alleging improprieties on Izumi's part. (Tara Hall Complaint filed in Prince George's County, Maryland, Ex. 13, at e.g., ¶¶ 5, 12, 13)

10

68. The Prince George's County, Maryland Court denied Tara Hall's request for an injunction *sua sponte* two days after the complaint was filed. (Declaration of Dayna Cooper, Ex. 4, ¶ 12 at Ex. D thereto (Maryland Court Docket Printout at 9/23/2021))

69. Plaintiff has put forward only one measure of damages, premised on expert opinions. (Declaration of Dayna Cooper, Ex. 4, at ¶ 7)

70. Plaintiff's professed music-industry expert, Lita Rosario-Richardson, Esq. opines that that the industry norm for compensation agreements between managers and artists is approximately 10%-20% of the income earned by the artist being managed, so Izumi should not have received more than this. (Declaration of Dayna Cooper, Ex. 4, at ¶ 5 at Ex. B)

71. Plaintiff's expert Christopher Williams, a CPA, calculated the approximate dollar amount of Plaintiff's alleged damages. (Declaration of Dayna Cooper, Esq., Ex. 4 at ¶ 6, Ex. C)

72. Williams' damages estimate assumes that Rosario-Richardson's 10%-20% compensation opinion is correct, and uses the midpoint figure of 15% in his calculations. (Declaration of Dayna Cooper, Ex. 4 at ¶ 6, Ex. C)

73. Williams' damages estimate calculates the difference in what Izumi would have received at 15% and what she actually received to come up with damages of around $819,940. (Declaration of Dayna Cooper, Ex. 4, at ¶ 8)

74. BMI owned (and owns) the "Biz Markie" trademark. (Declaration of Jennifer Izumi, Ex. 5, ¶ 6; Deposition of Ronald Shaw, Ex. 7, 15:2-17:3; Deposition of Ralph Horton, Ex. 8, 9:12-10:11)

75. Plaintiff, in her capacity as the administrator of Marcel's estate, filed a sworn pleading with the Probate Court explaining that BMI "is the corporate entity through which the

Deceased's [Marcel's] professional activities were performed, including the collection of music royalties." (Tara Hall Probate Complaint, Ex. 11, ¶ 4(a))

76. Marcel and Izumi discussed use of the "Biz Markie" mark. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 86:1-12)

77. BMI used the "Biz Markie" mark starting in 2015 when it began offering and providing services under the mark. (Declaration of Jennifer Izumi, Ex. 5, at ¶ 5)

78. BMI first licensed the "Biz Markie" trademark in 2015. (Declaration of Jennifer Izumi, Ex. 5, at ¶ 5)

79. Tara Hall has disclosed no evidence that Marcel Hall personally owned the Biz Markie mark at any time. (Declaration of Dayna Cooper, Ex. 4, at ¶ 9)

80. Tara Hall has disclosed no evidence that Marcel Hall, personally, used the "Biz Markie trademark within the 10 years preceding the commencement of this lawsuit. (Declaration of Dayna Cooper, Ex. 4, at ¶ 11)

81. BMI owned the website "bizmarkie.com" starting in 2016. (Declaration of Jennifer Izumi, Ex. 5, at ¶ 4)

82. Since early 2015, BMI advertised, offered, and provided services in connection with the "Biz Markie" trademark on the website "bizmarkie.com." (Declaration of Jennifer Izumi, Ex. 5, ¶ 3; Tara Hall Second Amended Complaint (Doc. 61) ¶¶ 5 and 22 ("On or about February, 4, 2015, Izumi, or Izumi and Mr. Hall, created Defendant Biz Markie, Inc. to receive income from Mr. Hall's entertainment goods and services."))

83. Prior to his hospitalization and death, Marcel and Izumi discussed BMI and BAI's use of his image, voice, likeness, and other intellectual property and BMI's ownership. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 432:7-433:11)

84. Prior to signing anything digitally on Marcel's behalf, Izumi would receive Marcel's approval. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 25:7-10)

85. Marcel's digital signature appeared on the letter directing payment of royalties from Rhino Entertainment Company, a division of Warner Music, to BAI. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 125:1-22)

86. Marcel and Izumi reached an agreement regarding licensing or use of the Biz Markie mark prior to any such licensing or use, even though Izumi did not legally need Marcel Hall's agreement. (Declaration of Jennifer Izumi, Ex. 5, ¶¶ 10-11)

87. The Maryland Statutory Power of Attorney Executed in Favor of Izumi provides that all signatures made pursuant to the power of attorney must include "ATTORNEY-IN-FACT" or "as Agent" in the signature. (*See* Maryland Statutory Power of Attorney Executed in Favor of Izumi, Ex. 9, at 15, ¶ 4)

88. Marcel Hall was aware of merchandise being offered on "bizmarkie.com." (Tara Hall Second Amended Complaint (Doc. 61) ¶ 49; Declaration of Jennifer Izumi, Ex. 5, ¶ 30)

[SIGNATURE PAGE FOLLOWS]

Dated: October 11, 2024					Respectfully submitted,

/s/ *Dayna Cooper*

Dayna C. Cooper (D.C. Bar. No. 1033851)
Cooper Legal, LLC
1 Olympic Pl, Suite 900
Towson, MD 21204
(202) 642.5470
Dayna@CooperLegalSolutions.com