# EXHIBIT 4

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

TARA HALL AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
MARCEL THEO HALL, and derivatively
on behalf of Biz Markie, Inc.,

     Plaintiff,

vs.

BIZ MARKIE, INC., a Washington, D.C.
corporation, and JENNIFER IZUMI,
individually,

     Defendants.

Case No.: 1:22-cv-00806-CKK

## DECLARATION OF DAYNA COOPER, ESQ.

I, Dayna Cooper, Esq., declare as follows:

    1.    I am an adult and am competent to testify. If called to testify, I would testify consistently with this declaration.

    2.    I have personal knowledge of the matters set forth in this declaration.

    3.    Attached hereto as **Exhibit A** is a true and correct copy of a print-out of the articles of incorporation for Bizmont Entertainment, Inc. from the "Business Entity Search" portal at Maryland.gov (Register Your Business Online | Maryland.gov).

    4.    Plaintiff Tara Hall ("Plaintiff") has disclosed opinions from two experts: Lita Rosario-Richardson, Esq. and Christopher Williams, CPA.

    5.    A true and correct copy of excerpts of Ms. Rosario-Richardson's report is attached hereto as **Exhibit B**. (To comply with this Court's rules, only relevant excerpted pages of the exhibits referenced in this declaration are attached. Complete copies are available upon request to counsel.)

6.      A true and correct copy of Mr. Williams' report is attached hereto as **Exhibit C**.

7.      Other than the damages calculation disclosed via Tara Hall's expert reports (Exhibits B and C), Tara Hall has not disclosed any calculation of damages in this case.

8.       Williams' damages estimate calculates the difference in what Izumi would have received at 15% and what she actually received to come up with damages of approximately $819,940. *See* Ex. C at 1-3 (estimating damages at $251,180; $318,002; $46,150; and $204,608).

9.      Tara Hall has disclosed no evidence that Marcel Hall, personally, owned the "Biz Markie" trademark at any time.

10.     Tara Hall has disclosed no evidence that Marcel Hall, personally, used the mark at any time between 2015 and present.

11.     Tara Hall has disclosed no evidence that Marcel Hall, personally, used the "Biz Markie" trademark within the 10 years preceding the commencement of this lawsuit.

12.     Attached hereto as **Exhibit D** is a true and correct copy of a printout of a printout of the docket from the Circuit Court of Prince George's County, Maryland for *Tara Hall v. Northwestern Mutual Life Insurance Company*, CAL21-011208.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 11, 2024.


 _/s/ Dayna Cooper_                                
Dayna Cooper, Esq.

# EXHIBIT A

# CORPORATE CHARTER APPROVAL SHEET
## **EXPEDITED SERVICE**     ** KEEP WITH DOCUMENT **

DOCUMENT CODE 02     BUSINESS CODE 03

#  _____

Close ___X___     Stock ___X___     Nonstock _____

P.A. _____     Religious _____

Merging (Transferor) _____ _____ _____

_____

_____

_____

Surviving (Transferee) _____

_____

_____

```
1000361999179751

ID # D13370531 ACK # 1000361999179751
PAGES: 0002
BIZMONT ENTERTAINMENT INC.

01/07/2010  AT 04:31 P WO # 0001814958
```

New Name _____

_____     _____

### FEES REMITTED

| | |
|---|---|
| Base Fee: | 100 |
| Org. & Cap. Fee: | 20 |
| Expedite Fee: | 70 |
| Penalty: | |
| State Recordation Tax: | |
| State Transfer Tax: | |
| Certified Copies | |
| Copy Fee: | 22 |
| Certificates | |
| Certificate of Status Fee: | |
| Personal Property Filings: | |
| Mail Processing Fee: | |
| Other: | |
| TOTAL FEES: | 212 |

_____ Change of Name
_____ Change of Principal Office
_____ Change of Resident Agent
_____ Change of Resident Agent Address
_____ Resignation of Resident Agent
_____ Designation of Resident Agent
     and Resident Agent's Address
_____ Change of Business Code

_____ Adoption of Assumed Name
_____
_____
_____ Other Change(s)
     _____
     _____

Credit Card _____     Check ___X___     Cash _____

Code _____

Attention: _____

Documents on _____ Checks

Approved By: _____ A. 01

Keyed By: _____

COMMENT(S):

```
LAMONT C. WANZER
8718 TIMBER OAK LN
LAUREL MD 20723-5907
```

_____

```
CUST ID:0002371920
WORK ORDER:0001814958
DATE:01-07-2010 04:31 PM
AMT. PAID:$212.00
```

## ARTICLES OF INCORPORATION FOR A <u>CLOSE</u> CORPORATION

**FIRST:** The Undersigned _Lamont C. Wanzer._

whose address is _8718 Timber Oak Lane. Laurel Md. 20723._
being at least eighteen years of age, do(es) hereby form a corporation under the laws of the State
of Maryland. The corporation shall be a close corporation.

**SECOND:** The name of the corporation is _Bizmont Entertainment Inc._

_____ .

**THIRD:** The purpose(s) for which the corporation is formed is/are as follows: _____
_To provide The management and marketing_
_For entertainment related activities._

**FOURTH:** The street address of the principal office of the corporation in Maryland is
_8718. Timber Oak Lane._
_Laurel Md. 20723._

**FIFTH:** The name and address of the resident agent of the corporation in Maryland is
_Lamont C Wanzer._
_8718 Timber Oak Lane._

**SIXTH:** The corporation has authority to issue _10000_ shares at $ _1_ par value per
share.

**SEVENTH:** The corporation elects to have no board of directors. Until this election takes effect
_Lamont C Wanzer._ will be the director.

**EIGHTH:**
IN WITNESS WHEREOF, I have signed
these articles and acknowledge the
same to be my act.
*Signature(s) of Incorporator(s):*

_____

_____

**NINTH:**
I hereby consent to my designation in
this document as resident agent for
this corporation.
*Signature of Resident Agent listed in FIFTH:*

**Filing party's return address:**
_M-Financial Services._
_PO Box 144._
_Burtonsville Md. 20866._

CUST ID:0002371920
WORK ORDER:0001814958
DATE:01-07-2010 04:31 PM
AMT. PAID:$212.00

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TARA HALL AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARCEL THEO HALL, | |
| Plaintiff, | Case No.: 1:22-cv-00806 (CKK) |
| v. | |
| BIZ MARKIE, INC., *et al.*, | |
| Defendants. | |

**PLAINTIFF'S RULE 26(a)(2) DISCLOSURES**

Pursuant to Federal Rule of Civil Procedure 26(a)(2), Plaintiff, Tara Hall, As Personal Representative of The Estate of Marcel Theo Hall, and derivatively on behalf of Biz Markie, Inc., identifies the following individuals as witnesses who have been retained to provide expert testimony in this matter and that Plaintiff may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705:

> Lita Rosario-Richardson, Esq.
> Shulman Rogers, P.A.
> 12505 Park Potomac Avenue
> Potomac, MD 20854

> Christopher Williams, CFE, CPA, MBA
> Absolute Charter Group
> 1360 S. Figueroa St.
> Suite D-382
> Los Angeles, CA 90015

For the above-identified witnesses, reports and disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) are attached hereto.

/s/ Peter C. Nanov
Peter C. Nanov (D.C. Bar No. 230021)
Vorys, Sater, Seymour and Pease LLP
1909 K Street, NW, 9th Floor
Washington, DC 20006
(202) 467-8831
(202) 533-9084 (Facsimile)
pcnanov@vorys.com

Michael J. Garvin, *pro hac vice*
Marcel C. Duhamel, *pro hac vice*
Aaron M. Williams, *pro hac vice*
Vorys, Sater, Seymour & Pease LLP
200 Public Square, Suite 1400
Cleveland, OH 44114-2327
(216) 479-6100
mjgarvin@vorys.com
mcduhamel@vorys.com
amwilliams@vorys.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2024, the foregoing was served via email to:

Dayna Cooper
COOPER LEGAL, LLC
1 Olympic Place, Suite 900
Towson, MD 21204
dayna@cooperlegalsolution.com

*/s/ Peter C. Nanov*
Peter C. Nanov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TARA HALL AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARCEL THEO HALL, | |
| Plaintiff, | |
| v. | Case No.: 1:22-cv-00806 (CKK) |
| BIZ MARKIE, INC., *et al.*, | |
| Defendants. | |

**EXPERT REPORT OF LITA ROSARIO-RICHARDSON, ESQ.**

**SHULMAN ROGERS, P.A.**

**Dated:  February 16, 2024**

As is the case with Hall's artist royalties there is no legally binding assignment of Hall's music publishing income form ASCAP or CAK to Biz Markie, Inc. or Izumi/as such those monies are properly payable to the Estate.

## IV.    DETERMINING THE RELEVANT PERIOD FOR COMMISSIONS

All Izumi had was an implied or an oral agreement to provide management services to Hall.[24] If Izumi had a written agreement she would be entitled to commissions after Hall's death; however, with only an oral or implied agreement her right to commissions ended with Hall's death. Consequently, Izumi has no continuing right to any management commissions or any amounts for which she does not have a written agreement.[25]

## V.    FINDINGS & CONCLUSIONS

Contrary to Izumi's contentions, there is no evidence on the record that she was a "business partner" of Hall.  Izumi only performed traditional artist management services, assisting with booking live shows, assisting with setting up royalty accounts, and assisting with merchandizing and other agreements. She did administrative work for Hall through Biz Markie, Inc., assisting with executing contract with electronic signatures and paying his personal bills.  She also interacted with accountants and others professionals for Hall, via Biz Markie, Inc.  Biz Markie, Inc. was in essence a traditional music industry standard "artist loan company."  There is no evidence that Izumi invested in Biz Markie, rather there is evidence that the company solely owned by her, Balancing Acts, Inc., loaned money to Biz Markie, Inc.  Izumi's rights to any earnings from Hall's music career are undocumented.[26]

Further, based upon Izumi's lack of experience and Hall's stature in the music business at the time she began working with him, my conclusion is that Izumi is only entitled to 15% of any of Hall's "gross income," without deductions, for "activities in the entertainment and related fields" for the Relevant Period.

---

[24] Artist managers must have a written agreement with a specific provision that entitles them to continuing commissions. *See* Krasilovsky, *This Business of Music,* 8th Ed. (2015), p. 354 (Upon the termination of a management agreement, the manager's obligation to give advice and counsel terminates. However, almost every [written] management agreement provides that management commissions continue after the end of the term on the artist's earnings under contracts or engagements entered into during the term . . . .").  *See also* Kellogg, *Take Care of Your Music Business*, 2d, (2014), pp. 183 (commissions due after the term of a written agreement);  Siegel, *Breaking into the Music Business* (1990), pp 175-177 ("The issue is the extent to which the manager is entitled to commissions after the end of his contract with the artist, with respect both to events during the term of his contract and certain sources occurring after the term has expired. . . . . From the artist's point of view, the most felicitous resolution is for the manager to receive commission with respect to all services performed by the artist, including recordings, that are rendered during his tenure as manager, but not those that occur after he is no longer manager.")

[25] Izumi's alleged majority ownership of Biz Markie, Inc. is discussed *infra* at p. 7.

[26] Even assuming Izumi's 51% ownership interest in Biz Markie, Inc. is valid, any rights claimed by Biz Markie, Inc. would be limited to agreements entered into directly with Biz Markie, Inc. with third parties while Hall was live. Izume, if a shareholder, would be entitled to net profits therefrom. Equally, the Estate would be entitled to 49% of the net profits from Biz Markie, Inc. It is unclear from Izumi's Deposition what agreements, if any, actually exist with Biz Markie, Inc.

Izumi or Biz Markie, Inc. are only entitled to receive compensation in connection with an oral or an implied agreement to receive any amounts from Hall's activities in the entertainment and related fields up to his date of Hall's death, the Relevant Period.  Any Letters of Direction are not binding legal assignments of ownership rights or royalties associated with Hall's copyrights, trademarks, or name and likeness rights (publicity rights). As such, Izumi has no claim to any of Hall's intellectual property.

   While Letters of Direction to Biz Markie Inc. may have been issued while Hall was alive (allowing Izumi to share in his artist royalties and music publishing royalties) the Estate is not bound to those Letters of Direction, after his death, as they are not legally binding assignments.

   Further, Izumi is not entitled to any ownership interest in Hall's intellectual property after his death as there are no agreements assigning any intellectual rights from Hall to Biz Markie, Inc. or Balancing Acts, Inc. Any such interest would have to be evidenced by a signed writing.[27] No such writings exist.

   I reserve the right to supplement this Expert Report if more evidence becomes available.

/s/ *Lita Rosario-Richardson*

**Lita Rosario-Richardson, Esq.**
**Shulman Rogers, P.A.**

---

[27] Indeed, any such transfer of intellectual property rights without a writing is also precluded by the statute of frauds.

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TARA HALL AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF MARCEL THEO HALL,

Plaintiff,

v.

BIZ MARKIE, INC., *et al.*,

Defendants.

Case No.: 1:22-cv-00806 (CKK)

### PLAINTIFF'S RULE 26(a)(2) DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a)(2), Plaintiff, Tara Hall, As Personal

Representative of The Estate of Marcel Theo Hall, and derivatively on behalf of Biz Markie,

Inc., identifies the following individuals as witnesses who have been retained to provide expert

testimony in this matter and that Plaintiff may use at trial to present evidence under Federal

Rules of Evidence 702, 703, or 705:

      Lita Rosario-Richardson, Esq.
      Shulman Rogers, P.A.
      12505 Park Potomac Avenue
      Potomac, MD 20854

      Christopher Williams, CFE, CPA, MBA
      Absolute Charter Group
      1360 S. Figueroa St.
      Suite D-382
      Los Angeles, CA 90015

For the above-identified witnesses, reports and disclosures pursuant to Federal Rule of Civil

Procedure 26(a)(2)(B) are attached hereto.

/s/ Peter C. Nanov
Peter C. Nanov (D.C. Bar No. 230021)
Vorys, Sater, Seymour and Pease LLP
1909 K Street, NW, 9th Floor
Washington, DC 20006
(202) 467-8831
(202) 533-9084 (Facsimile)
pcnanov@vorys.com

Michael J. Garvin, *pro hac vice*
Marcel C. Duhamel, *pro hac vice*
Aaron M. Williams, *pro hac vice*
Vorys, Sater, Seymour & Pease LLP
200 Public Square, Suite 1400
Cleveland, OH 44114-2327
(216) 479-6100
mjgarvin@vorys.com
mcduhamel@vorys.com
amwilliams@vorys.com

*Attorneys for Plaintiff*

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2024, the foregoing was served via email to:


 Dayna Cooper
COOPER LEGAL, LLC
1 Olympic Place, Suite 900
Towson, MD 21204
dayna@cooperlegalsolution.com


*/s/ Peter C. Nanov*
Peter C. Nanov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TARA HALL AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF MARCEL THEO HALL,

        Plaintiff,

        v.

BIZ MARKIE, INC., *et al.*,

        Defendants.

Case No.: 1:22-cv-00806 (CKK)

**EXPERT REPORT OF LITA ROSARIO-RICHARDSON, ESQ.**

**SHULMAN ROGERS, P.A.**

**Dated:  February 16, 2024**

# EXPERT REPORT OF CHRISTOPHER WILLIAMS, CFE, CPA, MBA

SUBMITED IN:

*Tara Hall as Personal Representative of the Estate of Marcel Theo Hall v. Biz Markie, Inc., at al.*, case no. 1:22-cv-00806 (CKK), in the United States District Court for the District of Columbia

## I.    DISCUSSION

### A.  Facts, Data and Information Considered

Plaintiff's counsel served subpoenas on a number of third parties who may have made payments to BMI and/or to Balancing Acts from 2015 through the dates on the subpoenas. Many of those third parties responded with evidence of payments made during this time period. I have reviewed these records.  I have also reviewed documents produced by Izumi and/or BMI reflecting evidence of payments made to BMI and/or Izumi. I also reviewed tax returns produced by BMI, Izumi, Nicholas P. Cusato, CPA, or in the possession of Tara Hall.[1]  The materials identified above are included in my List of Materials Considered appended to this Report.

In addition, I have reviewed Marcel Hall's Citibank account statements for the years 2015 through 2020. I have been informed by counsel for Plaintiff that Marcel Hall's only bank account during the period 2015 through his death was the account at Citibank whose statements I have reviewed.  I have also reviewed BMI's BBT/Truist banking account statements for the years 2015 through 2022. I understand that BMI maintained only that banking account during 2015 through 2022, and that is the account whose statements I have reviewed.  I have also reviewed Balancing Acts, Inc.'s ("Balancing Acts"); BBT/Truist banking account statements for the years 2015 through 2022. I understand that Balancing Acts maintained only that banking account during 2015 through 2022, and that is the account whose statements I have reviewed.

I understand from Plaintiff's counsel that Lita Rosario-Richardson, an expert retained by Plaintiff, will opine that customary compensation for a manager, such as Izumi, would be in the range of 10% to 20% of the income earned by the artist being managed.

I also understand that neither BMI, Izumi, nor Balancing Acts has made any payments or distributions to the estate of Marcel Hall following his death in July 2022.

I have also reviewed the transcripts of the depositions of Jennifer Izumi and Nicholas P. Cusato, CPA.

All of the documents I have reviewed and considered are included on the List of Materials Considered appended to this Report as Exhibit 5.

Finally, I have considered my professional experience, including my years of employment in various financial roles at numerous companies, and my professional training as a Certified Public Accountant and Certified Fraud Examiner.

### B.  Opinions, Basis and Reasons

I have relied on the report of Lita Rosario-Richardson, who has opined that customary compensation for a manager performing the types of services Izumi testified she performed for Marcel Hall is generally no greater than 10% to 20% of the performer's earnings. I have used the

---

[1] Summaries of BMI's and Balancing Acts, Inc.'s tax returns have been appended to this Report as Exhibits 2 and 3, respectively.

mid-point of this range—15%--for my calculations.  All of my opinions expressed below are to a reasonable degree of professional certainty and consistent with my experience as a certified public accountant and certified fraud examiner and with my years of professional experience in various capacities.

1.    **BMI Failed to Distribute At Least $251,180.00 to Hall That Is Reflected as Income from BMI on his Tax Returns but which BMI never distributed to him for the years 2015 through 2020.**

In Izumi's deposition she testified that all payments from BMI to Marcel Hall are reflected in BMI's bank statements, and I understand from counsel for Plaintiff that Marcel Hall maintained only one bank account during the period 2015 until his death in 2021.

I have reviewed the available bank statements for Marcel Hall, Marcel Hall's and BMI's tax returns for the years 2015 through 2022, as well as various "Paychex" documents showing regular payments to Marcel Hall.  Marcel Hall's bank statements establish that Marcel Hall received a total of $481,796.00 from BMI during the years 2015 through 2022. I have compared this total of payments received by Marcel Hall from BMI in his Citibank account to the income reported on Marcel Hall's tax returns for the years 2015 through 2020 (the last year for which I have Marcel Hall's tax returns). This is reflected on Exhibit 1.

The tax returns for each of these years attribute substantially more income to Marcel Hall than was distributed to him. Specifically, the tax returns reflect income in the amount of $732,976.00, while the bank records reveal that only $481,796.00 was actually paid to Marcel Hall.  Consequently, I conclude that BMI failed to distribute the balance to Marcel Hall, totaling $251,180.00 in "Phantom Income"—income attributed to Marcel Hall on his tax returns but never distributed to him. Marcel Hall, therefore, would be entitled to an additional **251,180.00** for the years 2015 through 2021.[2]

2.    **BMI paid Izumi substantially more than the 15% of BMI's gross income to which she was entitled; had BMI distributed Izumi's excess payment to Marcel Hall, he would have received at least an additional $318,002.00.**

According to the gross receipts reported on BMI's tax returns, during the period 2015 through 2021, BMI received at least $3,204,154 in payments from various sources.  Had Izumi received 15% of those gross receipts, her compensation would have been $480,623.

I have reviewed Izumi's tax returns and compared them to BMI's tax returns.  Those returns reflect that, during the period 2015 through 2021, Izumi received from BMI a total of $798,625.00. See Exhibit 1.  A comparison of that amount which Izumi received, to the amount

_____

[2] It should be noted that two tax returns from BMI were provided for the year 2016 – one dated March 13, 2017, and a separate return dated June 7, 2018.  The 2018 version reported a higher net profit that should have yielded an additional $25,457.46 in reported K1 income to Mr. Hall.  The status of this 2018 return is unclear, but if filed, would increase the total, to which Mr. Hall would be entitled under this "Phantom Income" category, to **$276,637.46**.

to which she would have received at compensation equivalent to 15% of gross receipts, yields overcompensation in the amount of $318,002.00. See *id.* Consequently, I conclude the BMI overpaid Izumi in the amount of **$318,002.00**, which would have otherwise been paid to Marcel Hall.

It is possible, if not probable, that BMI paid Izumi additional compensation for 2022 and 2023, and I reserve the right to modify this opinion in the event that additional evidence of payment of such compensation is produced.

> **3.    Balancing Acts paid Izumi substantially more that she was entitled; had Balancing Acts distributed Izumi's excess payment to Marcel Hall, he would have received at least an additional $46,150.00.**

According to the gross receipts reported on Balancing Acts' tax returns, during the period 2015 through 2021, Balancing Acts received at least $691,969.00 in payments from various sources. Available documentation suggested that Balancing Acts' income was derived from BMI or Mr. Hall. Had Izumi received 15% of those gross receipts, her compensation would have been $103,796.00.

I have reviewed Izumi's tax returns and compared them to Balancing Acts' tax returns. Those returns reflect that, during the period 2015 through 2021, Izumi received from Balancing Acts a total of $149,945.00. See Exhibit 1. A comparison of that amount which Izumi received, to the amount to which she would have received at compensation equivalent to 15% of gross receipts, yields overcompensation in the amount of $46,150.00. See *id.* Consequently, I conclude that Balancing Acts paid Izumi **$46,150.00**, which would have otherwise been paid to Marcel Hall.

It must be noted, however, that as reflected on Exhibit 5, at least $240,715.00 in royalties and other payments since 2018, all relating to the use of the name "Biz Markie" or reflecting royalty payments, have been issued to Balancing Acts, which should have been issued to BMI or Mr. Hall or his estate.[3] The reason for that issuance to Balancing Acts is unclear. Included in that total figure is $50,000 for the year 2021 that was issued to Balancing Acts, but was not included in Balancing Acts' 2021 tax returns, which reflects income in the amount of $29,919.00. If the total of these payments issued to Balancing Acts was not included in Balancing Acts' reported income, then they would not have been included in my calculation above. ,I have seen no documents reflecting any payment from Balancing Acts to Marcel Hall or to his estate reflecting these amounts. Consequently, if none of that amount is reflected in Balancing Acts' tax returns, and assuming Mr. Hall's estate is entitled to 85% of this income, it should have received an additional **$204,608.00**.[4]

---

[3] It is possible Balancing Acts has received additional payments, and I reserve the right to modify this opinion in the event additional evidence of payments to Balancing Acts is produced.

[4] I also reviewed BMI's bank statements and Balancing Acts' bank statements. Those statements reflect transactions totaling $174,870.94 from Balancing Acts' bank account to BMI's bank account. Those statements also reflect transactions totaling $19,862.52 from BMI's bank account to Balancing Acts' bank account. Those transactions that I could identify that reflected transfers between the two entities appeared in at least two varying descriptions. Numerous other transactions appear on the bank statements that I cannot identify or substantiate. Additionally, I reviewed three promissory notes between BMI and BAI, totaling $108,217.04 that Balancing Acts purportedly loaned to BMI. Of the transfers from Balancing Acts, $94,800 are reflected in the promissory notes. I could not tell

# EXHIBIT D

# Maryland Judiciary Case Search

NOTICE: Available

## Case Detail

### Case Information

Court System: **Circuit Court For Prince George's County - Civil**
Location:      **Prince Georges Circuit Court**
Case Number:   **CAL21-11208**
Title:         **Hall vs Northwestern Mutual Insurance**
Case Type:     **Injunction**
Filing Date:   **09/21/2021**
Case Status:   **Closed**
Judicial Officer: **Conversion Default, Judicial Officer**

### Involved Parties Information

#### Defendant

Name: **Northwestern Mutual Insurance**

Address: **720 East Wisconsin Avenue**
City:      **Milwaukie**  State:  **WI**  Zip Code:  **53202 4797**

#### Plaintiff

Name: **Hall, Tara L**

Address: **11206 Champlain Circle**
City:      **Bowie**  State:  **MD**  Zip Code:  **20720**

#### Attorney(s) for the Plaintiff

Name:              **RYAN, JANELLE M**
Appearance Date: **09/21/2021**
Address Line 1:   **COLBERT LAW FIRM LLC**
Address Line 2:   **STE 216 3060 MITCHELLVILLE RD**
City:              **BOWIE**  State:  **MD**  Zip Code:  **20716**

### Judgment Information

Judgment Event Type: **Dismissed - Lack of Prosecution**

Judge: **Conversion Default, Judicial Officer**

## Document Information

File Date: **09/21/2021**

Document Name: **Case Type**

Comment: **Case Type:PR Docket Code:CINJC ,Docket Description:CaseType: Injunction**

---

File Date: **09/21/2021**

Document Name: **Complaint**

Comment: **Complaint, Fd. 001 Complaint with attachments filed cn e-9/21/2021 Tagged to Judge Snoddy.**

---

File Date: **09/21/2021**

Document Name: **Motion**

Comment: **Motion, filed 002 Emergency Motion for Injunction to Stay Distribution of Life Insurance Proceeds filed cn e-9/21/2021**

---

File Date: **09/23/2021**

Document Name: **Order**

Comment: **Order of Court, filed 003 Order dated 9/22/21, Judge Snoddy, Ordered that Plaintiff's Motion for Emergency Injunction is Denied for failure to comply with one or more of the following Maryland Rules: X Petitioner has failed to file a bond or request for a waiver X Petitioner has failed to plead specific facts, shown by affidavit, that the Petitioner will suffer immediate, substantial and irreparable harm X the Court finds the effort to notify the opposing party is insufficient given the alleged circumstances; and it is further Ordered, that this matter shall proceed in the normal course fd.acc cc to J. Ryan-Colbert and Northwestern Mutual Insurance e 9/23/21**

---

File Date: **09/23/2021**

Document Name: **Summons Issued**

Comment: **Summons Issued For Defendant 004 fd.acc e 9/23/21**

---

File Date: **09/23/2021**

Document Name: **Summons Issued**

Comment:

---

File Date: **02/09/2022**

Document Name: **Notice-Contemplated Dismissal 2-507**

Comment: **Not To Pty Contemp Dis Prty Fd 005 Filed fd fc e 2/9/2022**

| | |
|---|---|
| File Date: | **02/14/2022** |
| Document Name: | **Affidavit - Service** |
| Comment: | **Affidavit of Service, fd 006 Northwestern Mutual Insurance served on October 4, 2021 with a copy of Plaintiff's Complaint and Motion for Injuction along with all Exhibits by Certified Mail fd fc e 2/16/2022** |

---

| | |
|---|---|
| File Date: | **05/02/2023** |
| Document Name: | **Notice of Cont. Dismissal Lack of Pros.** |
| Comment: | **2-507 (c) notice mailed** |

---

| | |
|---|---|
| File Date: | **06/07/2023** |
| Document Name: | **Dismissal - Lack of Prosecution** |
| Comment: | |

---

## Service Information

| Service Type | Issued Date |
|---|---|
| **Writ of Summons** | **09/23/2021** |

*This is an electronic case record. Full case information cannot be made available either because of legal restrictions on access to case records found in Maryland Rules, or because of the practical difficulties inherent in reducing a case record into an electronic format.*

Copyright © 2024. Maryland Judiciary. All rights reserved.
Service Desk: (410) 260-1114