**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| TARA HALL AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARCEL THEO HALL,<br><br>Plaintiff,<br><br>v.<br><br>BIZ MARKIE, INC., *et al.*,<br><br>Defendants. | Case No.: 1:22-cv-00806 (CKK) |

**PLAINTIFF, TARA HALL'S,**
**AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARCEL THEO HALL,**
**COUNTER-STATEMENT OF DISPUTED FACTS**
**TO WHICH THERE IS A GENUINE ISSUE**

  Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7(h), Plaintiff, Tara Hall, as Personal Representative of the Estate of Marcel Hall, in opposition to Defendants Jennifer Izumi's and Biz Markie, Inc.'s (collectively "Defendants") Motion for Partial Summary Judgment, hereby submits its response to Defendants' State of Undisputed Materials, identifying those allegedly undisputed material facts for which there exists a genuine issue necessary to be litigated[1] as follows:

| **Defendants' Statement of Undisputed Material Facts ("SOF")** | **Plaintiff's Counter-Statement of Disputed Facts ("CSDF")** |
|---|---|
| 1. Marcel Hall had few people who were constants in his life. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 53:20-22; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 345:24-346:2) | 1. |

---

[1] Plaintiff does not admit those facts which it has not noted a dispute; rather, as dictated by Local Rule 7(h), Plaintiff has disputed the material facts which must be litigated.

| | | |
|---|---|---|
| 2. | Two people who had been constants in Marcel's life were his first manager/partner, Lamont Wanzer, and Izumi. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 53:20-22; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 345:24-346:2, 371:6-372). | 2. |
| 3. | Wanzer ran his business affairs, including managing Marcel Hall's entertainment career, through a Maryland corporation that Wanzer formed, Bizmont Entertainment, Inc. ("Bizmont"). (Deposition of Jennifer Izumi, 4/23/24, Ex. 3 at 90:12-91:9; Declaration of Dayna Cooper, Ex. 4, ¶ 3 at Ex. A thereto (Maryland.gov Business Entity Search results for Bizmont Entertainment, Inc.)) | 3. |
| 4. | Wanzer exclusively handled the business affairs associated with "Biz Markie" through Bizmont and Hall exclusively focused on the artistic side of "Biz Markie" work (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 14:1-17:20; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 432:7-20) | 4. |
| 5. | Wanzer was Bizmont's sole shareholder. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 92:7-9; Declaration of Dayna Cooper, Ex. 4, ¶ 3 at Ex. A thereto) | 5. |
| 6. | Wanzer passed away from cancer in 2014. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 344:19-20) | 6. |
| 7. | Wanzer's death motivated Marcel Hall to want to start getting his own personal and business affairs in order. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 201:7-16; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 344:6-23, 346:24-347:9) | 7. |
| 8. | Part of Marcel Hall's motivation in getting his own affairs in order was that he had experienced health problems. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 104:22-105:2) | 8. |
| 9. | Bizmont ceased operating when Lamont Wanzer passed. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 89:12-22) | 9. |

| | |
|---|---|
| 10. Izumi met Marcel Hall through mutual friends and her work with Bizmont. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 12:21-13:11) | 10. |
| 11. At Bizmont, Izumi was responsible for developing, revising, and refining contracts, ensuring they were aligned with strategic objectives and tailored to meet evolving business needs. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 77:7-78:3; Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 14:7-15) | 11. *See* SOF at ¶ 4; CSDF at ¶¶ 102-11. |
| 12. By the time of Wanzer's passing, Marcel Hall and Izumi had worked together nearly 20 years, and trusted each other. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, 95:8-12) | 12. |
| 13. Over the years, Izumi and Marcel Hall became like family to each other. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 345:22-346:15) | 13. |
| 14. Marcel Hall and Izumi agreed to work together through an entity they formed called Biz Markie, Inc. ("BMI") (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 94:20-95:22) | 14. |
| 15. Izumi owned 51% of BMI, and Marcel Hall owned 49%. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 12:11-12, 231:8-9; Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 52:9-12) | 15. No written shareholder agreement was ever signed by Hall. Exhibit B at 58:18-59:12, 60:7-61:21. No agreement existed prior to 2020 or 2021. Exhibit B at 58:18-20. Izumi drafted a shareholder agreement that was dated May 2021. Exhibit B at 58:21-59:12 (referring to Exhibit F). Izumi never discussed that agreement with Hall. Exhibit B at 61:16-18. Hall never signed the agreement; Izumi signed the agreement as attorney-in-fact while Hall was incapacitated. Exhibit B at 56:21-57:21, 60:7-18; Exhibit F at Hall_JRH_01538; CSDF at ¶ 114. Izumi does not even know if Hall knew that she signed the agreement as his attorney-in-fact. Exhibit B at 61:19-21. |
| 16. In 2019, Marcel Hall and Izumi filled out paperwork for BMI to obtain a business line of credit from BB&T Bank. | 16. |

| | |
|---|---|
| (Declaration of Jennifer Izumi, Ex. 5, at ¶¶ 16-24; Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 132:4-16) | |
| 17. Marcel Hall and Izumi both signed a business Line of Credit application and Agreement as part of the process for BMI to obtain a loan from BB&T Bank. . (Declaration of Jennifer Izumi, Ex. 5, at ¶ 17 and Exhibit B thereto) | 17. Izumi signed the loan application on behalf of Mr. Hall.  *See* Exhibit E, Exhibit 7 thereto.  *See also* CSDF at ¶¶ 15, 21. |
| 18. Marcel Hall submitted a personal financial statement that he signed to BB&T as part of the process for BMI to obtain a loan from BB&T Bank. (Declaration of Jennifer Izumi, Ex. 5, at ¶ 17 and Exhibit E thereto) | 18. |
| 19. Part of the BB&T paperwork included a Credit Line Agreement that Marcel Hall signed. (Declaration of Jennifer Izumi, Ex. 5, at ¶¶ 21-22 and Exhibit F thereto, Hall_JRH_02553 to _2557) | 19. |
| 20. Another document that Marcel Hall signed as part of the process for BMI to obtain the business line of credit from BB&T was a Guaranty Agreement of the same that bore his notarized signature. (Declaration of Jennifer Izumi, Ex. 5, at ¶ 24 and Exhibit H thereto, Hall_JRH_02549 to _02552) | 20. |
| 21. In support of the loan application to BB&T, Marcel Hall submitted a personal tax return and BMI tax return that confirmed he was a 49% shareholder in BMI. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 131:4-132:16; Declaration of Jennifer Izumi, Ex. 5, at ¶¶ 18-19 and Exhibit C and D thereto) | 21. Hall did not send his own tax information to his accountant; Izumi sent that information for him.  *See* Exhibit B at 141:21-142:13.  Hall did not sign his tax returns; Izumi signed them herself or using one of the various alleged "digital signatures" of Hall or she signed Hall's name trying to copy his signature.  Exhibit B at 144:5-19; Exhibit K at 134:7-22; Exhibit E, Exhibit 7 thereto (*comparing* Defendants' Exhibit 5 at Exhibit B at D000387 *and* Defendants' Exhibit 5 at Exhibit J *and* Exhibit H (authenticated at Exhibit G at 50:22-51:13) *with* Defendants' Exhibit 5 at Exhibit F at Hall_JRH_02557).  It is not clear, therefore, that Hall ever even saw the subject tax returns. |

| | |
|---|---|
| 22. The Credit Line Agreement that Marcel Hall signed contained representations and warranties that all of the documents Izumi and Marcel Hall had submitted to BB&T to obtain the line of credit were accurate. The text of that portion of the Credit Line Agreement states, in relevant part: [Quote Omitted]. (Declaration of Jennifer Izumi, Ex. 5, at ¶ 22 and Exhibit F thereto, at Hall_JRH_02555, top of page (emphasis added)) | 22. |
| 23. BB&T Bank ultimately did approve the 2019 business line of credit application for BMI based on the documents Marcel Hall and Izumi submitted. (Declaration of Jennifer Izumi, Ex. 5, at ¶ 25) | 23. |
| 24. BMI did receive proceeds from the $50,000 business line of credit application for BMI based on the documents Marcel Hall and Izumi submitted. (Declaration of Jennifer Izumi, Ex. 5, at ¶ 26) | 24. |
| 25. Marcel Hall and Izumi agreed that Izumi should be BMI's majority owner in part so Izumi could execute documents on her own if Biz was traveling, got sick, or if he passed. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 231:7-13, 237:10-238:17; Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 87:21-88:20) | 25. *See also* CSDF at ¶ 15. |
| 26. Marcel Hall and Izumi agreed that Izumi should be BMI's majority owner in part to compensate Izumi so that she would continue working with Marcel Hall and BMI, including working to continue Hall's legacy as an entertainer after he passed. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 94:20-96:11, 109:6-110:19, 231:7-233:22, 238:1-17; Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 87:22-88:20) | 26. *See* CSDF at ¶ 15. |
| 27. Marcel Hall and Jennifer Izumi discussed BMI's expenses and ensured the expenses were paid. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 108:16-110:19) | 27. |

| | |
|---|---|
| 28. Marcel Hall and Izumi would roughly split any money that remained after BMI's expenses were paid. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 110:8-111:7) | 28. No compensation split agreement existed. *See* CSDF at ¶ 121. |
| 29. If Marcel Hall ever needed more money, he and Izumi would talk and have BMI pay Hall. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 108:7-109:5, 111:4-112:16) | 29. |
| 30. Nicholas Cusato, CPA, was an accountant for both Marcel Hall and BMI. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 538:7-14; Deposition of Nicholas Cusato, 1/31/24, Ex. 6, at 27:16-28:22, 30:10-19) | 30. |
| 31. Cusato testified to a conversation with Marcel and Izumi in which they confirmed the 51/49 ownership of BMI. (Deposition of Nicholas Cusato, 1/31/24, Ex. 6, at 20:13-21:7) | 31. |
| 32. Marcel was paid via both W-2 wages and as a 1099 contractor because he "tended to take more money out of the business" than Izumi did and they did not want to "draw on his capital account" which would reduce his ownership percentage. (Deposition of Nicholas Cusato, 1/31/24, Ex. 6, at 33:10-35:12) | 32. Izumi took more money out of the business than Hall. Exhibit D, Exhibit 1 thereto, at 2-3. Exhibit J (authenticated at Exhibit G 96:11-97:2). |
| 33. Marcel expressed his wish that they make Izumi 100% owner of the "Biz Markie" business and put Marcel on payroll because Marcel was "more interested in just receiving money and being taken care of rather than the business." (Deposition of Nicholas Cusato, 1/31/24, Ex. 6, at 21:9-19) | 33. The testimony does not reflect that it was Hall's "wish" that Izumi be made 100% owner of Biz Markie, Inc. or the "'Biz Markie' business." Defendants' Exhibit 6 at 21:11-15. Rather, the testimony reflects a wondered aloud suggestion by Hall in a discussion concerning liabilities in the context of a loan application. *Id.* |
| 34. Cusato testified that Marcel "had always stated in the calls that [they] had been on that the business was for [Izumi] and to make sure she was taken care of." (Deposition of Nicholas Cusato, 1/31/24, Ex. 6, at 21:20-22) | 34. This does not mean that Izumi was entitled to the majority of the compensation or profits from the business. *See* CSDF ¶ 121. |
| 35. Marcel and Izumi discussed all key BMI/"Biz Markie" business finances in "agreed collaboration." (Deposition of | 35. Hall "was a performer, he's an artist. And so in the entertainment industry and, you know … performers are performers, and |

| | |
|---|---|
| Jennifer Izumi, 4/25/24, Ex. 2, at 406:18-407:5) | Biz specifically wasn't -- his priority wasn't -- his priority was being a performer, it wasn't the day-to-day business operations." *See* Exhibit B at 54:6-13. Hall's focus was being an artist and an entertainer. Exhibit B at 125:20-126:5. Hall entrusted the "day-to-day business" to Izumi. *Id.* Hall did not "execut[e] all the day-to-day transactions." Exhibit B at 88:15-19. Hall had health issues and a lot going on in his life that prevented his involvement in the day-to-day business. Exhibit B at 125:20-126:5. *See also* CSDF at ¶ 84. |
| 36. Marcel and Izumi discussed key BMI/"Biz Markie" business decisions, and acted after reaching consensus. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 388:5-13) | 36. *See* CSDF at ¶¶ 15, 21, 35, 84. |
| 37. In early 2019, Marcel Hall and Izumi agreed that Izumi would handle all of the business operations relating to "Biz Markie" and that she would do so through Balancing Acts, Inc. ("BAI") instead of BMI. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 125:18-126:18; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, 475:23-25, 479:13-481:8) | 37. When asked if Balancing Acts ever performed services for Hall, Izumi responded "Occasionally, yes." Exhibit B at 120:6-8. "Occasionally" is inconsistent with a full transfer of all business activities to Balancing Acts. Izumi prepared and claimed to have signed a stockholder agreement for Biz Markie, Inc. in May 2021, after the business was allegedly transferred entirely to Balancing, Acts, Inc.; there was no reason to do so if such a transfer to Balancing Acts, Inc. was agreed to by Hall. Exhibit B at 58:18-59:12, 60:7-61:21. |
| 38. Marcel hoped that running the business through BAI would let Izumi work to continue his legacy free of interference if something happened to him. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 475:23-25, 479:13-481:8) | 38. *See* CSDF at ¶ 37. |
| 39. Izumi is the sole owner of BAI. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, 119:16-120:1; Deposition of Nicholas Cusato, 1/31/24, Ex. 6, at 23:14-24:7) | 39. |
| 40. Marcel directed that royalty payments go from BMI-held accounts to BAI-held | 40. Izumi possessed multiple versions of Hall's digital signature, some of which |

| | |
|---|---|
| accounts. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 125:18-126:18; Declaration of Jennifer Izumi, Ex. 5, at ¶ 27 and Exhibit J thereto) | were not Hall's actual signature.  Exhibit B at 20:2-22:3; 27:7-13.  Izumi applied that digital signature to payment direction letters.  SOF at ¶ 85.  Izumi also signed documents trying to copy Hall's signature.  CSDF at ¶ 21.  Izumi did not always obtain prior approval from Hall before applying his digital signatures to documents.  *See* CSDF at ¶ 84.  *See also* Exhibit E, Exhibit 7 thereto. |
| 41. Marcel agreed that BAI should be paid for his artistic endeavors. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 123 :21-124:2) | 41. *See* CSDF at ¶ 40. |
| 42. The money directed from BMI to BAI was used, in part, for Marcel's personal expenses. (Deposition of Nicholas Cusato, 1/31/24, Ex. 6, at 26:20-27:2; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 490:16-23; Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 178:11-18) | 42. |
| 43. The money directed to BAI was going to be used, in part, for BMI's expenses. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 122:2-17; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 490:16-23; Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 178:11-18) | 43. |
| 44. Marcel was aware that BMI directed money to BAI for more than a year before he was hospitalized. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 479:22-480:22; Declaration of Jennifer Izumi, Ex. 5, at ¶ 27) | 44. *See* CSDF at ¶ 40 |
| 45. Tara and Marcel Hall got married in October 2018. (Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 199:8-11) | 45. Hall married Tara Hall on October 18, 2018.  Exhibit A at ¶ 10. |
| 46. Marcel Hall always wanted to keep his marriage and finances separate and so did not want Tara Hall to have access to his personal or business finances. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 66:4-18) | 46. Hall and Tara Hall did not have prenuptial agreement.  Exhibit B at 66:21-22.  Hall and Tara Hall did not have a formal postnuptial agreement.  Exhibit B at 67:1-2.  Hall and Tara Hall never divorced; Mrs. Hall was his wife when he passed away.  Exhibit B at 64:8-10. |
| 47. After marrying Tara Hall, Marcel Hall filed a married, but separate, tax return. | 47. |

| | |
|---|---|
| (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 66:4-18; Deposition of Jennifer Izumi, 4/23/24, Ex. 3, at 208:18-210:9) | |
| 48. Izumi remained in control of Marcel's advanced medical directive and power of attorney after Marcel and Tara Hall married. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 64:11-65:8) | 48. |
| 49. Marcel was contemplating divorce four months after his marriage to Tara Hall. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2 at 477:16-478:18; Deposition of Jennifer Izumi, 12/29/23, Ex. 1 at 193:8-194:18) | 49. *See* CSDF at ¶ 46. |
| 50. Marcel Hall lost trust in Tara Hall when he found out that she had tried to access his business, financial, and life insurance information. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 66:4-18, 194:6-196:13; Deposition of Ralph Horton, Ex. 8, 13:9-14:18) | 50. *See* CSDF at ¶ 46. |
| 51. In November 2018, Tara Hall attempted to gain access to Marcel Hall's business agreements with Izumi. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 423:7-424:25; Declaration of Jennifer Izumi, Ex. 5, ¶ 25 at Exhibit H thereto (November 5, 2018 email from Tara Hall to Jennifer Izumi)) | 51. |
| 52. In November 2018, Tara Hall attempted to access some of Marcel Hall's financial information. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 194:3-11; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 423:7-424:25; Declaration of Jennifer Izumi, Ex. 5, ¶ 28 at Exhibit H thereto (November 5, 2018 email from Tara Hall to Jennifer Izumi)) | 52. |
| 53. In November 2018, Tara Hall attempted to access information about Marcel Hall's life insurance policies through his life insurance broker. (Deposition of Jennifer Izumi, 12/29/23. Ex. 1, at 194:3-11; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 423:7-424:25; Declaration of Jennifer Izumi, Ex. 5, ¶ 28 at Exhibit H thereto | 53. |

| | |
|---|---|
| (November 5, 2018 email from Tara Hall to Jennifer Izumi)) | |
| 54. Tara Hall sent emails to Izumi, without copying Marcel, attempting to change how Marcel got paid. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 194:3-11; Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 423:7-424:25; Declaration of Jennifer Izumi, Ex. 5, ¶ 28 at Exhibit H thereto (November 5, 2018 email from Tara Hall to Jennifer Izumi) | 54. |
| 55. After Marcel Hall found out about Tara Hall's efforts to access his business and financial information, he directed Izumi to keep everything the same, and not to provide that information to Tara. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 424:4-22) | 55. |
| 56. Marcel Hall told Tara Hall he was going to get a life insurance policy making her a beneficiary. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 449:5-450:3) | 56. |
| 57. Marcel Hall told Tara Hall he was going to get a life insurance policy making her a beneficiary to mollify ongoing disputes the two had been having. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 449:5-450:3, 454:23-455:9) | 57. |
| 58. Marcel Hall ultimately did not get a policy naming Tara Hall as a life insurance beneficiary. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 450:18-20) | 58. |
| 59. Marcel Hall did not complete the medical examination necessary to get that policy. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 450:7-20) | 59. |
| 60. Tara Hall knew that Marcel Hall did not complete the exam because she was home with him at the time. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 450:9-14) | 60. |
| 61. As of November 16, 2018, Tara Hall knew that Izumi was a life insurance beneficiary on policies Marcel Hall had originally purchased. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 445:11-21; Declaration | 61. |

| | |
|---|---|
| of Jennifer Izumi, Ex. 5, ¶ 29 and Ex. I thereto (November 16, 2018 text from Tara Hall to Jennifer Izumi)) | |
| 62. On November 16, 2018, Tara Hall sent a text to Jennifer Izumi that stated: "I think this is very inappropriate for you to still be on Biz [*i.e.*, Marcel Hall] life insurance." (Declaration of Jennifer Izumi, Ex. 5, ¶ 29 and Ex. I thereto (November 16, 2018 text from Tara Hall to Jennifer Izumi)) | 62. |
| 63. Marcel Hall died intestate, after which Tara Hall was appointed the administrator of his estate. (Notice of Appointment of Tara Hall as Personal Representative, Ex. 10) | 63. |
| 64. After being appointed administrator, Tara Hall filed a complaint in the probate proceeding against Izumi. (Tara Hall Probate Complaint, Ex. 11) | 64. |
| 65. Tara Hall's probate complaint included allegations about the proceeds of the life insurance policies that were also referenced in Tara's initial complaint in this action. (Tara Hall Probate Complaint, Ex. 11, ¶ 4(d); Amended Complaint (Doc. 17) ¶¶ 34, 113) | 65. |
| 66. The probate court dismissed Tara Hall's probate court complaint against Izumi *sua sponte* for lack of jurisdiction. (Order Dismissing Probate Complaint, Ex. 12) | 66. |
| 67. Tara Hall then filed a complaint and request for an injunction in Prince George's County, Maryland, seeking to prevent Northwestern Mutual Life Insurance Company from distributing the proceeds of "Policy A," alleging improprieties on Izumi's part. (Tara Hall Complaint filed in Prince George's County, Maryland, Ex. 13, at e.g., ¶¶ 5, 12, 13) | 67. |
| 68. The Prince George's County, Maryland Court denied Tara Hall's request for an injunction *sua sponte* two days after the complaint was filed. (Declaration of Dayna Cooper, Ex. 4, ¶ 12 at Ex. D thereto | 68. |

| | |
|---|---|
| (Maryland Court Docket Printout at 9/23/2021)) | |
| 69. Plaintiff has put forward only one measure of damages, premised on expert opinions. (Declaration of Dayna Cooper, Ex. 4, at ¶ 7) | 69. The Estate has identified five categories of damages, each with its own measure: (1) at least ▮▮▮▮▮▮ of reported income to Hall that Hall never received; (2) at least ▮▮▮▮▮▮ of income to which Hall was entitled because Izumi compensated herself in excess of the industry standard fifteen percent; (3) at least ▮▮▮▮▮, but possibly as much as ▮▮▮▮▮▮ of income that was due to Hall but he never received because Izumi directed it to Balancing Acts, Inc.; (4) personal expenses charged by Izumi to Biz Markie, Inc., but not repaid by Izumi, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; and (5) statutory damages under the Anti-Cybersquatting Consumer Protection Act of up to $100,000.  Exhibit D, Exhibit 1 thereto, at 2-3; Exhibit E, Exhibit 3 thereto, at 3-4 (Answers to Interrogatory Nos. 1 and 2); Exhibit J (authenticated at Exhibit G at 96:11-97:2) |
| 70. Plaintiff's professed music-industry expert, Lita Rosario-Richardson, Esq. opines that that the industry norm for compensation agreements between managers and artists is approximately 10%-20% of the income earned by the artist being managed, so Izumi should not have received more than this. (Declaration of Dayna Cooper, Ex. 4, at ¶ 5 at Ex. B) | 70. |
| 71. Plaintiff's expert Christopher Williams, a CPA, calculated the approximate dollar amount of Plaintiff's alleged damages. (Declaration of Dayna Cooper, Esq., Ex. 4 at ¶ 6, Ex. C) | 71. Mr. Williams has calculated the approximate dollar amount of the Estate's damages for three of the five categories of damages identified by the Estate.  *See* CSDF at ¶ 69. |
| 72. Williams' damages estimate assumes that Rosario-Richardson's 10%-20% compensation opinion is correct, and uses the midpoint figure of 15% in his | 72. Only the second category of damages, of those identified in CSDF at ¶ 69, depends entirely on Ms. Rosario-Richardson's opinion. Exhibit C, Exhibit 1 thereto, at |

| | |
|---|---|
| calculations. (Declaration of Dayna Cooper, Ex. 4 at ¶ 6, Ex. C) | 2-3.  The first category was determined solely by comparing Hall's income as reported on his tax returns, to the income he actually received, which does not involve Ms. Rosario-Richardson's opinion.  *Id.* at 2.  The third category contains money that Izumi diverted to her solely-owned company, Balancing Acts, Inc. which depends partly on Ms. Rosario-Richardson's opinion, but partly not.  *Id.* at 3.  Izumi's personal expenses charged to Biz Markie, Inc., but not repaid do not depend on Ms. Rosario-Richardson's opinion, nor do statutory damages.  *See* CSDF at ¶ 69. |
| 73. Williams' damages estimate calculates the difference in what Izumi would have received at 15% and what she actually received to come up with damages of around $819,940. (Declaration of Dayna Cooper, Ex. 4, at ¶ 8) | 73. *See* CSDF at ¶ 72. |
| 74. BMI owned (and owns) the "Biz Markie" trademark. (Declaration of Jennifer Izumi, Ex. 5, ¶ 6; Deposition of Ronald Shaw, Ex. 7, 15:2-17:3; Deposition of Ralph Horton, Ex. 8, 9:12-10:11) | 74. Hall owned the "Biz Markie" mark by being the first to use the mark in commerce.  *See* CSDF at ¶¶ 79, 89-96, 98. Hall never abandoned the mark.  *Id.*   Hall never signed a written agreement granting BMI the right to use his trademarks. Exhibit B at 87:6-9.  Hall never signed a written agreement expressly granting BMI the right to obtain registered trademarks related to Hall.  Exhibit B at 89:6-12. Furthermore, Defendants' citations do not reflect ownership.  Izumi's declaration reflects usage only, which can be accomplished through a license or other permitted use; it does not signify ownership.  Additionally, the testimony of Mr. Shaw and Mr. Horton do not reflect any ownership of the trademark or any personal knowledge thereof. |
| 75. Plaintiff, in her capacity as the administrator of Marcel's estate, filed a sworn pleading with the Probate Court explaining that BMI "is the corporate entity through which the Deceased's [Marcel's] professional activities were performed, | 75. |

13

| | |
|---|---|
| including the collection of music royalties." (Tara Hall Probate Complaint, Ex. 11, ¶ 4(a)) | |
| 76. Marcel and Izumi discussed use of the "Biz Markie" mark. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 86:1-12) | 76. *See* CSDF at ¶¶ 15, 21, 35, 37, 84. |
| 77. BMI used the "Biz Markie" mark starting in 2015 when it began offering and providing services under the mark. (Declaration of Jennifer Izumi, Ex. 5, at ¶ 5) | 77. *See* CSDF at ¶¶ 74, 79, 89-96, 98. |
| 78. BMI first licensed the "Biz Markie" trademark in 2015. (Declaration of Jennifer Izumi, Ex. 5, at ¶ 5) | 78. There is no written agreement under which Hall gave Biz Markie, Inc. any rights to the "Biz Markie" mark. *See* CSDF at ¶¶ 74, 79, 89-96, 98. |
| 79. Tara Hall has disclosed no evidence that Marcel Hall personally owned the Biz Markie mark at any time. (Declaration of Dayna Cooper, Ex. 4, at ¶ 9) | 79. Plaintiff has disclosed the following documents and information to demonstrate Hall's ownership of the Biz Markie mark: (a) Defendant BMI's trademark application materials and all supporting documents; (b) Mrs. Hall's trademark application materials and all supporting documents; (c) Hall's countless appearances and performances under the name "Biz Markie;" and (d) various income reports from third parties. Exhibit E, Exhibit 4 thereto at 5-6 (Request for Production No. 7 and Response thereto); Exhibit E, Exhibit 3 thereto, at 9-10 (Answers to Interrogatory Nos. 10 and 12); Exhibit E, Exhibit 4 thereto, at 4-6 (Response to Request for Production No. 7); Exhibit E, Exhibit 5 thereto, at 4-5 (Responses to Requests for Production Nos. 12 and 14); Exhibit E, Exhibit 2 thereto; Exhibit A at ¶¶ 3-9, and Exhibits 1, 2, and 3 thereto. Further, Defendants produced, and are in possession of a collection of various recordings released by Hall under the name "Biz Markie." Exhibit E, Exhibit 6 thereto. |
| 80. Tara Hall has disclosed no evidence that Marcel Hall, personally, used the "Biz Markie trademark within the 10 years | 80. Hall performed for decades in music, television and film under the name "Biz Markie" until he passed away, all of |

| | |
|---|---|
| preceding the commencement of this lawsuit. (Declaration of Dayna Cooper, Ex. 4, at ¶ 11) | which were credited to him as such. Exhibit A at ¶¶ 3-9, and Exhibits 1, 2, and 3 thereto. *See also* CSDF at ¶¶ 74, 79, 89-96, 98. |
| 81. BMI owned the website "bizmarkie.com" starting in 2016. (Declaration of Jennifer Izumi, Ex. 5, at ¶ 4) | 81. |
| 82. Since early 2015, BMI advertised, offered, and provided services in connection with the "Biz Markie" trademark on the website "bizmarkie.com." (Declaration of Jennifer Izumi, Ex. 5, ¶ 3; Tara Hall Second Amended Complaint (Doc. 61) ¶¶ 5 and 22 ("On or about February, 4, 2015, Izumi, or Izumi and Hall, created Defendant Biz Markie, Inc. to receive income from Hall's entertainment goods and services.")) | 82. |
| 83. Prior to his hospitalization and death, Marcel and Izumi discussed BMI and BAI's use of his image, voice, likeness, and other intellectual property and BMI's ownership. (Deposition of Jennifer Izumi, 4/25/24, Ex. 2, at 432:7-433:11) | 83. Hall never signed a written agreement granting BMI the right to use his name, image, and likeness. Exhibit B at 87:17-88:10; 89:15-21. *See also* CSDF at ¶¶ 79, 89-96, 98. Further, the cited support does not reflect ownership of Hall's name, image, and likeness. |
| 84. Prior to signing anything digitally on Marcel's behalf, Izumi would receive Marcel's approval. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 25:7-10) | 84. Izumi applied Hall's signature to documents and signed his name without Hall's approval on various occasions, including while Hall was incapacitated. *See also* CSDF at ¶¶ 15, 21, 35, 37, 40; Exhibit E, Exhibit 7 thereto. |
| 85. Marcel's digital signature appeared on the letter directing payment of royalties from Rhino Entertainment Company, a division of Warner Music, to BAI. (Deposition of Jennifer Izumi, 12/29/23, Ex. 1, at 125:1-22) | 85. |
| 86. Marcel and Izumi reached an agreement regarding licensing or use of the Biz Markie mark prior to any such licensing or use, even though Izumi did not legally need Marcel Hall's agreement. (Declaration of Jennifer Izumi, Ex. 5, ¶¶ 10-11) | 86. *See* CSDF at ¶¶ 74, 79, 89-96, 98. Further, Izumi's legal necessity to do so presents a legal conclusion, rather than a fact subject to dispute. |
| 87. The Maryland Statutory Power of Attorney Executed in Favor of Izumi | 87. |

| | |
|---|---|
| provides that all signatures made pursuant to the power of attorney must include "ATTORNEY-IN-FACT" or "as Agent" in the signature. (*See* Maryland Statutory Power of Attorney Executed in Favor of Izumi, Ex. 9, at 15, ¶ 4) | |
| 88. Marcel Hall was aware of merchandise being offered on "bizmarkie.com." (Tara Hall Second Amended Complaint (Doc. 61) ¶ 49; Declaration of Jennifer Izumi, Ex. 5, ¶ 30) | 88. |

**Additional Facts Asserted as Undisputed by the Estate**

| | |
|---|---|
| 89. | 89. Marcel Hall is recognized by his stage name "Biz Markie" and for decades has been, and continues to be, internationally known as an iconic rapper, actor, musical artist, DJ, and record producer. ECF No. 62 at ¶ 2. |
| 90. | 90. Hall first used the "Biz Markie" name and mark in 1986 and his first album, released under the name "Biz Markie" was released in 1988. Exhibit A at ¶¶ 3-5. |
| 91. | 91. Hall is a legendary musical entertainer known by his stage name "Biz Markie." His career in all facets of the entertainment industry spanned decades and included his RIAA Platinum selling 1989 single "Just a Friend," which became a top 40 hit in several countries. In 2008, "Just a Friend" was included on VH1's list of the 100 greatest hip hop songs of all time. Hall was sometimes referred to as the "Clown Prince of Hip Hop." ECF No. 62 at ¶ 14. |
| 92. | 92. In his first decade recording music, Hall recorded the first track on the Office Space sound-track (1999), rapped on Will Smith's 1999 album "Willennium," and in 1997, a sample of one of his recordings was used in the Rolling Stones' album "Bridges to Babylon." His acclaim and popularity led to his signing with Rhino Records on September 6, 2009, distributed worldwide by Warner Music Group, |

| | |
|---|---|
| | which continues to account for and pay his music royalties. He released five (5) studio albums (one of which was certified gold by the RIAA) and seven (7) compilation albums.  ECF No. 62 at ¶ 15. |
| 93. | 93. In television and film, Hall made guest appearances on In Living Color and in the superhero film Meteor Man in the 1990's, and in 2002, he appeared in Men in Black II, with Will Smith and Tommy Lee Jones, playing an alien parody of himself. In the 2000's, Hall was a competitor on the first season of VH1's television show Celebrity Fit Club, which challenged celebrities to lose weight by a combination of diet and exercise. Hall was a cast member of Nick Cannon's MTV series Wild 'n Out seasons 1 and 3, and performed a regular segment on the Nick Jr. television show Yo Gabba Gabba. He began opening in 2008 for Chris Rock on the comedian's "No Apologies" live tour. ECF No. 62 at ¶ 16. |
| 94. | 94. In the 2010's, Hall acted in and hosted television shows on multiple networks. He provided commentary throughout VH1's 100 Greatest Artists of All Time, appeared on Late Night with Jimmy Fallon, and toured with the Yo Gabba Gabba! live show. Hall guest starred on SpongeBob SquarePants and voiced a character on Cartoon Network's Adventure Time. In 2014, Hall appeared in the Syfy network film Sharknado 2: The Second One, in which he was credited as "Biz Markie." In 2016, he appeared on the Fox TV series Empire as himself, where he performed, and in the season 3 finale of the ABC series Black-ish in 2017. Hall was the DJ on the VH1 game show Hip Hop Squares between 2017 and 2019 (a spin-off of the game show Hollywood Squares) and hosted a radio show on SiriusXM's "Rock |

| | |
|---|---|
| | the Bells" Radio station every weekday. ECF No. 62 at ¶ 17.[2] |
| 95. | 95. Hall's work and acclaim continued into the 2020's and that on January 14, 2021, Biz Markie was mentioned in the premiere episode of AppleTV's Emmy award winning Ted Lasso, and one of his songs was played over the end credits. ECF No. 62 at ¶ 18. |
| 96. | 96. Hall earned a living through public appearances and performances for decades under his stage name "Biz Markie." ECF No. 62 at ¶ 21. |
| 97. | 97. Defendant BMI, operated by Izumi, applied to register the "Biz Markie" mark in May 2020. Exhibit E, Exhibit 1 thereto. |
| 98. | 98. In support of BMI's application to register the "Biz Markie" mark, Izumi signed, as attorney-in-fact, for Hall, a consent form stating: "I, Marcel Theo Hall (also known by the state name and nickname of BIZ MARKIE), consent to the use and registration of *my name, BIZ MARKIE*, as a trademark and/or service mark with the USPTO." Exhibit E, Exhibit 2 thereto |
| 99. | 99. Biz Markie, Inc. banked through BB&T. Exhibit B at 46:11-19 |
| 100. | 100.   Hall was not in possession of a list of his own assets; Izumi had to prepare that list. Exhibit B at 157:1-12. |
| 101. | 101.   Izumi has no formal business education or training. She holds an associate's degree in general studies. Exhibit B at 9:11-15. Prior to working for Bizmont Entertainment, she worked at Verizon doing customer service. Exhibit B at 11:7-18. At Bizmont, Izumi did "administrative work," such as "updating, creating, and editing contracts, organizational administrative items." Exhibit B at 13:2-14:12. |
| 102. | 102.   Izumi claims to have been a "co-manager" at Bizmont Entertainment, with Mr. Wanzer, but Izumi does not know |

---

| | |
|---|---|
| | what the compensation arrangement was at Bizmont Entertainment.  Exhibit B at 14:16-18, 17:21-18:3. |
| 103. | 103.     Hall placed his trust in Izumi as his business manager.  Exhibit B at 15:4-6; |
| 104. | 104.     While working for Hall at Biz Markie, Inc. as Hall's "business manager" she "help[ed] with his business and personal affairs."  Exhibit B at 35:21-36:2. |
| 105. | 105.     Izumi's "help" at Biz Markie, Inc. included ""[n]egotiat[ing] and execut[ing] contracts, help[ing] with personal requests from getting [Hall's] roof repaired, request, quotes, paying business and/or personal expenses, getting his personal affairs as well in order from advanced directive to power of attorney, car maintenance."  Exhibit B at 35:21-36:10. |
| 106. | 106.     Izumi does not know why Biz Markie, Inc. did not have any directors.  Exhibit B at 51:4-52:4. |
| 107. | 107.     Izumi cannot distinguish between a business manager and a business partner. Exhibit B at 31:7-33:18. |
| 108. | 108.     Izumi did nothing to track Biz Markie, Inc.'s money; she "kept track" of it by whatever came into BMI's bank account. Exhibit B at 38:7-14 |
| 109. | 109.     Izumi did not do BMI's accounting – Exhibit B at 39:13. |
| 110. | 110.     Izumi does not know what "financial summaries" are.  Exhibit B at 40:7-10. |
| 111. | 111.     Izumi does not know what an assignment of trademark rights is. Exhibit B at 86:4-6. |
| 112. | 112.     Izumi does not know corporate law. Exhibit B at 99:15. |
| 113. | 113.     Izumi believes that, as a result of Hall's Death, his shares of Biz Markie, Inc. automatically moved to her, as the other shareholder.  Exhibit B at 9:11-9:20; 173:9-21 |
| 114. | 114.     In April 2020, Hall was hospitalized due to complications from diabetes. Exhibit A at ¶ 11; Exhibit B at 58:5-8. |

| | |
|---|---|
| 115. | 115.    Hall became incapacitated in June 2020.  Exhibit B at 56:21-57:21; Exhibit A at ¶ 12-14. |
| 116. | 116.    Hall passed away on July 16, 2021.  Exhibit A at ¶ 15. |
| 117. | 117.    "Artist loan out companies are usually limited liability companies or corporations that artists form to collect their royalties and enter into agreements for their personal services."  Exhibit C, Exhibit 1 thereto, at 4-5. |
| 118. | 118.    Biz Markie, Inc. was Hall's loan out company from 2015 until the time of his death.  Exhibit C, Exhibit 1 thereto, at 4-5. |
| 119. | 119.    Through her operation of Biz Markie, Inc. Izumi acted as Hall's manager.  Exhibit C, Exhibit 1 thereto, at 2-4; CSDF at ¶¶ 102-103. |
| 120. | 120.    The industry standard compensation for an artist's manager is ten to twenty percent (10-20%).  Exhibit C, Exhibit 1 thereto, at 5-6. |
| 121. | 121.    No compensation agreement existed that dictated what percentage of the income generated by Hall's services, received by Biz Markie, Inc., was owed to Izumi.  When asked whether she ensured that Hall received 49 percent of profits, Izumi testified:<br><br>Biz and I weren't -- Biz and I never discussed a percentage. It wasn't – that's not how -- so that's not how we functioned in our company. It wasn't how you just broke it down, where you said after all of the expenses were paid, he got 49 percent.  Sometimes we didn't even have enough money in our account to pay bills or we may have only had $500 or $5,000 left in our account, so it was really just us trying to get to a place where we were comfortable, and when we could pay the -- pay Biz, or pay Hall, pay myself, company |

| | |
|---|---|
| | overhead, expenses, that's how we would function in our company. Exhibit B at 101:18-102:12.  When asked whether her claimed ownership share had anything to do with, or any relationship to, the amount of income that she and Hall received, Izumi testified:<br><br>I think it depended on where we were in that month or that time of finances and what we had…. Again, it was -- that wasn't our focus and how we functioned in our company….  We were -- literally, we weren't making a lot of money.  We were literally trying to make sure that all of our bills were paid.<br><br>Exhibit B at 102:22-103:5; 103:20-104:7. When asked whether Izumi did anything to ensure that Hall received even received 49% percent of Biz Markie, Inc.'s income, Izumi testified:<br><br>That's not how we functioned. That's what he and I discussed. The way that we functioned was to make sure that all of our – our – our expenses were taken care of.<br><br>Exhibit B at 104:10-17. |
| 122. | 122.    Biz Markie, Inc.'s tax returns from 2018 reflect greater compensation to Hall than Izumi, in a 62% to 38% split. Exhibit I at Cusato_00108 (authenticated at Exhibit G at 58:3-14). |
| 123. | 123.    Izumi explained the intended significance of their ownership shares as having no relation to compensation at all:<br><br>The significance was that in the event that -- the significance was that I would  have majority ownership. I had been with Biz for, again, over two decades, and so knew how to help run the business while he was alive in the event that something happened to him or in |

| | |
|---|---|
| | his passing, but Biz wanted me to have control of those things.<br>Exhibit B at 102:13-21. |
| 124. | 124.    Since Hall's passing, various royalties and other payments arising from Hall's artistic endeavors continue to be paid to Balancing Acts, Inc. and/or Biz Markie, Inc. or Jennifer Izumi.  Exhibit A at ¶ 16; SOF at ¶¶ 37, 39, 85; CSDF at ¶¶ 37, 40. |

Dated: November 18, 2024                    Respectfully submitted,

*/s/ Peter C. Nanov*
Peter C. Nanov (D.C. Bar No. 230021)
Vorys, Sater, Seymour and Pease LLP
1909 K Street, NW, 9th Floor
Washington, DC 20006
(202) 467-8831
(202) 533-9084 (Facsimile)
pcnanov@vorys.com

Michael J. Garvin, *pro hac vice*
Marcel C. Duhamel, *pro hac vice*
Aaron M. Williams, *pro hac vice*
Vorys, Sater, Seymour & Pease LLP
200 Public Square, Suite 1400
Cleveland, OH 44114-2327
(216) 479-6100
mjgarvin@vorys.com
mcduhamel@vorys.com
amwilliams@vorys.com

*Attorneys for Plaintiff*