UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| TARA HALL AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARCEL THEO HALL, and derivatively on behalf of Biz Markie, Inc., | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT** |
|     Plaintiff, | |
| vs. | Case No.: 1:22-cv-00806-CKK |
| BIZ MARKIE, INC., a Washington, D.C. corporation, and JENNIFER, individually, | |
|     Defendants. | |

## MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

Legal Standard ........................................................................................................ 3

I.    Marcel and Jennifer's agreement Is Fatal to Plaintiff's Purported Claims ........................... 4

   A.    Marcel and Jennifer Conducted BMI Business Pursuant to Valid Agreement ................. 5

   B.    The BMI Shareholders' Agreement Is Fatal to Plaintiff's Damages Claims, Rendering Purported Expert Opinions Irrelevant and Inadmissible ........................................................... 7

   C.    Marcel's  and Jennifer's Conduct Evince Agreement Barring Plaintiff's Claims .............. 8

II.    Unrefuted Facts Regarding the Operation of Biz Markie Inc. Leave Plaintiff's Claims Barred by Laches ..................................................................................................... 11

III.    Plaintiff's Purported Damages Claims Fail ...................................................... 12

IV.    PLAINTIFF Failed to Establish Any OWNERHSIP In Biz Markie Brand to Support Her IP-Related Claims (Counts I-VI) ....................................................................... 14

   D.    Plaintiff has Conceded No Infringement During Marcel's Lifetime ............................... 14

   E.    Plaintiff Has Provided No Evidence of Ownership Entitling Her to Relief for Claims of Infringement After Death ........................................................................................... 15

      a)    The Use of "Biz Markie" as a "Stage Name" Does Not Constitute Trademark or Service Mark Use ..................................................................................................... 15

   F.    Estate Has Failed to Rebut Defendants' Prima Facie Case of Abandonment ................. 21

   G.    Estate Has No Evidence of Misappropriation ................................................... 22

V.    Plaintiff Has Provided No Evidence TO Support INJUNCTION ....................................... 23

VI.    DEFENDANTS ARE ENTITLED TO Attorneys' FEES    ........................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Accord Ideal Image Dev. Corp. v. Idealaser Hair Removal Corp.*, 2019 U.S. Dist. Lexis 144098 (S.D. Fla. 2019) ............................................................................................................ 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................ 4, 11

*Bangor Punta Operations, Inc. v. Bangor & A. R. Co.*, 417 U.S. 703 (1974).............................. 9

*Bazarian Intl. Fin. Associates, LLC v. Desarrollos Aerohotelco, C.A.*, 315 F. Supp. 3d 101 (D.D.C. 2018) ............................................................................................................... 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................. passim

*Crafa v. Fernandez*, 2003 WL 1228019 (Conn. Super. Ct. Mar. 6, 2003) ............................ 16, 25

*Davis v. Walt Disney Co.*, 75 U.S.P.Q.2d 1044 (D.Minn.2005)................................................ 21

*Daytona Auto. Fiberglass v. Fiberfab, Inc.*, 475 F. Supp. 33 (W.D. Pa. 1979) ................... 15, 25

*De Varona v. Discount Auto Parts, Inc.*, 2012 WL 2334703, *2 (S.D. Fla Jun. 19, 2012)......... 13

*Digital Camera Int'l, Ltd. v. Antebi*, 2017 WL 2992719 (E.D.N.Y. July 14, 2017) ................... 10

*El Sombrero Corp. v. Bolivar*, 218 U.S.P.Q. 668 (4th Dist. 1982)............................................ 25

*Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531 (4th Cir. 2000) ............................... 21

*Estate of Elvis Presley v. Russen*, 513 F. Supp. 1339 (D.N.J. 1981)......................................... 17

*Fields v. Office of Johnson*, 520 F.Supp.2d 101 (D.D.C. 2007)........................................... 4, 14

*General Healthcare Ltd. v. Qashat*, 364 F.3d 332 (1st Cir. 2004) ............................................ 22

*Globalaw Ltd. v. Carmon & Carmon L. Off.*, 452 F. Supp. 2d 1 (D.D.C. 2006) ....................... 21

*Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156 (Fed. Cir. 2002)............................. 15, 17

*Hutton Contracting Co. v. City of Coffeyville*, 2004 U.S. Dist. Lexis 19580 (D. Kan. 2004)........ 7

*In re Arnold*, 105 U.S.P.Q.2d 1953 (TTAB 2013) ............................................................. 16, 20

*In re First Draft*, 76 U.S.P.Q.2d 1183 (TTAB 2005) ............................................................. 16

*In re Generation Gap Prods., Inc.*, 170 U.S.P.Q 423 (TTAB 1971)........................................... 16

*In re Lee Trevino Enters.*, 182 U.S.P.Q 253 (TTAB 1974) ...................................................... 16

*In re Mancino*, 219 U.S.P.Q 1047 (TTAB 1983) ................................................................... 16

*In re Polar Music Int'l AB*, 714 F.2d 1567 (Fed. Cir. 1983) ......................................... 20, 21, 25

*Ingenohl v. Walter E. Olsen & Co.*, 273 U.S. 541 (1927) ...................................................... 19

*Intermed Commc'n, Inc. v. Chaney*, 197 U.S.P.Q. 501(TTAB 1977) ....................................... 15

*Krause Int'l, Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585 (D.D.C. 1994)........................... 23, 24

*Lewis v. Estate of Lewis*, 193 A.3d 139 (D.C. 2018)................................................................ 6

*Maffea v. Ippolito*, 247 A.D. 2d 366 (1998) ........................................................................... 5

*Margo v. Weiss*, 1997 U.S. Dist. Lexis 20867 (S.D.N.Y. 1997) .............................................. 11

*McCarty v. Am. Airlines, Inc.*, 2008 WL 11399624, *8 (S.D. Fla Jun. 8, 2008)........................ 13

*Mullin v. Wash. Free Weekly,* .............................................................................................. 10

*Needham v. Innerpac, Inc.*, 2007 U.S. Dist. Lexis 41721 (N.D. Ind. 2007).................................. 7

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014)........................ 24, 25

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 188 F. Supp. 3d 22, 99 (D.D.C. 2016) .................................................................................................. 21, 22

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 2015 WL 13680818, at *2 (D.D.C. June 12, 2015) ................................................................ 20

*Person's Co., Ltd. v. Christman*, 900 F.2d 1565 (Fed. Cir. 1990) ............................................ 20

*Portus Sing. PTE Ltd. v. Kenyon & Kenyon LLP*, 449 F. Supp. 3d 402 (S.D.N.Y. 2020) ............ 7

*Queen v. Schultz*, 888 F.Supp. 2d 145 (D. D.C. 2012) ............................................................ 5

*Richardson v. Norcross,* 80 F. Supp. 799 (D.D.C 1948) ......................................................... 16

1

*Rivard v. Linville*, 133 F.3d 1446 (Fed. Cir. 1998) ................................................................. 22

*Ryan v. U.S,* 136 U.S. 68 (1890) ................................................................................................. 5

*SME Steel Contractors, Inc. v. Seismic Bracing Co., LLC*, 681 F. Supp. 3d 1181 (D. Utah 2023) ................................................................................................................................... 13

*Sombrero Corp. v. Bolivar*, 218 U.S.P.Q. 668 (4th Dist. 1982) ............................................... 15

*Specht v. Google Inc.,* 747 F.3d 929, 935–936 (7th Cir. 2014) ............................................... 19

*Stark v. Diageo Chateau & Est. Wines Co.,* 907 F. Supp. 2d 1042 (N.D. Cal. 2012) ................ 23

*United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90 (1918) .............................................. 15

*Veitch v. England*, 471 F.3d 124 (D.C. Cir. 2006) ................................................................ 4, 11

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) ............................................ 23

**Statutes**

15 U.S.C. § 1117(a) ............................................................................................................ 24, 26

15 U.S.C. §§ 1051-1052, 1127 ................................................................................................. 15

15 USC § 1127 .................................................................................................................... 20, 21

**Other Authorities**

13 FLETCHER CYC. CORP., Acquiescence, ratification, or laches, § 5956 .............................. 9

BMI/"Biz Markie ........................................................................................................................ 8

**Rules**

Fed. R. Civ. P. 26 ...................................................................................................................... 12

Fed.R.Civ.P. 56(a) ...................................................................................................................... 3

Fed.R.Civ.P. 56(C)(1) ........................................................................................................... 4, 11

Fed.R.Civ.P. 56(C)(3) ................................................................................................................. 3

## INTRODUCTION

This is a sad cliché of a story – an accomplished artist and musician Marcel Hall ("Marcel") had his business in order, run through defendant Biz Markie Inc ("BMI"), which he ran with trusted business partner, Jennifer Izumi ("Jennifer"), whom he agreed would have a 51% stake in BMI. Marcel and Jennifer had such a close and trusting relationship that, in addition to a 51/49 ownership of Biz Markie Inc, Marcel designated Jennifer as his Medical Advance Directive in December 2017 and his Power of Attorney in May 2018.

In November 2018, Marcel married Tara Hall.  At that time, Marcel made it clear that he wished to keep his business and financial affairs the same – and separate from his wife. When his new wife persisted in attempts to insert herself into his business and financial affairs, Marcel took steps to stop her and began to mistrust her.  This led to friction in the Hall's marriage and made Marcel more determined to take steps to insulate his business and financial affairs from his new wife, which he directs Jennifer to help him accomplish.

Naturally, as Marcel's wife who already was interested in participating in Marcel's business and financial affairs, Plaintiff viewed Jennifer, who was at the center of BMI, as a rival. This only grew as Plaintiff became aware of other reasons to envy the Marcel-Jennifer business relationship, including when Plaintiff learned that, even after the Hall's married, Marcel left Jennifer as his designated POA and life insurance beneficiary – and had done neither with his new wife.  All of this caused Plaintiff to express animosity and envy towards Jennifer.

After Marcel passed intestate and Plaintiff became representative of his estate, this animosity came out in full force and fueled efforts of vengeance against Jennifer – for Marcel's decision and direction while he lived to keep Plaintiff out of his business and financial affairs. This vengeance has been at the root of a machine gun litigation approach in which Plaintiff has

filed or been responsible asserting various actions against Jennifer/BMI, not because of legitimate claims -- to bludgeon or exhaust Jennifer until she agrees to settle unmeritorious claims. Finally, in this action, Plaintiff must face dismissal for the lack of evidence to support her frivolous claims, which have been fueled by tortured theories and innuendo.

### Summary Judgment Should Be Granted For Lack Of Evidence[1]

Summary Judgment should be granted because, despite the opportunity, Plaintiff has failed to show sufficient evidence to support essential elements of her claims.  In the record, Defendants Biz Markie Inc and Jennifer submitted facts and law to support findings that there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law. Specifically, the record demonstrates: (1) the  Marcel and Jennifer conducted the business of "Biz Markie" through Biz Markie Inc pursuant to a valid agreement;  (2) the evidence of this agreement and actions taken pursuant thereto are fatal to Plaintiff's purported claims because they evidence an agreement, acquiescence and participation by Marcel; (3) Plaintiff's essential element of damages fails for lack of admissible evidence; (4) similarly, Plaintiff's claims are barred by laches; and (5) IP claims fail, *inter alia*, because Plaintiff lacks any evidence to show ownership rights prior to BMI's use. These facts and the legal consequences that follow can't be undone by innuendo and theories of Plaintiff -- who stands in Marcel's shoes today; but, while Marcel lived, by his direction, was "on the outside" trying to look in.

Plaintiff's opposition did not genuinely refute Defendants' entitlement to judgment as a matter of law.  This Court should not be confused or misled by the chaos Plaintiff attempts to cause in an opposition full of attempts to mask her confused theories, allegations or conclusory statements as "genuine issues" or "material facts". Two prominent examples of Plaintiff's

---

[1] Defined terms have the meaning ascribed to them in the Motion for Partial Summary Judgment filed herewith.

attempted  sleight of hand stand out.  First, in the face of real evidence that Marcel and Jennifer conducted the business of BMI under an agreement supported by various writings, oral expressions and conduct, Plaintiffs ignore evidence and law under the false pretense that only a formal, written "shareholder agreement" will suffice under DC law.  Then, Plaintiff  goes on to waste much time assuming no valid agreement to operate BMI. exists and has purported "experts" base inadmissible "opinions" on assumptions regarding the lack of a contract. Second, Plaintiff sews chaos by confusing or misapplying different roles Jennifer played in Marcel's life – as a 51% business partner in running BMI and Marcel's designated Power of Attorney (POA) – and attempts to assume any actions by Jennifer were under the POA and ignore the reality that Jennifer's actions related to the business of BMI. were taken in her capacity as Marcel's business partner or 51% owner of BMI or with the participation or acquiescence of Marcel, not under the POA.

As discussed below, we are now past the time for Plaintiff to submit evidence.  The Court should grant judgment as a matter of law because Plaintiff lacks evidence to meet her burden.

## LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment is properly granted against a party who, "after adequate time for discovery and upon motion, … fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   On a motion for summary judgment, the Court is only required to consider the materials explicitly cited by the parties, but may, on its own accord, consider "other Materials in the Record." Fed.R.Civ.P. 56(C)(3). For a factual dispute to be "genuine," the nonmoving party must establish more than "[t]he mere existence of a scintilla of

evidence" in support of its position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The nonmoving party cannot rely on "mere allegations" or conclusory statements. *Veitch v. England*, 471 F.3d 124, 134 (D.C. Cir. 2006). The nonmoving party must present specific facts to enable a reasonable jury to find in its favor. Fed.R.Civ.P. 56(C)(1). If the nonmoving party's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  In such a situation, as we have here, "[t]he moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."      Id. "Self-serving testimony does not create genuine issues of material fact, especially where that very testimony suggests that corroborating evidence should be readily available." *Fields v. Office of Johnson*, 520 F.Supp.2d 101, 105 (D.D.C. 2007).

## I.    MARCEL AND JENNIFER'S AGREEMENT IS FATAL TO PLAINTIFF'S PURPORTED CLAIMS

The heart of Plaintiff's purported claims is based on the false premise that Marcel and Jennifer did not have a valid agreement to operate Biz Markie Inc. Unrefuted evidence that Marcel and Jennifer operated Biz Markie Inc. pursuant to a valid agreement cuts through the heart of Plaintiff's purported claims as follows:  (a) Plaintiff's fiduciary duty, contract, and quantum meruit claims, all premised on the absence of an agreement regarding what Marcel and Jennifer would each be compensated and how they would operate that business (*i.e.*, at first through BMI, later through BAI) fail; (b) the claim for damages fails because the testimony of her purported experts, based upon opinions about industry norms which are inadmissible due to the existence of a

contract; (c) Plaintiff's intellectual property claims (Counts 1-7) -- predicated on the false idea that BMI and Jennifer used Marcel's intellectual property without his permission – also fail.

### A. <u>Marcel and Jennifer Conducted BMI Business Pursuant to Valid Agreement</u>

BMI was established jointly by Marcel and Jennifer as the entity through which they would conduct the business of "Biz Markie".  Defendants put forth unrefuted evidence of the agreement through documents written or signed by the principals (Marcel and Jennifer), oral expressions of their intentions, and their actions in conduct of the business. Plaintiff's "opposition" ignores this unrefuted evidence, apparently hoping that conclusory statements that "no written shareholder agreement" existed would establish a genuine issue of a material fact or that no one would notice that this conclusory statement does not matter for the purposes of establishing a valid agreement.

Plaintiff's confuses or deflects this issue by pointing to the absence of a formal written document, entitled "shareholder agreement.  This does not hinder the existence of an agreement to operate BMI -- supported by written materials, oral expressions and affirming conduct by the parties that evidence their intent to operate BMI with Jennifer, 51% - 49%.  Under DC law, a valid contract requires (1) agreement as to all material terms and (2) intention of the parties to be bound. *Queen v. Schultz*, 888 F.Supp. 2d 145, 159-160 (D. D.C. 2012). "The manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract." *Id*., quoting *Maffea v. Ippolito*, 247 A.D. 2d 366, 668 NYS 2d 653, 654 (1998). "The intentions of parties to a contract can be found from written materials, oral expressions, and the actions of the parties. *Id*. at 163.  It is well established that a complete contract, binding under the statute of frauds, may be gathered from letters and writings between the parties relating to the subject-matter of the contract, and so connected with each other that they may be fairly said to constitute one paper relating to the contract. *Ryan v. U.S,* 136 U.S. 68, 83 (1890).

Plaintiff has not refuted evidence in the record of a valid operating agreement through written materials, oral expressions and actions of Marcel and Jennifer in the operation of BMI. (SOF ¶¶ 14-15, 21-22) In 2019, BMI obtained a bank loan. (*Id.*, ¶¶ 16-24) In the process of doing so, BMI submitted its taxes and Marcel submitted his own taxes, as well. (*Id.*, ¶ 21) Those taxes reflect the 51/49% ownership of BMI. (*Id.*) Marcel signed a loan document attesting to the accuracy of the material he submitted to the bank, and that signature was notarized. (*Id.*, ¶¶ 20-22) Under D.C. law, that notarized signature is presumed to be valid, and it takes "strong and disinterested evidence" to overcome that presumption. *Lewis v. Estate of Lewis*, 193 A.3d 139, 144 (D.C. 2018). Plaintiff lacks evidence to overcome this presumption.

Moreover, a disinterested witness *confirmed* that Marcel had agreed to own 49% of BMI and to be compensated accordingly, with Izumi owning 51% and being compensated that way. One of Marcel and BMI's CPAs was Nick Cusato. (SOF ¶ 30) Cusato testified to a conversation with Marcel and Izumi where they confirmed the 51/49 ownership of BMI. (*Id.*, ¶ 31) Cusato further explained that that Marcel got paid via both W-2 wages and as a 1099 contractor because he "tended to take more money out of the business" than Izumi did and they did not want to "draw on his capital account" which would reduce his ownership percentage. (*Id.*, ¶ 32) On other calls, Marcel had expressed his wish that they make Izumi 100% owner of the "Biz Markie" business and put Marcel on payroll because Marcel was "more interested in just receiving money and being taken care of rather than the business." (*Id.*, ¶ 33) Cusato testified that Marcel "had always stated in the calls that [they] had been on that the business was for [Izumi] and to make sure she was taken care of." (*Id.*, ¶ 34)

Plaintiff's opposition reaches to challenge the validity of the agreement. Plaintiff attempts to argue, confusingly, about whether there's an agreement as to a percentage of ownership. (Pl.

Opp. Mtn. at 8)   Loathe to pass up a fiduciary allegation, Plaintiff also attempts to argue (Resp. 10) that Jennifer somehow breached a fiduciary duty by getting paid more than a reasonable amount. Once again, this is based on two false assumptions: (1) every action by Jennifer was taken in a POA role, as opposed to the simple role of Marcel's business partner; and (2) that Marcel and Jennifer did not have an agreement on how they would conduct the business of BMI, including how they would handle compensation. Finally, Plaintiff attempts to argue (Resp. 15) that a triable issue of fact exists regarding whether Jennifer was paid in excess of "reasonable compensation". Again, like Plaintiff's purported experts, this one fails with the establishment of an agreement between Marcel and Jennifer regarding how the business of Biz Markie Inc. would be conducted.

### B.  The BMI Shareholders' Agreement Is Fatal to Plaintiff's Damages Claims, Rendering Purported Expert Opinions Irrelevant and Inadmissible

"A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Summary judgment on a damages theory can be appropriate, for example, where the damages theory is based on inadmissible expert testimony. *Portus Sing. PTE Ltd. v. Kenyon & Kenyon LLP*, 449 F. Supp. 3d 402, 419 (S.D.N.Y. 2020). Opinions about industry norms are irrelevant where, as here, there is an actual agreement, as here. *Needham v. Innerpac, Inc.*, 2007 U.S. Dist. Lexis 41721, 8 (N.D. Ind. 2007) ("industry standards are irrelevant . . . because the key question . . . is whether the parties agreed in the particular contract that some other compensation scheme applied."). Marcel and Jennifer agreed to split the profits of BMI, 49%-51%. (SOF ¶¶ 15, 21-22, 31) Rosario-Richardson's opinion is therefore inadmissible because there was an actual agreement. *Hutton Contracting Co. v. City of Coffeyville*, 2004 U.S. Dist. Lexis 19580, 37-38 (D. Kan. 2004) (where parties have agreement, "evidence of industry custom is simply irrelevant and properly excluded pursuant to Rule 702 and *Daubert*."); *Bazarian Intl. Fin. Associates, LLC v. Desarrollos*

*Aerohotelco, C.A.*, 315 F. Supp. 3d 101, 118-19 (D.D.C. 2018) (opinion about reasonableness of fee and industry standard fees was irrelevant and inadmissible where question was what fee parties actually agreed to, and contractual entitlement to same). Without Rosario-Richardson's 10-20% "industry norm" opinion as a predicate, Williams' 15% damages calculation lacks foundation and is inadmissible for that reason. And without the expert opinions, Plaintiff lacks admissible evidence to support the theory that all compensation above 15% constitutes recoverable damages, making summary judgment on that theory of damages appropriate.

In the record, Defendants have demonstrated a complete failure of proof concerning the essential element of damages in Plaintiff's case because (1) Plaintiff has only disclosed one measure of damages, which is premised on expert opinions. (SOF ¶ 69); (2) Plaintiff's damages rest on two purported expert opinions with one primary assumption – that it is not customary in the music industry for someone in Jennifer's role to be paid 51%; and (3) Plaintiff's damages theory falls apart because Plaintiff's purported expert opinions are inadmissible due to the agreement regarding how Marcel and Jennifer would operate BMI.

## C. Marcel's and Jennifer's Conduct Evince Agreement Barring Plaintiff's Claims

Most of Plaintiff's claims, on behalf of Marcel's Estate of Marcel, follow a theme of some form of corporate waste, fraud or breach of fiduciary duties in the corporate context of BMI. In the record, Defendants have demonstrated through evidence that Marcel and Jennifer conducted the business of Biz Markie Inc as a team. From 2015 to 2019, Marcel and Jennifer agreed to run all "Biz Markie" business through BMI. (SOF ¶¶ 14, 37) Marcel and Jennifer discussed all key BMI/"Biz Markie" business decisions, and acted after reaching consensus. (*Id.*, ¶¶ 35-36) BMI used the "Biz Markie" trademark throughout that time. (*Id.*, ¶¶ 74, 77-78) BMI owned the website "bizmarkie.com" and offered services using the "Biz Markie" trademark with it, and later

merchandise, too – including the very merchandise Plaintiff now complains about. *Compare* SAC ¶¶ 5, 22, 49 (Doc. 61) *with* SOF ¶¶ 82, 88. Yet Plaintiff's complaint posthumously seeks to revoke that agreement and impose liability for Marcel and Jennifer's joint decisions.

Plaintiff, as the administrator of Marcel's estate, filed a sworn pleading with the Probate Court explaining that BMI "is the corporate entity through which the Deceased's [Marcel's] professional activities were performed, including the collection of music royalties." (SOF ¶ 75; *accord* SAC ¶¶ 5, 22 (Doc. 61)) Plaintiff also has taken the position, in sworn pleadings with the Probate Court, that the Estate has $0 in "corporate stocks" nor any intellectual property – and has affirmed these positions with the Probate Court during this litigation.  (SOF ¶ __; Izumi Decl. Ex. _) Courts favor judicial estoppel as a  "policy against permitting a party to change its position according to its present interests ..." *Prince v. Contract Appeals Board*, 892 A.2d 380 (D.C. 2006) "The independent doctrine of judicial estoppel precludes a litigant from playing fast and loose with a court of justice by changing his position according to the vicissitudes of self interest...." *Porter Novelli, Inc. v. Bender*, 817 A.2d 185, 188 (D.C. 2003), quoting *Lofchie v. Washington Square Ltd. Partnership*, 580 A.2d 665, 668 (D.C. 1990) (concurring opinion).  Having declared its $0 interest in corporate stocks or intellectual property to the Probate Court on multiple occasions, Plaintiff should be judicially precluded from taking an inconsistent position in this litigation.

As representative of Marcel's Estate, Plaintiff stands in Marcel's shoes with respect to the business he and Jennifer have conducted through BMI. A "shareholder may not complain of acts of corporate mismanagement if he acquired his shares from those who participated or acquiesced in the allegedly wrongful transactions." *Bangor Punta Operations, Inc. v. Bangor & A. R. Co.*, 417 U.S. 703, 710 (1974); *1 Closely Held Corporations* 9.06 (2024, Lexis); 13 FLETCHER CYC. CORP., Acquiescence, ratification, or laches, § 5956 ("A shareholder has no standing to bring

claims on behalf of the corporation if the shareholder participated or acquiesced or received benefits from . . . [the] acts about which the shareholder complains in the derivative action.") and id. at *Continuous Ownership Rule* § 5981 n.2 (Westlaw 2024) (same); *Digital Camera Int'l, Ltd. v. Antebi*, 2017 WL 2992719, 67 (E.D.N.Y. July 14, 2017). Here, the entirety of Plaintiffs' complaint is premised on challenging corporate acts in which Marcel participated or to which he acquiesced and accordingly, Plaintiff should be estopped from relying on those actions in this proceeding.

The evidence is undisputed that Jenni and Marcel discussed all the transactions at issue. And Marcel had a duty as the other BMI shareholder in a close corporation to stay informed. As such, (1) Plaintiff (as personal representative) cannot maintain an action for alleged breaches in which Marcel participated or acquiesced (which would be every decision while he had capacity); (2) even if Plaintiff could maintain such actions, damages back to 2015 would have a statute of limitations problem;[2] (3) even if Plaintiff could get around a statute of limitations problem and maintain such suit, as discussed below, laches still bars the claim. One of the prime examples in which laches is applied is where the case involves a transaction (or transactions) involving a decedent – as here, where Jennifer and BMI are now denied the ability to prove the decedent's consent to the transactions.

Plaintiff's opposition attempts to find an issue – arguing (Pl. Opp. Mtn. at 5) that Marcel and Jennifer had no agreement regarding compensation and that the agreement, at most, related to

---

[2] Plaintiff's attempt to salvage its time-barred claims by alleging ongoing torts is unavailing. The argument that a fiduciary duty allows Plaintiff to toll claims based on ongoing harm lacks merit. As Plaintiff notes, claims accrue under the discovery rule only when the connection between injury and tortious conduct is obscure (*Mullin v. Wash. Free Weekly,* 785 A.2d 296, 297 (D.C. 2001)). Here, no such obscurity exists. Plaintiff offers no evidence of restricted access to personal or business financial records, bank accounts, or his CPA. In fact, the CPA confirmed regular communication with Marcel. Cusato Dep. 17:8-10.

ownership percentage.  The record, including testimony of Jennifer and BMI's accountant as well as bank and tax records, shows that an agreement existed. And, of course, Plaintiff ignores the bank records that Plaintiff doesn't dispute in which Marcel agreed Jennifer had a 51% interest and confirmed the tax records are accurate.  For a factual dispute to be "genuine," the nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position. *Liberty Lobby, Inc.*, 477 U.S. at 252. The nonmoving party cannot rely on "mere allegations" or conclusory statements. *Veitch*, 471 F.3d at 134. Instead, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. Fed.R.Civ.P. 56(C)(1). If the nonmoving party's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50.

## II.    UNREFUTED FACTS REGARDING THE OPERATION OF BIZ MARKIE INC. LEAVE PLAINTIFF'S CLAIMS BARRED BY LACHES

As set forth in Defendants' motion, laches should bar all of Plaintiff's claims.  Def. MPSJ at 12 (*see* cases cited therein). Plaintiff can only overcome this presumption by establishing the delay was reasonable in bringing suit or that Jennifer has not suffered prejudice. This presumption applies in this case, since Plaintiff alleges that Defendants' use of the "Biz Markie" mark starting in 2015 was infringement. SAC ¶¶ 5, 22, 64 (Doc. 61).

In *Margo v. Weiss*, 1997 U.S. Dist. Lexis 20867, 29-30 (S.D.N.Y. 1997), the Court found that laches barred a trademark claim where the plaintiffs had unreasonably delayed, and in the interim two key witnesses had died. Because of the witnesses' unavailability, they could not testify about whether the plaintiffs should get credit as co-authors of a work, thereby prejudicing defendants. *Id*. The same delay and prejudice is present here – and the same conclusion should follow. *Accord Ideal Image Dev. Corp. v. Idealaser Hair Removal Corp.*, 2019 U.S. Dist. Lexis 144098, 8 (S.D. Fla. 2019) (prejudice "can arise as a result of a defendant's inability to present a

full and fair defense on the merits due to . . . the death of a witness . . . thereby undermining the court's ability to judge the facts" (quotation omitted)). As the record reflects, Plaintiff unreasonably delayed in filing suit -- and that delay has prejudiced Jennifer. Marcel could have sued at any time over the conduct alleged. He did not (because the conduct was not wrongful). Instead, Defendants are now forced to defend actions to which Marcel consented and which he participated – all after Marcel's passing. Were Marcel still here, he could definitively confirm that he had agreed to the compensation for Jennifer that his estate now challenges, BMI's use of the mark, and all other conduct at issue. His absence increases the difficulty of doing justice. As such, the Court should apply laches to bar the meritless claims asserted late by the Estate's embittered representative.

Plaintiff's opposition offers a couple of misplaced arguments, but no genuine issues of material fact.  First, Plaintiff suggests (Pl. Opp. Mtn. at 27) that Defendants only cite cases for relating to trademarks. This is false. Plaintiff also argues that Defendants can't establish reasonable reliance. As discussed above, Defendants relied on Marcel's participation in their business decisions and never expected Marcel would change his position or sue them for conduct to which he acquiesced.  Plaintiff  also attempts to argue, falsely, that laches doesn't apply to injunctive relief. Finally, Plaintiff argues that Defendant's haven't demonstrated a lack of diligence by the Estate regarding IP – conveniently forgetting that the Estate stands in the shoes of Marcel.

### III.    PLAINTIFF'S PURPORTED DAMAGES CLAIMS FAIL

Plaintiff's purported damages claims fail because, besides the inadmissibility of Plaintiff's purported expert reports, Plaintiff has failed to produce any damages calculations as required by Rule 26. Summary judgment also can be appropriate where the theory was not disclosed as required under Fed. R. Civ. P. 26. *SME Steel Contractors, Inc. v. Seismic Bracing Co., LLC*, 681

F. Supp. 3d 1181, 1230 (D. Utah 2023). Plaintiff has provided no evidence of entitlement to monetary relief after Marcel's death. Accordingly, this Court should grant Defendants judgment as a matter of law on Plaintiff's damages claims.

Plaintiff's Opposition attempts to avoid dismissal -- pretending that disclosure of several measures of damages in discovery and mentioning statutory damages on a cybersquatting claim is a proper damages calculation. Directing an opposing party to records is not sufficient to meet the requirement that Plaintiff actually do a calculation. Plaintiff was required to provide a computation of each category of damages based on the information available to her. *See e.g. De Varona v. Discount Auto Parts, Inc.,* 2012 WL 2334703, *2 (S.D. Fla Jun. 19, 2012) ("Plaintiff may not shift to Defendant the burden of attempting to determine the amount of Plaintiff's alleged damages. Rather, Plaintiff must compute in dollars how much she claims for each category of damages."); *McCarty v. Am. Airlines, Inc.,* 2008 WL 11399624, *8 (S.D. Fla Jun. 8, 2008) (compelling adequate damages disclosures and holding "The Federal Rules and case law make clear that in terms damages calculations, Defendants are entitled to more than unsupported estimates.").

In addition to failing to provide appropriate damages calculations, Plaintiff has provided no evidence of entitlement to monetary relief after Marcel's death. Plaintiff admits that there is a signed Shareholders' Agreement. CSDF ¶¶ 15, 113, Pl. Opp. Mtn at 3. The Shareholders' Agreement provides for Jennifer's 100% ownership after Marcel's death. SOF ¶113. While Plaintiff argues that Jennifer's signature on behalf of Macel constitutes a breach of fiduciary duty; this simply is not so. Third-party uncontradicted testimony support that Jennifer was supposed to own everything. SOF ¶¶ 33-34, Cusato Dep., 1/31/24, Ex. 6, at 21:9-22 (providing that Hall wanted Jennifer to be 100% owner), and Ex. 7, Shaw Dep., 16:3–11, 19-25, 17:1-3, Ex. 8 Horton Dep. 9:4-25, 10:1-11. Plaintiff's argument and self-serving testimony are insufficient to create a genuine

issue of fact. *See, e.g., Fields*, 520 F.Supp.2d. at 105. In fact, in a sworn statement before the Orphan's Court, Plaintiff contradicts her own claims as she admitted that there are no corporate assets. Ex. 14-002, 007, 031-032, 034, 040, 0-045, 046.  Accordingly, Jennifer's authorized signature as power of attorney to effectuate the transfer at death, simply memorializing a prior agreement, cannot be a breach of her fiduciary duty, is valid, and accordingly, as 100% owner of BMI, Plaintiff is entitled to no monetary relief after the death of Marcel. With respect to the trademarks, as discussed in more detail in section IV(C)(a) below, Plaintiff has failed to show any proprietary interests in the Biz Markie mark and accordingly not entitled to any damaged on the trademark claims.

## IV.    PLAINTIFF FAILED TO ESTABLISH ANY OWNERHSIP IN BIZ MARKIE BRAND TO SUPPORT HER IP-RELATED CLAIMS (COUNTS I-VI)

As an initial matter, as it relates to Jennifer, Plaintiff has provided no argument, and more importantly, no evidence that Jennifer, in her individual capacity, infringed any trademarks or misappropriated Marcel's name, image, or likeness.[3] Accordingly, Jennifer is entitled to summary judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 325. (holding moving party burden discharged by showing absence of evidence to support the nonmoving party's case.)

### D.  <u>Plaintiff has Conceded No Infringement During Marcel's Lifetime</u>

While BMI asserts ownership of the "Biz Markie" mark, in her opposition brief, Plaintiff has not conceded the issue of ownership[4] but has conceded no infringement during Marcel's life agreeing  that, at a minimum, Marcel allegedly granted BMI a license to use the "Biz

---

[3] This holds true for the unjust enrichment claim regarding profits/royalties for sale of goods alleged to be the product of the infringement and misappropriation claims.

[4] As discussed in greater details as section IV(C)(a) in a sworn statement before the Prince George's County Orphan's Court, Plaintiff swore that the estate had no intellectual property interest.

Markie" mark. Opp. Mtn. at 23 n.10 ("Plaintiff agrees; the evidence shows nothing more than a license or permitted use.").

### E. Plaintiff Has Provided No Evidence of Ownership Entitling Her to Relief for Claims of Infringement After Death

#### a) The Use of "Biz Markie" as a "Stage Name" Does Not Constitute Trademark or Service Mark Use

#### Legal Standard for Establishing Trademark/Service Mark Rights

A party must establish its own prior proprietary rights in a mark through ownership of a prior registration, actual use, or through use analogous to trademark use, and the use must be sufficient to establish a proprietary interest in the mark. *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1162 (Fed. Cir. 2002). Under the Trademark Act, a trademark or service mark must be used in commerce to identify and distinguish goods or services and indicate their source. 15 U.S.C. §§ 1051-1052, 1127. The U.S. Supreme Court has held, "the right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a Particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in Connection with an existing business." *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90 (1918); *see also*, *Daytona Auto. Fiberglass v. Fiberfab, Inc.*, 475 F. Supp. 33, 36 (W.D. Pa. 1979)("Mr. Smith did not qualify as the owner of the trademarks since he never in fact used them in his own individual business but rather permitted their use by corporations of which he was a stockholder")(citation omitted); *Intermed Commc'n, Inc. v. Chaney*, 197 U.S.P.Q. 501 (TTAB 1977) (Application was void because there was no use of the mark by the applicant in his capacity as an individual. All the activity was conducted by the applicant as an officer of a foundation.); *El Sombrero Corp. v. Bolivar*, 218 U.S.P.Q. 668 (4th Dist. 1982) (Held that a substantial shareholder in a corporation was not the owner of a mark used by the corporation. Illinois state service mark registration cancelled for lack of ownership.); *see also*,

*Crafa v. Fernandez*, 2003 WL 1228019, at *4 (Conn. Super. Ct. Mar. 6, 2003)("The fact that Crafa originated the marks does not vest ownership of the marks in him as an individual."). With respect to that which qualifies as a bona fide trademark/service mark use, Courts and the Trademark Trial and Appeal Board have consistently held that the use of a name as a stage name or pseudonym does not, by itself, constitute trademark or service mark use. *See, e.g. Richardson v. Norcross,* 80 F. Supp. 799, 800 (D.D.C 1948) ("Susie Cucumber is incapable as a registration for a trade-mark since it is used as plaintiff's pseudonym and signature and not as a true trade-mark"); *see also*, *In re Arnold*, 105 U.S.P.Q.2d 1953, 1959-60 (TTAB 2013) (holding BLATANCY fails to function as a mark because it merely identifies the name of a performer featured on applicant's musical recordings); *In re First Draft*, 76 U.S.P.Q.2d 1183, 1191 (TTAB 2005) (holding pseudonym FERN MICHAELS identifies only the author and does not function as a mark to identify a series of fictional books despite applicant's showing that the name had been used as an author's name for 30 years; that 67 separate books had been published under the name, and approximately 6 million copies had been sold; that the book jackets listed the titles of other works by Fern Michaels and promoted her as a bestselling author; that the author had been inducted into the New Jersey Literary Hall of Fame); *In re Mancino*, 219 U.S.P.Q 1047 (TTAB 1983) (holding that BOOM BOOM solely as applicant's professional boxing nickname and not identifier of the service); *In re Lee Trevino Enters*., 182 U.S.P.Q 253 (TTAB 1974) (LEE TREVINO used merely to identify a famous professional golfer rather than as a mark to identify and distinguish any services rendered by him); *In re Generation Gap Prods., Inc*., 170 U.S.P.Q 423 (TTAB 1971) (GORDON ROSE used only to identify a particular individual and not as a service mark to identify the services of a singing group).

To create a genuine dispute regarding BMI's alleged infringement of the "Biz Markie" mark after Marcel's death, Plaintiff must establish prior trademark or service mark rights by Marcel in the "Biz Markie" mark in order for him to have had any rights to allegedly have licensed. *Herbko Int'l, Inc.* 308 F.3d at 1162. Without establishing such rights, Plaintiff's claim—that any such rights (*i.e.*, license)[5] terminated at Marcel's death, thereby subjecting BMI to liability— fail.[6] As stated prior, Plaintiff has failed to submit a single piece of evidence establishing any such proprietary rights. Plaintiff accused Defendants of being disingenuous in its assertion, but in fact, it is Plaintiff that is being untruthful.. Most notably, under penalty of perjury, Plaintiff swore before the Prince George's County Orphan's Court ("Orphan's Court") averring no intangible assets.[7] SOF ¶¶ 89-91, 93,94, Ex. 14.. Specifically, on November 3, 2021, more than ***3 months before filing*** suit asserting such rights,[8] Hall signed an inventory summary affirming under penalty of perjury,

> that the contents of this document are true to the best of my knowledge, information, and belief, and that any property valued by me which I have authority as personal representative to appraise has been valued completely and correctly in accordance with law.

---

[5] Plaintiff provides that Hall never signed a written agreements granting BMI any rights. Opp Mtn at 20, CSDF ¶74. Plaintiff has still failed to establish that Marcel had any proprietary rights to assign (or license). Accordingly, no agreement, written or otherwise was required.

[6] Plaintiff relies on *Estate of Elvis Presley,* 513 F. Supp. 1339, 1365 (D.N.J. 1981) to support the notion that at death, Marcel's alleged rights pass to the estate. If Marcel had any rights (the record is devoid of any) and not assigned them, the rights would pass to the Estate. *Presley* is inapposite to the facts here, because in that case, the record evinced use such as licensing by Presley in his individual capacity. Here, there is no such evidence of trademark/service by Marcel ever.

[7] Intangible assets are to be included. Md. Code Ann., Est. & Trusts § 7-201(b)(7).("The inventory ***shall*** include...[a]ny other interest in tangible or ***intangible property*** owned by the decedent which passes by testate or intestate succession.")(emphasis added)

[8] Accordingly, in contravention to Rule 11, it appears that Plaintiff and her then counsel filed this suit with the knowledge that she had no rights which has now proceeded for over two years. Notably, after filing, Plaintiff has not supplemented her statements before the Orphan's Court to include the trademarks (*i.e.*, intangible property). SOF¶¶ 89-91, 93,94, Ex. 14.

Exs. 14-002,007-008, 012, 030-034, 040-046. (Schedule G "all other interest") (*i.e.,* intangible personal property have been valued at "$0."); *see also*, Sch. 7 (Assets Retained for Future Accounting).

Accordingly, this is a judicial admission against interest of no such ownership. Plaintiff should be estopped from now arguing the contrary - Plaintiff's alleged ownership analysis should end here.

But, on the merits, Plaintiff's arguments still fail, because there are no facts to support ownership by Plaintiff. She alleges first use (*i.e.,* priority) because Marcel used the "stage name" and otherwise performed under the name "Biz Markie." CSDF ¶¶89-96. She further alleges that Marcel "released his first album under the name "Biz Markie." Opp. Mtn. at 19, CSDF¶¶79, 89-96. The above line of cases, make clear mere stage name use fails to evince a bona fide trademark or service mark use. Plaintiff attempts to rely on specimens submitted with its trademark application to support use,[9] but Plaintiff conveniently neglected to inform this Court, on March 8, 2023, the U.S. Patent and Trademark Office ("USPTO") refused the Estate's application (for downloadable music files; Pre-recorded CDs featuring music; Downloadable video recordings featuring music"),

> because the applied-for mark, as used on the specimen of record, ***merely identifies the name of a featured performer(s) on a sound recording; it does not function as a trademark*** to indicate the source of applicant's goods and to identify and distinguish them from others"

Ex. 15, (Mar. 8, 2023 USPTO refusal)(emphasis added).[10]

---

[9] Ex. A, Ex. 3.

[10] Notably, the Estate's continued argument after such refusal is made in bad faith.

With respect to the other goods in the application (classes 16, 25, and 28), Plaintiff relies on BMI's use (not Marcel's use).[11] Specifically, Ms. Hall uses the BMI website to support the alleged intent/use for the other goods. Notably, for class 16, she admits that there was no such use prior to the inception of BMI as she provided a first use date of February 20, 2015 - after the formation of BMI. Ex. A, Ex. 3. Accordingly, this does not support use or ownership by Marcel. For class 25, while she provides use dates back to 1988,[12] she has failed to produce a single piece of evidence of Marcel's use of the Biz Markie trademark for shirts, ever (trademark application or this case). *Id*. The shirt she produced is unauthorized merchandise produced for or in support of Plaintiff's foundation, not use by Marcel. *Id.*, Moreover, the foundation was not established until July 19, 2021, ***after*** Marcel's death. SOF, Ex. 17. Accordingly, Plaintiff cannot rely on this single shirt created approximately 6 years ***after*** BMI's use to support Marcel's priority. § 17:3. Resumption of use after abandonment, 2 McCarthy on Trademarks and Unfair Competition § 17:3 (5th ed.)(citing *Specht v. Google Inc.,* 747 F.3d 929, 935–936 (7th Cir. 2014)). With respect to the doll, the use of the "Biz Markie" name in the specimen only identifies the person depicted not trademark use and description of the product. And, notably the alleged use is foreign use, it is being sold in foreign currency (AUD) and further states "[s]hipping ***only*** to Australian customers." (emphasis added). Ex. A, Ex. 3 The concept of international territoriality is basic to trademark law. *Ingenohl v. Walter E. Olsen & Co*., 273 U.S. 541, 544 (1927)("A trade-mark started elsewhere would depend for its protection in Hongkong upon the law prevailing in Hongkong and would confer no rights except by the consent of ***that law***.")(emphasis added); *see also*, *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.,* 2015 WL 13680818, at *2 (D.D.C.

---

[11] Plaintiff has already admitted in this proceeding that BMI owns and controls the website and licenses the goods. SAC ¶ 5.
[12] Ex. A, Ex. 3.

June 12, 2015) ("foreign use of a mark creates **no cognizable right to use** that mark **within the United States**")(emphasis added); *see, also, Person's Co., Ltd. v. Christman*, 900 F.2d 1565, 1568–1569 (Fed. Cir. 1990) ("Person's Co. relies on its use of the mark in Japan … **Such foreign use has no effect on U.S. commerce** and cannot form the basis for a holding that [Person's Co.] has priority here…trademark rights exist in each country solely according to that country's statutory scheme."). Further, Plaintiff has offered no evidence to support who licensed or controlled the quality of the doll or when it was offered. *In re Polar Music Int'l AB*, 714 F.2d 1567 (Fed. Cir. 1983)("the owner of the mark controls the quality of the goods"). If offered more than three years **prior** to BMI's use, assuming *arguendo*, Hall in his individual capacity was the licensor (of any trademark rights, not merely image or likeness)[13], those rights would have been abandoned after three years of non-use. 15 USC § 1127. Notably, the Estate's application, cites a March 10, 2006 date of first use, but has failed to provide any evidence of any use in 2006 or thereafter. Accordingly, assuming any rights Plaintiff claims (without any evidence) of trademark rights in this doll, the rights have long been abandoned. 15 USC § 1127.

In addition, the various albums that Plaintiff alleges were "released" by Marcel, were not indeed released by Marcel but other third-parties. CDSF ¶79, Ex. E, Ex. 6; Ex. #16 Marcel was only the performer. *Id.* The various owners/copyright holders and publishers controlled the quality and release of those works and accordingly were the "source" of the works, *Id. In Re Arnold*, 105 U.S.P.Q.2d 1953 (TTAB 2013)("the author of a book may assign the entirety of his copyright to a publisher; thereafter the publisher, not the author, will be the source of authorized copies of the book." "Courts and the Board have applied essentially the same standard of analysis to the names of authors and the names of performing artists in determining trademark function."); *see also*, *In*

---

[13] Notably, there are no "Biz Markie" markings on the doll.

*re Polar Music Int'l AB*, 714 F.2d 1567 (Fed. Cir. 1983)("the owner of the mark controls the quality of the goods").

Accordingly, since Plaintiff has failed to provide a single piece of evidence showing a proprietary right in the "Biz Markie" mark there can be no liability to her and BMI is entitled to summary judgment on the IP-related claims (Counts 1-VI). *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.,* 188 F. Supp. 3d 22, 99 (D.D.C. 2016)("To establish priority, the petitioner must show proprietary rights in the mark [which] may arise from a ***prior registration, prior trademark or service mark use, prior use as a trade name***, prior use analogous to trademark or service mark use, or any other use sufficient to establish proprietary rights.")(emphasis added). This Court has granted summary judgment in similar cases where there has been more evidence than what has been presented in this case. *Globalaw Ltd. v. Carmon & Carmon L. Off.,* 452 F. Supp. 2d 1, 22–23 (D.D.C. 2006)(Kollar-Kotelly, J.)(citing *Davis v. Walt Disney Co.,* 75 U.S.P.Q.2d 1044, 1048–50 (D.Minn.2005) (granting summary judgment on the bases that the "minimal, sporadic evidence of Plaintiffs' use ..., as a matter of law, is not sufficient to establish that the mark 'conjures up a particular service or product in the minds of customers'). Here, Plaintiff has not presented "minimal sporadic use", she has presented ***no*** trademark or service mark use by Marcel in his individual capacity, ever. Having no such evidence Defendants are entitled as to summary judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 325. (moving party burden discharged by showing absence of evidence to support the nonmoving party)

### F. Estate Has Failed to Rebut Defendants' Prima Facie Case of Abandonment

Non-use of a mark for three consecutive years "constitutes prima facie evidence of abandonment" and "creates a presumption – a mandatory not to resume use." *Emergency One, Inc. v. Am. Fire Eagle, Ltd*., 228 F.3d 531, 536 (4th Cir. 2000) (citing 15 U.S.C. § 1127). To overcome

this presumption, Plaintiff must provide evidence of use or an intent to resume use. Plaintiff's bare say-so will not suffice. *Rivard v. Linville*, 133 F.3d 1446, 1449, 45 U.S.P.Q.2d 1374 (Fed. Cir. 1998) ("A registrant's proclamations of his intent to resume or commence use . . . are awarded little, if any, weight."). Here, Plaintiff has provided no evidence of Hall's use of the "Biz Markie" mark prior to the formation of BMI. Without such evidence, the presumption of abandonment stands unrebutted. The Estate's reliance on bare assertions or self-serving statements does not satisfy the evidentiary burden required to overcome this presumption. Accordingly, Defendants are entitled to summary judgment on that issue alone. *General Healthcare Ltd. v. Qashat,* 364 F.3d 332, 336 (1st Cir. 2004) (Affirming summary judgment of abandonment of common law rights by using the three-year presumption.).

### G.  Estate Has No Evidence of Misappropriation

Defendants do not dispute that trademark/service mark rights are separate and apart from the misappropriation claims. However, here, the trademarks/service marks owned and used by BMI relate to the alleged misappropriation because they incorporate the "name" (*i.e.,* nickname) "image" and "likeness" of the deceased. "Biz Markie" is the name of the company and the trademark/service mark used in connection with the provision of the services and goods. *Paleteria,* 188 F. Supp. 3d at 99. It is indisputable that, since at least as early as 2015, Marcel was fully aware that his images were used as a trademarks for the company on its merchandise Ex. A, Ex. 3 (merchandise with deceased's image and likeness). Accordingly, as stated in its motion, BMI (49% owned by Marcel) clearly had "permission to use" (right of publicity not trademark rights) Marcel's name, image, and likeness for commercial purposes.[14] To suggest otherwise is simply nonsensical. BMI is a DC corporation with a perpetual existence. D.C. Code Ann. § 29-303.02.

---

[14] Plaintiff concedes BMI's permission, at least, during Marcel's lifetime. Opp. Mtn. at 23 n.10.

Accordingly, there simply is no evidence to support that BMI was to stop conducting business for which is was formed, "business of licensing," website "operat[ion]," and "to receiv[ing] income from Marcel's entertainment *goods* and *services*." SAC ¶¶ 5, 22, SOF ¶75 (admissions by Plaintiff of the permitted business activities). To the contrary, Ms. Hall's admissions and third-party testimony substantiate the continued business of BMI. Ex. 7, Shaw Dep., 16:3–11, 19-25, 17:1-3, Ex. 8 Horton Dep. 9:4-25, 10:1-11.

### V.    PLAINTIFF HAS PROVIDED NO EVIDENCE TO SUPPORT INJUNCTION

"A preliminary injunction is an extraordinary remedy, which should be granted only in limited circumstances and where the merits of the case *clearly* favor one party over the other." *Stark v. Diageo Chateau & Est. Wines Co.,* 907 F. Supp. 2d 1042, 1049 (N.D. Cal. 2012) (citing *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008)). Plaintiffs must satisfy a four-part test to secure a preliminary injunction: (1) demonstrate a substantial likelihood of success on the merits; (2) immediate and irreparable injury absent relief; (3) that the threatened harm to them substantially outweighs any harm that an injunction might pose to defendant and third parties; and (4) that the injunction they seek will serve the public interest. *Krause Int'l, Inc. v. Reed Elsevier, Inc.,* 866 F. Supp. 585, 586 (D.D.C. 1994). With respect to the trademark claims, Plaintiff has not provided sufficient evidence to justify entitlement to injunctive relief – (1) She has failed to present evidence establishing any proprietary rights,[15] and thus has not demonstrated a substantial likelihood of success on the merits; (2) there is no immediate or irreparable injury to her rights. Even assuming, *arguendo*, that she were to prevail, she would be entitled to a judgment for the amounts owed. Therefore, no irreparable injury exists; (3) the harm to the Defendants outweighs any harm to Plaintiff, as granting the injunction would prevent them from continuing their business

---

[15] To the contrary, Plaintiff swore under penalty of perjury that there were none.

activities, many of which were initiated before the deceased's passing; and (4) halting Defendants' operations does not serve the public interest. Plaintiff acknowledges that BMI was established to engage in the complained-of, which BMI (through Jennifer) has successfully conducted for nearly a decade. The public interest is better served by allowing BMI to continue its operations, as it has been providing consistent services to the public since its inception. Permitting a third party with no connection to the business to disrupt or start anew does not align with the public interest.

Accordingly, by its own admissions, and having no evidence to the contrary, BMI should not be enjoined from continuing its business. *Krause Int'l,* 866 F. Supp. at 586 (finding "plaintiffs are not likely to establish that they are the senior trademark owner here." Acknowledging, "[d]efendant also raises the significant point that granting injunctive relief for plaintiffs would alter rather than maintain the status quo. This is contrary to the ordinary function of preliminary injunctive relief. Preliminary injunctive relief ordinarily preserves "the last uncontested status which preceded the pending controversy." "plaintiffs' motion for a preliminary injunction should be, and is hereby, DENIED")(emphasis in original).

## VI.   DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Supreme Court in  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) …held that an exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."

The evidence of record establishes BMI's priority and ownership of the trademark through its use as a trade name. *Paleteria,* 188 F. Supp. 3d at 99. These proprietary rights may arise from

a *… **prior trademark or service mark use, prior use as a trade name***”). Plaintiff has admitted the valid formation of BMI and its use of the trade name. SAC ¶5. With respect to trademark/service mark use, Plaintiff corroborates that BMI, not Marcel, engaged in licensing activities. SAC ¶5; *see also*, Ex. A, Ex. 3 (admissions to goods used for the first time after Feb. 2015), Since, there is no evidence of trademark or service mark use prior to the formation of BMI,[16] Marcel had no rights to license. And thus, since Marcel was only minority owner and accordingly, his position as employee or shareholder does not inure rights to his benefit him. *Daytona Auto. Fiberglass v. Fiberfab, Inc.,* 475 F. Supp. 33, 36 (W.D. Pa. 1979); *Intermed Commc'n, Inc. v. Chaney*, 197 U.S.P.Q. 501, 1977 WL 22648 (TTAB 1977); *El Sombrero Corp. v. Bolivar*, 218 U.S.P.Q. 668 (4th Dist. 1982); *Crafa v. Fernandez*, 2003 WL 1228019, at *4 (Conn. Super. Ct. Mar. 6, 2003). Further, and notably, Plaintiff admits that Marcel did not "pay close attention to specific language of contracts or other business and personal documents," which is wholly inconsistent with the control over the quality of goods required for trademark ownership. *See*, Ex. A, Hall Decl. ¶6.

Plaintiff's claims are objectively baseless, as they lack any evidentiary support as demonstrated by her own admissions and the evidence of record (or lack thereof). Even if the Court does not find the claims frivolous, the absence of evidence renders them meritless under the *OctaneFitness* standard.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment on Plaintiff's claims and award Defendants their attorneys' fees pursuant to 15 U.S.C. § 1117(a).

---

[16] Includes any alleged use by Marcel or Bizmont ("BME"). Plaintiff has not shown that Marcel acquired proprietary rights to license to BME or BMI. Thus, discussion of services under BME or its alleged abandonment are immaterial. Further, argument about BME's hypothetical rights are irrelevant, as BME is not a party.

Dated: December 23, 2024                    Respectfully submitted,

                                            /s/ *Dayna Cooper*

                                            Dayna C. Cooper (D.C. Bar. No. 1033851)
                                            Cooper Legal, LLC
                                            1 Olympic Pl, Suite 900
                                            Towson, MD 21204
                                            (202) 642.5470
                                            Dayna@CooperLegalSolutions.com