IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TARA HALL AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARCEL THEO HALL,<br><br>Plaintiff,<br><br>v.<br><br>BIZ MARKIE, INC., *et al.*,<br><br>Defendants. | Case No.: 1:22-cv-00806 (CKK) |

### **DECLARATION OF JENNIFER IZUMI.**

I, Jennifer Izumi, declare as follows:

1. I am an adult and competent to testify. If called to testify, I would testify consistently with this declaration.

2. I have personal knowledge of the matters set forth in this declaration.

3. Marcel Theo Hall and I worked together for over 20 years. Over this time, Marcel trusted me deeply with his life, personal property, business operations, and legacy.

4. When we formed Biz Markie, Inc. ("BMI") in February 2015, it was with the mutual understanding that the company would ensure the continued growth and protection of Marcel's legacy. Initially, Marcel envisioned BMI following the structure of Bizmont Entertainment ("BME"), with me as 100% owner. However, I wanted Marcel to maintain full access to our business operations and finances and encouraged him to become more educated about and involved in the management of his business affairs.

5. Marcel had a small, trusted circle of people in his life, and some of those he relied

upon previously did not prioritize his best interests or make sound business decisions on his behalf. After the passing of his former manager, Lamont Wanzer, from cancer in November 2014, Marcel chose me to partner with him to continue building his legacy.

6. Despite his 30 years in the music industry and relationships with more experienced professionals, Marcel trusted me above all to manage his personal and business affairs. This trust culminated in the creation of BMI, with our agreed structure giving me 51% majority ownership of the company.

7. Although BMI was a small company with limited resources, Marcel and I focused on establishing a solid foundation for his legacy.

8. Marcel entrusted me with key responsibilities, including assigning me as his Medical Advance Directive and Power of Attorney. His confidence in my ability to manage his affairs, both personal and professional, is further supported by statements from business associates and close friends who consistently acknowledged his trust in me.

9. It was always understood between Marcel and me that I, having decades of historical knowledge would continue to manage and own BMI and its associated assets in the event of his passing. This understanding was based on our long-standing partnership, mutual trust, and shared vision for his legacy.

10. Plaintiff is correct that I did not discuss "this" exact/particular written agreement with Marcel because he was incapacitated at the time, but we had several conversations regarding the terms prior to his incapacitation.

11. Contrary to Plaintiffs' claims, a shareholders' agreement existed between Marcel and I prior to 2020, an oral agreement. However, we had not had an opportunity to have an attorney reduce it to writing. But, as our CPA, Nick Cusato testified, we'd had prior conversations about me becoming 100% owner if something were to happen to Marcel, so that I

could maintain his legacy.

12. The Estate's assertion that I wrongfully pilfered funds from Biz Markie, Inc. (BMI) is blatantly false.

13. Marcel and I had explicit conversations about the use of BMI's account for personal expenses. Both of us mutually agreed and understood that, on occasion, personal expenses would be charged to BMI's account.

14. Exhibit 18 evidences Marcel's personal expenses charged against BMI's account, totaling $156,839.51 from March 2015 through September 2021. This includes numerous transactions that were clearly personal in nature and demonstrates that such charges were a mutually acknowledged and accepted practice between Marcel and me.

15. These facts refute the Estate's narrative and establish that the use of BMI funds for personal expenses was not an act of wrongful or unilateral misconduct.

16. On December 2, 2020, the Plaintiff filed a Petition for the Appointment of a Guardian of the Person for Marcel Theo Hall in the Circuit Court for Prince George's County, Maryland (Case No. CAE20-19243). However, I was not served notice of this petition until May 2021.

17. Since mid-June 2021, the Plaintiff has consistently shown an unwillingness to correspond with me or anyone representing me. My then-attorney, now Magistrate of the Circuit Court for Calvert County, Justin Sasser, reached out multiple times to Plaintiff's attorney and brother-in-law, Garland Hall, via USPS mail and email to communicate and find a way forward to work together in Marcel's best interest.

18. Mr. Sasser requested a meeting with the Plaintiff, information about Marcel's funeral arrangements so that I could attend, and a copy of Marcel's death certificate. Despite these efforts, Garland Hall stopped responding to our inquiries. As a result, Mr. Sasser was

compelled to file a Line to Withdraw Opposition and a Motion to Dismiss the Petition for Guardianship of the Person on August 4, 2021, as we had received no further communication.

19. The Plaintiff even directed Rose's Funeral Home to email me, requesting that I pay for Marcel's funeral services using proceeds from Northwestern Mutual Life Insurance Policies A and B, as referenced in a separate legal matter (U.S. District Court for the District of Columbia, Case No. 1:22-cv-02588-CKK).

20. During Marcel's 13-month hospitalization prior to his passing, my attorneys and I repeatedly sought opportunities to visit him. However, the Plaintiff did not allow visitors until just a few weeks before Marcel's death.

21. On July 12, 2021, Marcantonio Barnes, formerly of Barnes & Thornburg LLP, located at 1717 Pennsylvania Avenue N.W., Suite 500, Washington, DC 20006, emailed the Plaintiff with the substance of a letter and a draft Shareholder Agreement for Biz Markie, Inc. (BMI). A paper copy of the draft was also mailed.

22. Although the draft Shareholder Agreement outlined the terms under which the shares of a stockholder who dies or becomes permanently disabled could be purchased, I chose to share it with the Plaintiff in the interest of full transparency. While I had the authority to execute the agreement on Marcel's behalf, I ensured the Plaintiff had the opportunity to review it and retain counsel to respond. Proof of her receipt of this draft exists, as her attorney later provided it in discovery (Bates Nos) in Case No. 1:22-cv-02588-CKK

23. Marcel passed away on Friday, July 17, 2021. The Plaintiff did not inform me of his passing. Instead, I was notified by a media outlet, Marcel's sister, Yvonne Hall, and Marcel's friend, Jeffery Spencer and more media outlet inquiries followed.

24. Upon learning of Marcel's passing on July 17, 2021, I reached out to the Plaintiff in an attempt to offer my condolences, unite during this difficult time and to collaborate on a

media statement announcing Marcel's passing.

25. After speaking with the Plaintiff, I contacted Mr. Barnes, to share with him that Marcel had passed away. He later updated and emailed me the Shareholder Agreement and the necessary accompanying documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 23, 2024              */s/ Jennifer Izumi*
                                            Jennifer Izumi