**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TARA HALL AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARCEL THEO HALL, <br><br> Plaintiff, <br><br> v. <br><br> BIZ MARKIE, INC., *et al.*, <br><br> Defendants. | Case No.: 1:22-cv-00806 (CKK) |

**PLAINTIFF, TARA HALL'S,**
**AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARCEL THEO HALL,**
**SUR-REPLY IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 7 and the Court's grant of leave to file a Sur-Reply, Plaintiff, Tara Hall, As Personal Representative of The Estate of Marcel Theo Hall, and derivatively on behalf of Biz Markie, Inc. (the "Estate"), hereby submits this Sur-Reply in further opposition to Defendants Biz Markie, Inc.'s ("BMI") and Jennifer Izumi's ("Izumi") (collectively "Defendants") Motion for Partial Summary Judgment, and state as follows:

**I.      INTRODUCTION**

Defendants are correct that this matter presents a "sad cliché of a story."  That cliché story, however, is not what Defendants argue.  Rather, it is the latest entry in a long line of stories of musicians being taken advantage of and scammed by their managers.  In Defendants' Reply, they have argued that Marcel Hall's ("Hall") use, since 1988 of his stage name "Biz Markie" in all of his music recordings, all of his DJ appearances, all of his film and television appearances, and by which he was known throughout the world until his death, does not

1

constitute use of the "Biz Markie" trademark.  Simply put, Defendants' argument is inconsistent

with trademark law, and should be rejected outright.  Defendants have also argued that the Estate

should be estopped from arguing its ownership of the "Biz Markie" mark because it failed to

include the mark in a list of "all other assets" filed with the Prince George's County Orphan's

Court.  This failure was a mere inadvertent mistake of omission, which cannot be the basis to

apply judicial estoppel; in fact, Hall is in the process of determining how to amend the inventory

of assets to correct this omission.  Defendants' argument, again, should be rejected outright.

## II.    ARGUMENT

### A.  Hall's Use of "Biz Markie" as a Stage Name Encompassed All the Necessary Elements to Establish Trademark Usage

No rule exists in trademark law that a pseudonym or *nom de plume* of an author is *per se*

incapable of functioning as a trademark.  *In re First Draft, Inc.* 76 U.S.P.Q.2D (BNA) 1183,

1186 (T.T.A.B. 2005).  Defendants' argument that such a rule does exist is not accurate and is a

blatant misstatement of the law.  *See* ECF No. 82 at 20-22.  Rather, as explained in *In re Arnold*

– a case cited by Defendants:

> just showing the name of the recording group on a record will not ***by itself*** enable
> that name to be registered as a trademark.  Where, however, the owner of the
> mark controls the quality of the goods, and ***where the name of that recording***
> ***group has been used numerous times on different records and has therefore***
> ***come to represent an assurance of quality to the public***, the name may be
> registered as a trademark since it functions as one.

*In re Arnold*, 105 U.S.P.Q.2D (BNA) 1953, 1957 (T.T.A.B. 2013) (quoting *In re Polar Music*

*International AB*, 714 F.2d 1567, 221 USPQ 315, 318 (Fed. Cir. 1983)).  The rule, as stated in *In*

*re Arnold,* is that:

> the name of the author or performer may be registered if:

>> (1) It is used on a series of written or recorded works; and

> (2) The application contains sufficient evidence that the name identifies the source of the series and not merely the writer of the written work or the name of the performing artist.
>
> A showing that the name functions as a source identifier may be made by submitting evidence of either: (1) promotion and recognition of the name as a source indicator for the series...; or (2) the author's or performer's control over the name and quality of his or her works in the series...

*Id.* at 1958 (quoting the examination policy of the U.S. Patent and Trademark Office at TMEP §§ 1202.09(a), 1202.09(a)(ii) (Oct. 2012)) (internal citations omitted).[1]

This rule is restated in Defendants' own exhibit, of which they have cited only a portion, thereby creating a misleading construction of the information in that exhibit. *See* ECF No. 82 at 22. Defendants have argued that Exhibit 15 to their Reply Brief demonstrates that the United States Patent and Trademark Office ("USPTO") denied Ms. Hall's trademark registration application for the "Biz Markie" mark because "Biz Markie" was merely a stage name. *See id.* In the very next paragraphs of Exhibit 15, after that quoted by Defendants, the USPTO explained the ***whole*** rule: If "the name is used on a **series** of sound recordings," and either (a) "the performer **controls the quality** of the recordings and **controls the use** of the name, such that the name has come to represent an assurance of quality to the public," or (b) "the name is **promoted and recognized by others** as the source of the series of sound recordings" then the stage name of the performer is sufficient use of a mark to function as a trademark. ECF No. 82-3 at 5-6 (citing *Polar Music*, 714 F.2d at 1572; *Arnold*, 105 U.S.P.Q.2D (BNA) at 1958; TMEP §§ 1202.09(a)-(a)(ii), (a)(ii)(B), (a)(ii)(B)) (emphasis in original). Contrary to what Defendants would have this Court believe, Ms. Hall's trademark registration application was not initially

---

[1] *See also In re Mancino,* 219 U.S.P.Q. (BNA) 1047, 1048 (T.T.A.B. 1983) ("This Board has held on more than one occasion that an individual's name may function to identify both the individual and the goods sold or services rendered by that individual.")

refused because "Biz Markie" is a stage name; it was initially refused because the application specimens included less than a handful of songs attributed, but not entirely clearly, to "Biz Markie."  ECF No. 76-2 at 85-86;[2] ECF No. 82-3 at 5 (explaining that "Applicant may respond to this refusal by satisfying one of the following…").  In other words, Ms. Hall had failed to include evidence of a "series" of recordings, of which there are many.  *See* Exhibit 6 to Exhibit E to the Estate's Opposition (ECF No. 77-3 at 3-8); *see also* ECF No. 82-4.

The most relevant application of this rule is demonstrated in *Kingsmen v. K-Tel Int'l, Ltd.*, 557 F. Supp. 178 (S.D.N.Y. 1983).  In that matter, the plaintiffs were "a group of musicians who claim ownership of the name 'The Kingsmen,' a popular band of the 1960's," who sought "to restrain the defendants, several music production and record companies, from selling or distributing a [compilation album] which contains a selection that purports to be a 're-recording' by the original Kingsmen of probably their most popular hit, 'Louie, Louie'" recorded by the original lead vocalist, "Mr. Ely," but none of the other members, who had left the band shortly after recording the original song.  *Kingsmen*, 557 F. Supp. at 179-80.  The United States District Court for the Southern District of New York recited the facts that led it to conclude that the plaintiffs owned the common law trademark "The Kingsmen" as follows:

> Throughout the entire period from 1964 through 1967, when The Kingsmen were at the height of their popularity, ***these five plaintiffs toured and recorded as The Kingsmen and were known to the public as The Kingsmen***.  Plaintiffs have submitted numerous newspaper clippings from this period that identify these plaintiffs both pictorially and by caption with the group The Kingsmen.  None of these pictures shows or refers to Mr. Ely as a member of the group.  More importantly, it is these five plaintiffs that contracted with Jerden Music, Inc. and Scepter Records, Inc. under the name The Kingsmen for royalties from the sale of original recordings of The Kingsmen, including royalties from the sale of the original recording of Louie, Louie.

---

[2] The Estate has cited to the file-stamped page numbers of all previously filed material in this matter.

\*      \*      \*

> Moreover, having listened to the recordings by The Kingsmen submitted as exhibits to the Court, including the original recording of Louie, Louie, we stress the ensemble nature of The Kingsmen's music. Although the listener can discern the lead singer from the background vocals and music on a number of Kingsmen songs, the group's "sound" is clearly a collective one. No one member of the group can be singled out as representing the essence of The Kingsmen's performing style.

*Id.* at 182 (emphasis added). In response to an argument from the defendants in that action that

the plaintiffs had abandoned "The Kingsmen" mark, the court stated:

> We find that defendants have failed to show either non-use or intent to abandon. Even though plaintiffs disbanded their group in 1967 and ceased recording new material, ***there is no evidence suggesting that they failed to use the name Kingsmen during the period from 1967 to the present to promote their previously recorded albums***. Moreover, the fact that these individuals continue to receive royalties for Kingsmen recordings flies in the face of any suggestion of intent to abandon use of the name Kingsmen. These plaintiffs have no more abandoned their right to protect the name of Kingsmen than have The Beatles, The Supremes or any other group that has disbanded and ceased performing and recording, but continues to collect royalties from the sale of previously recorded material. We must reject defendants' contentions that the name Kingsmen has been abandoned to the public domain.

*Id.* (emphasis added).

Here, the parallels to *The Kingsmen* case are evident. Throughout his decades-spanning

career, Hall, like The Kingsmen, "toured and recorded as 'Biz Markie' and [was] known to the

public as 'Biz Markie'" in music, television, and film. *See* ECF No. 76-1 ("CSDF") at ¶¶ 89-96;

ECF No. 76-2 at 6-73; Amended Counter-Statement of Disputed Facts to Which There is a

Genuine Issue ("ACSDF") at ¶¶ 89, 96 (citing Declaration of Peter Nanov attached hereto as

Exhibit M at Exhibits 1-15[3]); ECF No. 82-4 at 2, 6, 8, 9, 12, 14, 16, 18, 20, 23, 26, and 37

---

[3] Exhibit 1 is a promotional article from SiriusXM from February 2020 featuring multiple pictures of Hall and identifying him as "Biz Markie" and advertising a radio show hosted by Hall.

(featuring Hall's photograph or personal likeness on the cover of the various "Biz Markie"

albums); *see also Kingsmen*, 557 F. Supp. at 182.  Unlike the Kingsmen, but strengthening his

claim to the "Biz Markie" mark, Biz Markie was not an ensemble group; Hall ***can*** be singled out

as representing the essence of Biz Markie's performing style.  *See id.*  Hall ***is*** Biz Markie.  *See*

Exhibit M at Exhibits 1-15; *see, e.g.,* ECF No. 72-3 at 17, 65, 34 (Defendant Izumi voluntarily

referring to Hall as the shortened "Biz"); ECF No. 72-4 at 11, 13-16, 19-22 (same); ECF No. 72-

---

Exhibit 2 is an article from the New York Times from 1988 describing the "arrival of the rapper
Biz Markie" and describing Hall as "a big, goofy, anarchic performer" and "an outrageous comic
performer."
Exhibit 3 is an article from the Los Angeles Times from 1992 describing a lawsuit between
"Rapper Biz Markie" and a songwriter over a sampling dispute.
Exhibit 4 is a picture of Hall performing as "Biz Markie" during the 2008 VH1 Hip Hop Honors
show in New York.
Exhibit 5 is a collection of pictures of Hall performing as "Rap singer Biz Markie" during the
halftime of an NBA game.
Exhibit 6 is an article from Penn Live / Patriot News from 2011 featuring a picture of Hall
captioned "Markie performs in Yo Gabba Gabba! Live!" and referring to Hall as "Biz Markie."
Exhibit 7 is a promotional poster of a Biz Markie performance, featuring Hall's picture, at a
nightclub in Nashville in November 2011.
Exhibit 8 is a shortform article from Vulture featuring a picture of Hall from 2009 captioned
"Biz Markie during the White House Correspondents' dinner after party" in May 2009.
Exhibit 9 is an article from RealClearPolitics from 2009 discussing Hall's performance as Biz
Markie at a campaign event for then Virginia gubernatorial candidate Terry McAuliffe.
Exhibit 10 is an article from Entertainment Weekly referring to Hall as "Biz Markie" and
providing a picture of him, and describing his guest appearance on Jimmy Kimmel Live! In
2011.
Exhibit 11 is an article from the Huffington Post from 2013 referring to Hall as "Biz Markie" a
"Rapper" and describing a cooking class and DJing class that he was offering through
LivingSocial.
Exhibit 12 is an article from the West Side Gazette from 2012 containing a picture of Hall,
referred to as "Biz Markie" and describing and promoting the halftime show for the Floria A&M
University halftime show featuring a performance by Biz Markie.
Exhibit 13 is an article from NPR from 2013 featuring a picture of Hall dressed as a judge
captioned "Biz Markie in costume…" and providing a retrospective on the legal battle referenced
in Exhibit 3.
Exhibit 14 is a promotional poster from May 2011 for a live performance of Hall, as "Biz
Markie" and identified as such and featuring an image of Hall.
Exhibit 15 is a promotional poster from November 2014 for a live performance of "Biz Markie"
featuring a picture of Hall identified as "Biz Markie."

5 at 13, 15, 17 (same).  "Biz Markie," therefore, functioned to identify both Hall individually and the source of the goods and services, *i.e.* recordings and performances of Hall.  *See Mancino,* 219 U.S.P.Q. (BNA) at 1048; *Arnold*, 105 U.S.P.Q.2D (BNA) at 1958; *Polar Music*, 714 F.2d at 1572; TMEP § 1202.09(a)(ii).

The "Biz Markie" mark was used on a series of recordings and in a number of performances.  CSDF at ¶¶ 89-96; ECF No. 76-2 at 6-73; ECF No. 77-3 at 3-8; ECF No. 82-4. Hall was promoted as "Biz Markie" by others, including but not limited to VH1, the NBA, ABC, universities, venues, social media companies, and radio broadcast companies.  *See* Exhibit M at Exhibits 1, 4-7, 9-12, 14-15; *supra*, Note 3.  According to Defendants, Hall controlled the quality of his artistic production, Hall and Defendant Izumi discussed key "Biz Markie" business decisions, and acted after reaching consensus, and Hall and Defendant Izumi discussed and agreed to any licensing of the "Biz Markie" mark prior to any such licensing.[4]  *See* SOF at ¶¶ 4, 36, 86.

Hall, therefore, used the name/mark "Biz Markie" on a series of recordings and performances, was promoted and recognized by others as the source of that material, and exercised control over the "Biz Markie" name and the quality it reflected.  In doing so, Hall demonstrated all factors of use to constitute use and ownership of the "Biz Markie" mark.  *See Arnold*, 105 U.S.P.Q.2D (BNA) at 1958; *Polar Music*, 714 F.2d at 1572; *Mancino,* 219 U.S.P.Q. (BNA) at 1048; *Kingsmen*, 557 F. Supp. at 182; TMEP §§ 1202.09(a)-(a)(ii), (a)(ii)(B), (a)(ii)(B)).  Defendants' argument that Hall's use of the "Biz Markie" stage name and mark was

---

[4] Defendants cannot have it both ways; their arguments that Hall's use of the mark was limited to his stage name, and insufficient to constitute use of the mark for ownership purposes, despite their admissions that demonstrate Hall's use and control of the mark, is yet another example of Izumi's ever-changing self-serving arguments that shift to meet her need at any given moment.

insufficient to constitute trademark use is inconsistent with trademark law and should be rejected.

Further, Hall never abandoned the "Biz Markie" mark, as Defendants have baselessly argued. Hall never disbanded or ceased to function as "Biz Markie." Throughout his career he continued to use his stage name and mark to both promote himself and his current endeavors as well as his previous records. CSDF at ¶¶ 89-96; ECF No. 76-2 at 6-73; *see Kingsmen*, 557 F. Supp. at 182. He did so including during the three years preceding Defendant BMI's alleged use of the mark in 2015, during which time Defendants claim that Hall had abandoned the mark. *See* Exhibit M at Exhibits 11-15; *supra*, Note 3. That Hall eventually promoted himself, his current endeavors, and his past recordings, through his loan-out company does not change the public's knowledge of him, his reputation, and his brand, as "Biz Markie." To the contrary, his final loan-out company, Defendant Biz Markie, Inc., adopted his name with his permission **because of** that reputation and brand. ECF No. 72-5 at 15 (Defendant Izumi stating "I said for brand marketing purposes it should be Biz Markie, Incorporated"). Hall's brand as "Biz Markie," therefore, predated Defendant BMI's formation. Additionally, until Defendant Izumi wrongly redirected them, Hall collected royalties from his music recordings individually and through his loan-out companies. CSDF at ¶¶ 92, 117. Defendants have offered no evidence, and cannot offer any evidence, that Hall failed to use, or intended to abandon use of, the "Biz Markie" mark. *See Kingsmen*, 557 F. Supp. at 183 (citing 15 U.S.C. § 1127 and identifying "non-use" and "an intent not to resume use" as the two required elements to find abandonment of a mark). Defendants' abandonment argument, therefore, should be rejected.

### B. The Estate's Inadvertent Mistake of Omission Cannot be the Basis to Apply Judicial Estoppel

Judicial estoppel "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808 (2001). It is "an equitable doctrine invoked by a court at its discretion." *Id.* at 750. "[C]ourts must apply the doctrine with caution." *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28 (4th Cir. 1995).

> The 'determinative factor' in the application of judicial estoppel is whether the party who is alleged to be estopped intentionally misled the court to gain unfair advantage. The vice which judicial estoppel prevents is the cold manipulation of the courts to the detriment of the public interest. ***It is inappropriate, therefore, to apply the doctrine when a party's prior position was based on inadvertence or mistake***.

*Id.*, 65 F.3d at 29 (internal quotations and citations omitted) (emphasis added) (cited with approval in *New Hampshire*, 532 U.S. at 753, stating: "We do not question that it may be appropriate to resist application of judicial estoppel 'when a party's prior position was based on inadvertence or mistake.'").

Following the Supreme Court, this Circuit has applied this exception to judicial estoppel. *Marshall v. Honeywell Tech. Sys. Inc.*, 828 F.3d 923, 930, 424 U.S. App. D.C. 101 (D.C. Cir. 2016). In *Marshall*, however, the United States Court of Appeals for the District of Columbia Circuit ruled that a bankruptcy debtor, who had disclosed civil actions and administrative proceedings that increased the negative value to her bankruptcy estate but did not disclose administrative proceedings that would have added positive value to her bankruptcy estate, was estopped from pursuing claims contained within those administrative proceedings. *Marshall*, 828 F.3d at 930-31. Rightfully so; in a bankruptcy proceeding, the debtor is benefitted from

increasing the negative value of her estate while concealing value-adding assets, thereby gaining an unfair advantage. *See id.*; *Clark Co.*, 65 F.3d at 29.

Here, Defendants have argued that Ms. Hall, acting on behalf of the Estate, failed to include the trademark on an asset inventory filed with the Prince George's County Orphan's Court. ECF No. 82 at 21-22. Ms. Hall did not specifically deny or disclaim any trademark interest on behalf of the Estate. *See* ECF No. 82-2 at *passim*. Ms. Hall did not fail to include the trademark on a specific inventory of intellectual property assets. *See id.* Rather, Ms. Hall failed to include the trademark in a general catch-all "all other assets" category of assets. *See id.* Unlike the bankruptcy debtor in *Marshall*, Ms. Hall did not list any other assets in that catch-all category, much less any other intellectual property assets. *See id.*

Further, in preparing that asset inventory, Ms. Hall relied in part upon a list of assets prepared by Defendant Izumi and her attorney. ACSDF at ¶ 100 (citing Declaration of Tara Hall attached hereto as Exhibit L at ¶¶ 4-9, Exhibit 1). Defendant Izumi did not include the mark in the list of assets. *See id.* Defendant Izumi should not be allowed to benefit, now, from her own concealment.

Moreover, controllingly, and also unlike the bankruptcy debtor in *Marshall*, Ms. Hall gained no benefit or unfair advantage in the estate proceeding in the Orphan's Court by failing to include the trademark. *See Marshall*, 828 F.3d at 930-31; *Clark Co.*, 65 F.3d at 29. The inventory is simply an accounting of assets, which, because Hall died intestate and without children or surviving parents, Ms. Hall is the sole beneficiary. *See* SOF[5] at ¶ 63; ACSDF at ¶ 63; Md. Code Ann., Estates & Trusts § 3-102. Consequently, she had nothing to gain from

---

[5] The Estate has adopted Defendants' "SOF" abbreviation to refer to Defendants' Statement of Undisputed Facts (ECF No. 72-1).

concealing the trademark. Ms. Hall simply inadvertently and mistakenly omitted the trademark from this catch-all category. ACSDF at ¶ 100; Exhibit L at ¶¶ 4-9. In fact, Ms. Hall is now in the process of investigating amending that asset inventory. *See id*. As a result, it would be inappropriate to apply judicial estoppel against the Estate as Defendants have argued. *See New Hampshire*, 532 U.S. at 753; *Marshall*, 828 F.3d at 930-31; *Clark Co.*, 65 F.3d at 29. Defendants' argument, therefore, should be rejected.

### III.    CONCLUSION

For the reasons stated above, Plaintiff, Tara Hall, As Personal Representative of The Estate of Marcel Theo Hall, and derivatively on behalf of Biz Markie, Inc., respectfully requests that this Court deny Defendants Jennifer Izumi's and Biz Markie, Inc.'s Motion for Partial Summary Judgment.

Dated: January 14, 2025                    Respectfully submitted,

                                           */s/ Peter C. Nanov*
                                           Peter C. Nanov (D.C. Bar No. 230021)
                                           Vorys, Sater, Seymour and Pease LLP
                                           1909 K Street, NW, 9th Floor
                                           Washington, DC 20006
                                           (202) 467-8831
                                           (202) 533-9084 (Facsimile)
                                           pcnanov@vorys.com

                                           Michael J. Garvin, *pro hac vice*
                                           Marcel C. Duhamel, *pro hac vice*
                                           Aaron M. Williams, *pro hac vice*
                                           Vorys, Sater, Seymour & Pease LLP
                                           200 Public Square, Suite 1400
                                           Cleveland, OH 44114-2327
                                           (216) 479-6100
                                           mjgarvin@vorys.com
                                           mcduhamel@vorys.com
                                           amwilliams@vorys.com

                                           *Attorneys for Plaintiff*