UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TARA HALL AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARCEL THEO HALL, and derivatively on behalf of Biz Markie, Inc., <br> *Plaintiff*, <br><br> v. <br><br> BIZ MARKIE, INC., a Washington, D.C. corporation, and JENNIFER IZUMI, individually, <br> *Defendants*. | Civil Action No. 1:22-cv-00806-CKK |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO TAKE TRIAL DEPOSITIONS OF PLAINTIFF'S EXPERTS**

Biz Markie, Inc. and Jennifer Izumi (collectively, "Defendants"), by and through undersigned counsel, hereby submit this Opposition to Plaintiff's Motion for Leave to Take Trial Depositions of Plaintiff's Experts and respectfully request that the motion be denied.

**I.    INTRODUCTION**

Plaintiff seeks leave to take *de bene esse* depositions of her own retained experts without identifying a single piece of evidence that either witness is unavailable or likely to become unavailable for trial. Instead, Plaintiff relies solely on the absence of a trial date and the pendency of dispositive motions — circumstances that exist in countless cases and do not establish any risk of lost testimony. That posture defeats, rather than supports, Plaintiff's request for relief.

The moving party must demonstrate that a witness faces a concrete, individualized risk of being unavailable at trial. *U.S. v. Microsoft Corp.*, 165 F.3d 952, 959 (D.C. Cir. 1999) (deposition *de bene esse* is to preserve testimony of a witness expected to be unavailable due to age, infirmity, or being beyond subpoena power). Plaintiff makes no such showing. There is no

assertion that either Christopher Williams or Lita Rosario-Richardson is ill, plans to leave the country, resides beyond this Court's subpoena power, or is otherwise likely to be unable to testify live at trial. Plaintiff relies entirely on the abstract and speculative possibility that, because trial is not yet scheduled, the experts might someday become unavailable. Speculation is legally insufficient.

The procedural posture makes the motion even more untenable. Defendants' motion for partial summary judgment has been fully briefed since September 30, 2025, and remains pending before the court. Should the Court grant that motion, in whole or in part, the need for expert testimony may be eliminated or substantially narrowed. Compounding that concern, Defendants will file motions in limine targeting both experts under *Daubert*. Williams's damages calculation has no independent foundation; it rests entirely on Rosario-Richardson's opinion that entertainment industry norms govern compensation here. That premise is legally irrelevant where the parties had an actual compensation agreement evidenced by their notarized bank records and tax filings submitted under penalty of perjury. If either *Daubert* challenge succeeds, the other expert's testimony necessarily collapses with it.

Forcing Defendants to prepare for, attend, and examine experts in preservation depositions before the Court has resolved whether those experts' opinions are admissible, or whether the case survives summary judgment at all, imposes concrete, and avoidable prejudice. Plaintiff's motion should be denied, or at minimum deferred until the Court resolves the pending summary judgment motion and a trial date is set.

II.    **ARGUMENT**

   A. **P**LAINTIFF **F**AILS TO **M**AKE THE **R**EQUIRED **S**HOWING OF **W**ITNESS **U**NAVAILABILITY

The sole purpose of a *de bene esse* deposition is to preserve testimony genuinely at risk of being lost. *See, Murray v. Lilly*, No. 2:18-cv-00942, 2020 WL 625194, at *1 (S.D.W. Va. Feb. 10, 2020); *Johnson v. Wash. Metro. Area Transit Auth.*, Civ. A. No. 86-3110-LFO, 1993 WL 37445, at *1 (D.D.C. Feb. 3, 1993). Conclusory assertions of unavailability, unsupported by competent evidence, are insufficient to justify a *de bene esse* deposition. *Wye Oak Tech., Inc. v. Republic of Iraq*, No. 1:10-cv-01182-RCL, 2018 WL 4901075, at *2 (D.D.C. Oct. 9, 2018).

That requirement is grounded in Federal Rule of Evidence 804(a), which defines unavailability as requiring a showing that the proponent has been unable to procure the witness's attendance through reasonable means. Plaintiff makes no such showing whatsoever. Plaintiff only offers speculation rather than any concrete and witness-specific evidence the law requires. The motion does not assert that either Williams or Rosario-Richardson suffers from any health condition, plans to relocate, resides outside the Court's subpoena power, or is otherwise facing any concrete impediment to testifying at trial. *Microsoft Corp.*, 165 F.3d at 959 (noting that witnesses typically preserved by *de bene esse* deposition are those expected to be unavailable due to age, infirmity, or being abroad). Instead, Plaintiff's sole basis is general uncertainty as to when trial may occur. It is nothing more than a generic scheduling observation that applies to virtually every civil case without a trial date. Even where a movant offers some health-related proof, that does not by itself justify a *de bene esse* deposition. In *Weiss v. First Unum Life Ins.,* the court denied the request even though the plaintiff submitted a physician certification and counsel offered additional health-related assertions, because the doctor's statements were conclusory, lacked sufficient factual support, and did not establish enough evidence that the

3

testimony was in danger of being lost. 2010 WL 1027610, at *2-3 (D.N.J. Mar. 16, 2010). Plaintiff here offers nothing even approaching that threshold — no health assertion of any kind, no physician statement, no affidavit from either expert.

Even *Weist v. E.I. DuPont de Nemours & Co.*, does not support Plaintiff's motion. There, the court permitted a *de bene esse* deposition because there was a concrete case-specific reason to preserve the expert's testimony; the expert had been nominated to serve as Assistant Secretary of OSHA, creating a real question whether he later could testify as a paid expert. 2009 WL 10681127, at *2–3 (W.D.N.Y. Aug. 27, 2009). Plaintiff identifies no comparable, witness-specific basis here. Plaintiff's reading of *Weist* would permit *de bene esse* depositions in virtually every case lacking a trial date, untethered from any showing of actual risk of unavailability, an outcome the decision itself does not support. Plaintiff cannot justify *de bene esse* depositions based solely on the absence of a trial date and the speculative possibility of future availability. That is not and cannot be the rule. Speculation about what might occur at some undefined future point is not a substitute for the concrete and witness-specific showing the law requires. That is not unavailability — it is pure conjecture and nothing more.

### B. PLAINTIFF THE ABSENCE OF A TRIAL DATE CONFIRMS THE MOTION IS PREMATURE AND WARRANTS DEFERRAL

Plaintiff argues that the lack of a trial date is itself a sufficient reason to allow the depositions now. The argument turns the governing doctrine squarely on its head. *De bene esse* depositions exist to bridge the gap between a witness's present availability and a forthcoming trial. Where trial is not on the horizon, there is no gap to bridge. The absence of a trial date does not create urgency, it eliminates a legitimate basis for it.

Plaintiff's own cases confirm this point. In *Charles v. Wade*, 665 F.2d 661 (5th Cir. 1982), the preservation motion was filed six weeks before trial. In *Shannon v. Sasseville*, No. 08-343-P-H, 2009 WL 3711484 (D. Me. Nov. 3, 2009), depositions were sought "very shortly before trial." Those courts allowed preservation because trial was imminent and the depositions would not cause delay. This case presents the opposite posture. There is no trial date, the parties remain in a pretrial dispositive-motion phase, and granting the motion now would only multiply expense and burden without advancing readiness for a trial that has not been scheduled.

The appropriate disposition is to deny the motion outright, or at a minimum, without prejudice. If and when a trial date is set, and after the Court has ruled on the pending summary judgment motion, Plaintiff may renew the request only upon  a concrete and witness-specific showing of likely unavailability.

### C. PENDING DISPOSITIVE MOTIONS AND IMMINENT *DAUBERT* CHALLENGES RENDER THE REQUESTED DEPOSITIONS PREMATURE AND DISPROPORTIONATE

Defendants' motion for partial summary judgment has been fully briefed since September 2025 and remains pending before this Court. If granted in whole or in part, it will eliminate or substantially narrow the claims for which expert testimony is relevant. Plaintiff neither meaningfully addresses this reality nor offers any coherent explanation for why the Court should require Defendants to engage on expert issues that a forthcoming ruling is likely to render entirely moot.

The problem does not end at summary judgment. Defendants will file motions in limine challenging the admissibility of both experts under *Daubert*. Lita Rosario-Richardson's opinion is grounded in purported entertainment-industry norms for compensation. But industry norms are legally irrelevant where the parties have an actual, specific compensation agreement. *Needham v.*

*Innerpac, Inc.*, No. 1:04 CV 393, 2007 WL 1662681, at \*3–4 (N.D. Ind. June 7, 2007) (adopting principle that industry standards are irrelevant where the key question is whether the parties agreed in their particular contract to a different compensation scheme, and excluding industry custom evidence on that basis); *Hutton Contracting Co. v. City of Coffeyville*, 2004 WL 2203449, at \*12 (D. Kan. Sept. 24, 2004) (where parties have an agreement, evidence of industry custom is "simply irrelevant and properly excluded pursuant to Rule 702 and Daubert"). Rosario-Richardson's opinion is inadmissible on its face under Federal Rule of evidence 702 and *Daubert*.

Williams's opinion is not independent of Rosario-Richardson's and rises or falls with it. His damages calculation uses her 15% "industry norm" figure as its sole premise. Without that predicate, Williams has no independent foundation for any damages calculation whatsoever. If Rosario-Richardson's opinion is excluded under *Daubert*, Williams's opinion necessarily is excluded with it.

Requiring Defendants to prepare for and conduct preservation depositions of experts whose testimony may never be admissible, before the Court has ruled on whether the underlying case survives summary judgment, is neither proportionate nor efficient use of party resources. While styled as "preservation," Plaintiff's request would in practice require Defendants to engage in expert examination outside the normal discovery process and before the Court has determined whether such testimony will be admissible or necessary at all. That is not proper sequencing. It is premature and imposes discovery-like burdens without any showing of necessity. The prejudice to Defendants is concrete, immediate, and entirely avoidable. Defendants would be forced to incur the expense of expert-level preparation and examination, potentially twice (once in the *de bene esse deposition* and again at trial), on testimony that may

never reach a jury. That is precisely the kind of unnecessary, duplicative, and disproportionate burden that Federal Rule of Civil Procedure 1 and the proportionality principles of Rule 26(b)(1) are designed to prevent.

### D. PLAINTIFF'S AUTORITIES CONFIRM, RATHER THAN SUPPORT, THAT THE MOTION MUJST BE DENIED

A brief review of Plaintiff's cases confirms they do not carry the weight she places on them.

*Wye Oak* confirms what concrete unavailability actually looks like and how far Plaintiff falls short of it. The court applied the *Charles v. Wade* factors and treated the Baghdad witnesses as unavailable under Federal Rule of Civil Procedure 32(a)(4)(B) because they were outside the United States. That is documented, jurisdiction-based unavailability, not scheduling uncertainty. Plaintiff identifies nothing comparable. Plaintiff has not alleged Williams nor Rosario-Richardson resides abroad or faces any jurisdictional impediment to appearing at trial. The concrete, record-based showing that *Wye Oak* required is entirely absent here.

On the prejudice factor, in *Wye Oak* the court found no prejudice as to two witnesses where the opposing party could cross-examine them and participate in setting deposition dates, but found prejudice as to a third witness because the opposing party already incurred the expense of a prior deposition and the movants could have taken a *de bene esse* deposition then. Here, Defendants are prejudiced because they would be required to incur expert-preparation and examination costs now, before summary judgment and admissibility issues are resolved. That is avoidable expense for testimony that may never be presented at trial.

Plaintiff cites *Charles* only for the narrow proposition that allowing a trial deposition was not prejudicial because the motion was filed more than six weeks before trial and the parties had ample time to prepare. Charles does not support Plaintiff. *Charles* arose in a materially different posture. The witness was confined in a Florida maximum-security prison and was *more than 100 miles* from the place of trial, so the deposition was sought as the testimony of an unavailable witness, not as a matter of scheduling convenience. *See*, *Charles v. Wade*, 665 F.2d at 664–65 (5th Cir. 1982). Here, by contrast, there is no trial date and no concrete showing that either expert is unavailable or likely to become unavailable.

*Shannon* fares no better. In *Shannon*, the court permitted trial depositions in the context of an already scheduled trial and after finding the depositions did not delay that trial. The witnesses in *Shannon* were also offered only for impeachment, which the court treated as substantially reducing prejudice from the late request.  Here, by contrast, no trial date has been set, Plaintiff seeks to preserve affirmative expert testimony, and the request comes well outside the imminent-trial posture that was central in *Shannon* . 2009 WL 3711484, at *2–3.

*I*n *Weist*,  the court allowed preservation because there was a documented, specific reason to believe the expert would be precluded from testifying — his nomination to a federal government position that would prohibit him from serving as a paid expert witness. 2009 WL 10681127, at *2. Plaintiff identifies nothing remotely comparable here.

Plaintiff's reliance on *Murray v. Lilly*, is misplaced. In *Murray,* the court permitted a videotaped evidentiary deposition set one week before trial, finding no significant prejudice to the plaintiff and concluding that any prejudice could be cured by a continuance. 2020 WL 625194, *1 (S.D. W. Va. Feb. 10, 2020), Here, by contrast, no trial date has been set, and

dispositive and admissibility issues remain unresolved. Requiring *de bene esse* depositions at this stage would substantially prejudice Defendants by forcing them to incur expert-level preparation and examination costs now, potentially twice, on testimony that may ultimately be narrowed, excluded, or rendered moot altogether.

### E. PLAINTIFF CANNOT ESTABLISH GOOD CAUSE EVEN UNDER ANTICIPATED ARGUMENT

#### 1.    Appellate Reversal Does Not Create Present Unavailability

Plaintiff may argue that appellate reversal of a favorable summary judgment ruling could return this case for trial, at which point the experts might be unavailable. Every case with a pending dispositive motion is theoretically subject to appellate reversal. Accepting that rationale would permit *de bene esse* depositions as a matter of course in any case at any stage eliminating the limiting principle courts have consistently enforced. The doctrine requires a concrete, present, witness-specific risk of testimony being lost, not a speculative chain of future events. *Microsoft Corp.*, 165 F.3d at 959. Moreover, Federal Rule of Civil Procedure 32(a)(4) already provides a mechanism to use deposition testimony at trial if a witness is actually unavailable at that time. Any genuine unavailability concern arising after remand can be addressed then, with real facts rather than conjecture. There is no factual or legal basis to front-load that analysis now. *Weiss,* 2010 WL 1027610, at *2 (denying *de bene esse* deposition where physician certification and counsel's health assertions were insufficiently specific to show the testimony was in danger of being lost, and where allowing the deposition before essentially any fact discovery would be extremely prejudicial to defendants).

#### 2.    Motions in Limine Are Not Speculative and Further Underscore Prematurity

Plaintiff may contend that Defendants' *Daubert* challenges are speculative because motions *in limine* have not yet been filed. The admissibility defects in both experts' opinions are

identified, documented, and already before this Court. Rosario-Richardson's opinion rests on entertainment-industry norms — a basis that is legally irrelevant where the parties had an actual compensation agreement. *Needham v. Innerpac, Inc.*, 2007 WL 1662681, at *3–4; *Hutton Contracting,* 2004 WL 2203449, at *12. Williams has no independent damages foundation; his entire calculation depends on Rosario-Richardson's inadmissible premise. These are not speculative concerns. The admissibility defects in Plaintiff's expert opinions are apparent from the existing record and fall within the Court's *Daubert* gatekeeping obligation to assess before trial. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993). The Court need not wait for formal motions to recognize that these opinions may be excluded.

### 3.    Alleged "Benefit" of Cross-Examination Is Legally Irrelevant

Plaintiff may argue that *de bene esse* depositions afford Defendants an opportunity for early cross-examination. But that does not constitute a cognizable benefit, nor does it justify imposing a costly and premature procedural burden. The availability of cross-examination is inherent in the trial process; it is not a standalone advantage that can be used to force Defendants into unnecessary proceedings at an earlier stage.

The prejudice to Defendants is real and immediate. Defendants would be required to prepare for and conduct expert examinations now, before the Court has determined whether any claims will proceed to trial and before it has ruled on the admissibility of the experts' opinions resulting in substantial, potentially duplicative costs on testimony that may ultimately be excluded or rendered irrelevant.

The relevant question is not whether cross-examination could occur, but whether Plaintiff has established the legal predicate for forcing that procedure at this stage. Plaintiff has not.

Requiring Defendants to engage in preservation depositions now, before those determinations are made, would be neither fair nor equitable. Plaintiff cannot justify imposing that burden by pointing to a procedural mechanism that Defendants are already entitled to at trial.

### 4.    Prolonged Pendency of Summary Judgment Supports Deferral, Not Acceleration

Plaintiff may argue that the extended pendency of Defendants' summary judgment motion (fully briefed since September 2025) itself suggests trial remains years away, increasing the risk that testimony will be lost. The argument inverts the relevant analysis. The longer the case remains in dispositive-motion posture, the stronger the case for deferral. If the Court grants summary judgment, the depositions Plaintiff seeks will have been entirely unnecessary, and Defendants will have incurred substantial, unrecoverable expense for nothing. Federal Rule of Civil Procedure 1 requires the just, speedy, and inexpensive determination of every action. Requiring Defendants to engage expert-level preparation and examination costs before the Court has ruled on whether the case survives, and before the experts' opinions have been tested for admissibility, is the precise inefficiency Rule 1 forbids. The motion for summary judgment's pendency is a reason to wait, not to proceed.

## III.    CONCLUSION

Plaintiff has offered no evidence that either of her experts faces any concrete, individualized risk of unavailability for trial. With a fully briefed partial summary judgment motion pending, *Daubert* challenges that could exclude both experts' testimony entirely, and no trial date set, there is no factual or legal basis to require Defendants to proceed with preservation depositions at this time.

Accordingly, Defendants respectfully request that the Court deny Plaintiff's Motion for Leave to Take Trial Depositions of Plaintiff's Experts.

Because Plaintiff's motion lacks any evidentiary showing of expert unavailability and is premature in light of the pending dispositive and *Daubert* motions, it is not substantially justified. Accordingly, if the Court denies the motion, Defendant respectfully requests an award of its reasonable expenses incurred in opposing the motion, including attorneys' fees. *See*, Fed. R. Civ. P. 37(a)(5)(B).

Dated: April 23, 2026

By:*/s/ Dayna C. Cooper*
Dayna C. Cooper (D.C. Bar No. 1033851)
COOPER LEGAL, LLC
1 Olympic Place, Suite 900
Towson, MD 21204
Telephone: (202) 642-5470
dayna@cooperlegalsolutions.com
*Counsel for Defendants*
*Biz Markie, Inc. and Jennifer Izumi*

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2026, the foregoing Defendants' Opposition to Plaintiff's Motion for Leave to Take Trial Depositions of Plaintiff's Experts was filed with the Court's electronic case management and filing system, which will send copies to all parties and counsel of record.

Dated: April 23, 2026

By: /s/ Dayna C. Cooper
Dayna C. Cooper

12